RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 10/16/09
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| THE CITY OF ALEXANDRIA | CIVIL ACTION NO. 1:05-cv-01121 |
| -vs- | JUDGE DRELL |
| CLECO CORPORATION, et al. | MAGISTRATE JUDGE KIRK |

### R U L I N G

Pending now before the Court are two timely-filed countervailing motions:

(1) Doc. 210, a motion by the City of Alexandria ("City") to reopen the case after this Court's settlement dismissal order of December 31, 2008 (Doc. 143); and

(2) Doc. 220, a motion by the CLECO Corp. defendants ("Cleco") to deny the City's request and order the case finally settled.

For the reasons which will follow, we regrettably **GRANT** the City's motion, and withdraw our preliminary order of dismissal.

### I. Background

This case is, at its essence, a suit by the City against one if its suppliers of electrical power, Cleco, for allegedly fraudulent dealings. The suit was removed to this Court on June 24, 2005, based in large part upon the jurisdictional grant in 16 U.S.C. § 825p (Doc. 2), as the issues in this suit will, in part, involve the alleged compliance or non-compliance by Cleco with rules and rate structures established by the Federal Energy Regulatory Commission ("FERC"), and because certain agreements at issue in the case required and were given approval by FERC at their inception. However, the present motion has little to do with jurisdiction.

Rather, in the early stages of this litigation the parties requested the laudatory step of foregoing a formal litigation plan of work in favor of an effort to settle the case through court-supervised mediation. Recognizing that the case and the issues behind it were extremely complex, we have granted numerous extensions of time to allow the parties to attempt resolution of the issues.[1] In point of fact, the parties have negotiated long and hard, not only toward a mere settlement of the issues in the suit, but also toward a longer term solution and relationship between the City and Cleco.

The mediation did result in what must be termed a significant step forward in the confection and signing of a document titled "Memorandum of Understanding" ("MOU"). (Doc. 211-3, Exh. A). The document remains part of the confidential mediation but some discussion of portions of it are necessary to this decision, which will not be confidential nor under seal of the Court.

II. **Analysis**

As indicated above, the parties have filed cross or countervailing motions. Cleco argues that the case is settled by virtue of the signing of the MOU and the presentation to the City of some, but not all, of the other contemplated documents. The City posits that the MOU was not a final settlement document but only a framework for settlement; that, although it was approved by the City Council, it only pointed the way forward and other documents have never been agreed upon, nor

---

[1] The City has made reference to this Court having issued a conditional order of dismissal "on its own motion," or unilaterally. (Doc. 210-2, p. 8). No such thing occurred. Rather, the Court's Order of Dismissal of December 31, 2008 (Doc. 143), was entered only after a conference call with counsel took place. In fairness, the parties only represented to the Court that a Memorandum of Understanding was in place. Nonetheless, the Court's order was not a unilateral measure.

approved, nor executed; and, that the proposed documents and suggested global settlement documents created requirements with which it was unable to comply.

The Court's role in reviewing settlement disputes such as this is based upon provisions of Louisiana's laws regarding transaction and compromise specifically, and the operation of federal courts generally.[2] Our inquiry in deciding these motions begins and ends with the MOU. If it is indeed a definitive document, the case could be ordered and concluded. If not, we must agree that good cause for the reopening of the suit will have been shown.

Using this analysis, we observe that the MOU does address, in some detail, the intention of the parties to have the case settled. It is, however, only a five page document. It lays out in substantial general detail what was to follow: the confection of a number of other documents that would be necessary to execute in conjunction with the proposed settlement. It is conceded that none of the other documents prepared were executed by the City, although the City Council did by ordinance approve a contemplated Power Supply Agreement ("PSA") *in principle*. The problems which militate against a reading favoring the MOU's definitiveness are found in its own text.

First, the MOU is titled only "Memorandum" and is not styled as a release, receipt, or settlement. Next, the MOU appears to be definitive in its treatment of the

---

[2] In general, a district court can act as an administrator of a voluntary settlement between litigants over whom it has jurisdiction. See SSC Acquisition Corp. v. Ratcliff, No. 08-30825, 2009 WL 348812, at *1-2 (5th Cir. Feb. 12, 2009). However, private parties are free to settle or continue litigating without the court's approval of settlement proposals; "'settlement of the dispute is solely in the hands of the parties.'" Ibarra v. Tex. Employment Comm'n, 823 F.2d 873, 878 (5th Cir. 1987) (quoting United States v. City of Miami, 614 F.2d 1322, 1330 (5th Cir. 1980)).

touted $29 million payment to the City; arguments of counsel and later developments cast serious doubt on the parties' intentions about that payment in the MOU. Third, the press release contemplated in the MOU only sets forth that the parties had agreed to settle "in principle" [although the preface to that section authorized a press release at the time a settlement is reached (i.e. when both parties sign this MOU and both agree it is appropriate, but no later than the Closing)]. (Doc. 220-3, Exh. A-1).

Perhaps more importantly, the MOU provides: "The parties acknowledge that the agreements contemplated by this *framework* are or may be *subjected to approval*" by others, including the City Council and other regulatory agencies. (Doc. 211-3, Exh. A, p. 3) (emphasis added). And finally, the MOU contemplates the preparation of twelve additional documents, of which the PSA is only one. That the documents contemplated are not mere documents to effect a global settlement, but are each independent, is delineated in the final paragraph of the MOU. Therein it provides that "[t]he parties will use all best efforts to *negotiate*" the remaining documents. (Doc. 211-3, Exh. A, p. 5).

The salient and determining factor which moves the Court in this ruling is the fact that these are not merely perfunctory documents, but they are, at least, semi-independent. They each require separate approval under the MOU. They are designed to flesh out in *much* greater detail the agreement in the MOU reached in principle only.

We are aware of the strong position by Cleco that the City has deliberately delayed the execution of the PSA and that the City feigns inability to perform.

4

Notwithstanding this position, the fact remains that the definitive terms of the up-front payment contemplated by the MOU's wording were clearly being revisited and revised in the subsequent documents (and in the PSA especially). This is substantial. And, contrary to Cleco's position, we read the City Council's authorization of the mayor to execute a PSA as only an authorization to execute *a PSA*, not necessarily the draft one which was being presented by Cleco at the time. This is so because of the reservation in the ordinance that the mayor could "enter into a Power Supply Agreement with Cleco Corporation under terms and conditions as the Mayor, in his discretion, deems necessary and proper." (Doc. 210-4, Exh. 2).

Nonetheless, Cleco argues that the MOU itself effected a compromise between the parties under the governing articles of the Louisiana Civil Code which should now be enforced by this Court. This argument is without merit. To begin, the MOU does not fully satisfy the basic requirements of a compromise in the sense that Cleco invokes the concept. A compromise is defined as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship." La. Civ. C. art. 3071. The MOU does not "settle [the] dispute" between these parties, but rather only provides a "framework" or outline for a future settlement of the dispute.

Even if the Court were to construe the MOU as a form of compromise, its scope would be limited to its express terms; namely, that the parties would use "all best efforts" to execute the various documents and negotiate the various terms that were still required to effect an actual settlement. The Louisiana Civil Code specifies that

5

"[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. Civ. C. art. 3076; see also Trahan v. Coca Cola Bottling Co. United, Inc., 894 So. 2d 1096, 1106 (La. 2005) ("[A] compromise extends only to those matters the parties intended to settle and the scope of the transaction cannot be extended by implication. Courts apply this rule of construction in light of the general principle that the instrument must be considered as a whole and in light of attending events and circumstances." (internal citations omitted)). Pursuant to this article, no obligations could be incurred by either party beyond those contained within the terms of the MOU. At the most basic level, the MOU does not state any specific consideration for the settlement of the lawsuit, and does not, in and of itself, effect a settlement of the lawsuit.

Cleco maintains, however, that the Court should deem any conditions precedent contemplated by the MOU, but not yet completed, as fulfilled based upon the City's alleged fault. Given the subsequent revisions to the up-front payment terms, as they were expressed in the MOU, the Court cannot conclusively find that the City has not satisfied the "best efforts" requirement in the MOU, which is essentially the only obligation incurred by the City under the MOU that is relevant at this juncture. The Court cannot agree with Cleco's contention under article 1772 that the remaining conditions of the MOU should be "regarded as fulfilled," because even if we found that the City was "a party with an interest contrary to the fulfillment" of these conditions (which we do not), we cannot find that the conditions were not fulfilled "because of the fault" of the City. La. Civ. C. art. 1772.

6

Moreover, as pointed out by counsel for the City, the law is settled on the notion that "[a] compromise is valid only if there is a meeting of the minds between the parties as to exactly what they intended when the compromise was reached." Mayeaux v. Denny's, 663 So. 2d 822, 824 (La. App. 5th Cir. 1995) (citing Perault v. Time Ins. Co., 633 So. 2d 263 (La. App. 1st Cir. 1993)); accord Tarver v. Oliver H. Van Horn Co., 591 So. 2d 1366, 1369 (La. App. 4th Cir. 1991).[3] In the MOU, although the parties clearly expressed an intent to pursue a certain course of action in attaining a definitive, global, settlement of this dispute, their expressed intentions ended there, and so must our analysis. In short, we find there has been no final meeting of the minds in these negotiations to this point.[4]

Although it is not raised by the parties in particular, we must address the singular issue of whether, despite the breakdown of negotiations, we can read the documents submitted as having resulted in an enforceable settlement of the suit only, despite the failure of the other negotiations. We find not. Indeed, the settlement of this suit was deemed by the parties to be only a (seemingly relatively small) portion of the overall negotiation, in favor of a much larger, global realignment of their relationship. However it was viewed, nowhere is an intent expressed, in the MOU or

---

[3] See also Rogers v. Mumford, 6 So. 3d 848 (La. App. 1st Cir. 2009) (holding that despite the execution of settlement documents, the failure of the parties to agree on who would bear responsibility to a third party for a payment meant that no compromise had been effected between them).

[4] Because the issues herein are definitively determined by the Court's analysis of the terms and implications of the MOU, we need not reach the issue of whether the City could or could not obtain a "letter of credit" as a practical or legal matter. We do note that, as counsel for Cleco emphasizes, there is no evidence that the City has been unable to do so, but instead only the statements of counsel to that effect. Either way, this issue would have no decisive bearing on the Court's ruling.

otherwise, that the suit was being settled independently. It would, therefore, in our view, be both unjust and inequitable to parse language to force a settlement of the litigation on the parties. Indeed, no reading of the MOU or other documents comes close to allowing such a strained approach.

### III. Conclusion

At the outset we announced that the decision to reopen this case was regrettable. It is regrettable not because we must follow the law and our reading of the documents and arguments. Rather, it is regrettable because these sophisticated parties, on the brink of successfully confecting an extremely complex contractual reallocation of their business relationship, have been unable to carry the ball across the goal line. Now they will be relegated to the substantial additional cost and trouble of likely protracted litigation, and, perhaps, collateral proceedings. The parties have a right to litigate, but it has appeared consistently to this Court that such has not necessarily been in their collective best interests. It seems we will have to find out.

Therefore, the motion by the City of Alexandria ("City") to reopen the case is hereby **GRANTED**. The motion by Cleco to enforce settlement is hereby **DENIED**. All previous orders governing mediation of this case, with the exception of the various protective orders, but including all stays in the matter, are hereby **LIFTED**.

SIGNED on this 15th day of October, 2009 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE