UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| THE CITY OF ALEXANDRIA, | ) | CIVIL ACTION NO.: 05-CV-1121-A |
| Plaintiff, | ) | |
| | ) | |
| VERSUS | ) | |
| | ) | JUDGE DEE D. DRELL |
| CLECO CORPORATION, CLECO POWER, | ) | |
| L.L.C., CLECO MARKETING AND | ) | |
| TRADING, L.L.C., CLECO GENERATION | ) | |
| SERVICES, L.L.C., CLECO MIDSTREAM | ) | MAGISTRATE JUDGE |
| RESOURCES, L.L.C, AND CLECO | ) | C. MICHAEL HILL |
| EVANGELINE, L.L.C., | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## UNDER FILED RATE DOCTRINE AND FEDERAL PREEMPTION

Respectfully submitted,

Richard C. Stanley (# 8487)
W. Raley Alford, III (# 27354)
Alison N. deClouet (#31276)
Of
STANLEY, REUTER, ROSS, THORNTON
& ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:    (504) 523-1580
Telecopier:    (504) 524-0069

-and-

Mark D. Pearce, (#21804)
Cleco Corporation
2030 Donahue Ferry Road
Pineville, Louisiana  71360
Telephone:    (318) 484-7744
Facsimile:    (318) 484-7685

Attorneys for Cleco Corporation, Cleco Power
LLC, Cleco Marketing and Trading LLC, Cleco
Generation Services LLC, Cleco Midstream
Resources LLC, and Cleco Evangeline LLC

## TABLE OF CONTENTS

I.    Introduction ....................................................................................................1

II.   Factual Background ..........................................................................................2

III.  Law and Argument ..........................................................................................5

      A.    Standard for Dismissal under Rule 12 ..................................................5

      B.    The filed rate doctrine and federal preemption bar the City's claims.....................7

            1.    Count I – Wholesale Power Purchases. .....................................11

            2.    Count II – Sales of D.G. Hunter Generation................................12

            3.    Count III – Transmission Rates .................................................12

            4.    Count IV – Natural Gas Sales....................................................14

            5.    Count V – Fraud Claim..............................................................15

            6.    Count VI – Louisiana Antitrust Claim........................................16

            7.    Count VII – Unfair Trade Practices, Detrimental Reliance,
                  and Negligent Misrepresentation Claims....................................18

            8.    Count VIII – Gross Negligence Claim........................................18

            9.    Count IX – Rescission ..............................................................19

      C.    The City cannot seriously dispute that its claims for damages are
            barred by federal law ...........................................................................20

IV.   Conclusion......................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*AEP Texas North Co. v. Texas Industrial Energy Consumers*,
473 F.3d 581 (5th Cir. 2006) ...........................................................................2, 7, 8, 9, 13

*Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228 (5th Cir. 2007)..............................5

*Ark. La. Gas Co. v. Hall*, 453 U.S. 571 (1981) ..........................................................15

*Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937 (May 18, 2009)........................................5

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) ..............................................................5, 8

*California v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004) ........................................6, 8, 9, 18

*Central Louisiana Electric Company, Inc.*,
77 FERC ¶ 61,020, 1996 WL 863464 (Oct. 8, 1996) ....................................................10

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)........................................5, 6

*Continental Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294 (5th Cir. 1971) ......................................21

*County of Stanislaus v. Pac. Gas and Elec. Co.*, 114 F.3d 858 (9th Cir. 1997) ...........................17

*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278 (5th Cir. 1993)........................................5

*Hardy v. Johns-Mansville Sales Corp.*, 851 F.2d 742 (5th Cir. 1988) ........................................21

*H.J. Inc. v. N.W. Bell Tel. Co.*, 954 F.2d 485 (8th Cir. 1992) ..............................................8

*In re California Wholesale Elec. Antitrust Litig.*,
244 F. Supp. 2d 1072 (S.D. Cal. 2003) ...........................................................12, 16, 17

*In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12 (1st Cir. 2003) ........................................6

*Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245 (5th Cir. 1997) ....................................6

*Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004) ........................................................5

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001)..................6, 15, 19

*Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015 (5th Cir. 1996) ..........................................6

*Marcus v. AT & T Corp.*, 138 F.3d 46 (2d Cir. 1998) ......................................................18

*Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*,
341 U.S. 246 (1951) ..........................................................................................12

*Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953 (1986) ..........................8

*Neitzke v. Williams*, 490 U.S. 319 (1989) .................................................................6

*New York v. FERC*, 535 U.S. 1 (2002) ....................................................................17

*Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir. 2007) ...............................................6

*Public Utility District No. 1 of Grays Harbor County Washington v. Idacorp Inc.*,
379 F.3d 641 (9th Cir. 2004) ...................................................7, 8, 9, 11, 15, 19

*Public Utility District No. 1 of Snohomish County v. Dynegy Power Mktg., Inc.*,
384 F.3d 756 (9th Cir. 2004) ...................................................9, 11, 17, 18

*Scanlan v. Texas A & M Univ.*, 343 F.3d 533 (5th Cir. 2003)...................................6

*Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293 (1988) ......................................14

*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984) ..............................................8

*State ex rel. Guste v. Council of City of New Orleans*, 309 So.2d 290 (La. 1975) ......18

*T&E Pastorino Nursery v. Duke Energy Trading and Marketing, L.L.C.*,
268 F. Supp. 2d 1240 (S.D. Cal. 2003) .............................................................10

*T&E Pastorino Nursery v. Duke Energy Trading & Marketing, L.L.C.*,
2003 WL 22110491 (S.D. Cal. 2003) ................................................................17

*Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503 (5th Cir. 2005) ...............6, 7, 8, 11

*Texas Commercial Energy v. TXU Energy, Inc.*, 2004 WL 1777597 (S.D. Tex. 2004) ...............11

*Town of Norwood, Massachusetts v. New England Power Co.*,
202 F.3d 408 (1st Cir. 2000) ..............................................................................11

*Transmission Agency of Northern California v. Sierra Pacific Power Co.*,
295 F.3d 918 (9th Cir. 2002) .......................................................................8, 9, 16

*Utilimax.com, Inc. v. PPL Energy Plus, LLC*,
273 F. Supp. 2d 573 (E.D. Pa. 2003) ................................................................11

*U.S. by and through Western Area Power Admin. v. Pacific Gas and Elec.*,
714 F. Supp. 1039 (N.D. Cal. 1989) ..................................................................13

*Wah Chang v. Duke Energy Trading and Marketing, LLC,*
507 F.3d 1222 (9th Cir. 2007) .................................................................11, 19

*Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17 (2d Cir. 1994) ....................................7, 16

*Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir. 1997) ............................16

## **STATUTES**

15 U.S.C. § 717...................................................................................14

16 U.S.C. § 791a...................................................................................7

16 U.S.C. § 824.................................................................................2, 7

16 U.S.C. § 825p...................................................................................2

Fed. R. Civ. P. 9...........................................................................6, 15, 19

Fed. R. Civ. P. 12...............................................................................5-6

Fed. R. Evid. 201..................................................................................6

La. Code Civ. Proc. art. 856........................................................................6

La. Rev. Stat. § 51:1406...........................................................................18

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| THE CITY OF ALEXANDRIA, | ) | CIVIL ACTION NO.: 05-CV-1121-A |
| Plaintiff, | ) | |
| | ) | |
| VERSUS | ) | |
| | ) | JUDGE DEE D. DRELL |
| CLECO CORPORATION, CLECO POWER, | ) | |
| L.L.C., CLECO MARKETING AND | ) | |
| TRADING, L.L.C., CLECO GENERATION | ) | |
| SERVICES, L.L.C., CLECO MIDSTREAM | ) | MAGISTRATE JUDGE |
| RESOURCES, L.L.C, AND CLECO | ) | C. MICHAEL HILL |
| EVANGELINE, L.L.C., | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## UNDER FILED RATE DOCTRINE AND FEDERAL PREEMPTION

Defendants Cleco Corporation, Cleco Power LLC, Cleco Marketing & Trading LLC, Cleco Generation Services LLC, Cleco Midstream Resources LLC, and Cleco Evangeline LLC (collectively, "Cleco"), through their undersigned counsel, respectfully submit this memorandum in support of their motion to dismiss the claims brought by the City of Alexandria (the "City") for failure to state a claim upon which relief can be granted under Rule 12(c) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.    Introduction**

This case concerns the prices paid and received for the sale and delivery of wholesale electric energy. The City and Cleco each operate a utility, and they have entered into several agreements involving the sale and transmission of wholesale electric energy that have allowed the City to provide retail electric services to its utility customers. Although its Petition for Damages is lengthy, the City has summarized its claims as follows: "The City contends that CLECO's mismanagement of the City's energy resulted in excessive monthly charges to the

City, and thus inflation of the monthly fuel adjustment reflected on [City] utility bills. ***These charges challenge the rates and tariffs approved and enforced under federal law, including the FPA and FERC.***"[1]

As the City's summary indicates, it is undisputed that the federal courts have exclusive jurisdiction over this action under the Federal Power Act ("FPA").[2] It is likewise beyond dispute that the FPA grants the Federal Energy Regulatory Commission ("FERC") the "exclusive jurisdiction to regulate the transmission and wholesale sale of electric energy in interstate commerce."[3] This jurisdictional grant gives FERC the exclusive authority to determine the reasonableness of rates and charges for wholesale electric energy, and the federal courts protect FERC's exclusive authority by applying two related legal theories – the filed rate doctrine and federal preemption – to dismiss claims for monetary and other relief that are grounded in complaints over the reasonableness of charges for wholesale energy. As Cleco establishes in this memorandum, the filed rate doctrine and preemption apply to the claims alleged by the City in its petition. Accordingly, under federal law and the Supremacy Clause of the Constitution, the City is barred from recovering monetary damages from Cleco in this action, and its claims in this Court must be dismissed.

## II.   Factual Background

Cleco Power owns and operates an electric utility system comprised of generation, transmission, and distribution facilities. That system is connected to the interstate electricity

---

[1]   City's Mem. in Opp'n to Mot. to Remand (R. Doc. 7-2) in *Franklin v. City of Alexandria*, No. 07-01011 (W.D. La.), at p. 2 (emphasis added). It is proper for the Court to take judicial notice of the City's pleadings in the *Franklin* matter. *See infra* Part III.A.

[2]   16 U.S.C. § 825p.

[3]   *AEP Texas North Co. v. Texas Industrial Energy Consumers*, 473 F.3d 581, 584 (5th Cir. 2006) (citing 16 U.S.C. § 824(b)(1)).

grid. FERC has authorized Cleco Power through a market-based tariff to buy and sell electric power at wholesale in interstate commerce, and the company is in the business of buying, marketing, selling, and causing the delivery of electric energy, electric generation capacity, and other services.[4]

Like Cleco Power, the City of Alexandria is a utility. The City provides retail electric services to its residents and owns and operates an electric generation facility and a distribution system. The City's electric generation facility is known as the D.G. Hunter Generating Station ("D.G. Hunter"), and its operating units are fueled by natural gas.[5]

Before 1986, the energy that the City delivered to its customers originated from Alexandria's 56 MW share of Rodemacher Unit 2, a 4 to 6 MW allocation from the Southwest Power Authority ("SWPA"), the D.G. Hunter facility, and other non-Cleco sources. Alexandria had acquired the Rodemacher Unit 2 allotment through its participation in the Louisiana Energy and Power Authority ("LEPA") and the SWPA allotment through a long-term contract.[6]

On May 13, 1986, Cleco Power and the City entered into an Electric System Interconnection Agreement that established interconnected operation of the parties' respective facilities and systems.[7] That agreement, which remains in effect, was approved by FERC and is subject to FERC's regulatory authority.

---

[4]  *See* Ex. A, Cleco Power LLC Market-Based Rates Tariff (MR-1), cited in City's Petition at ¶ 28. In ruling on Cleco's motion to dismiss, the Court is entitled to consider documents cited in the City's Petition. *See infra* Part III.A.

[5]  *See* City's Petition at ¶ 5.

[6]  *See id.* at ¶¶ 8, 16.

[7]  *See* Ex. B, Electric System Interconnection Agreement between Cleco Power LLC and the City of Alexandria, Louisiana (the "Interconnection Agreement"), cited in the City's Petition at ¶¶ 8, 13.

Also in 1986, the parties entered into their first contract regarding the sale of "special" or "replacement" energy.  The City's D.G. Hunter facility does not convert natural gas to electricity as efficiently as more modern natural-gas generating facilities.[8]  Contracting with Cleco allowed the City to replace some of its own generation with lower-cost, more efficiently produced energy from Cleco.  As the City alleges in its petition, "if the City determined that its resources were going to be insufficient to meet the electricity demands of its customers, it would call upon Cleco to provide whatever excess power was required, typically on a short term basis."[9]

Beginning with the first contract for replacement energy in 1986, the City and Cleco have entered into various written contracts and agreements that involve the purchase, sale, and transmission of wholesale energy for the City's ultimate use and the sale to third parties of energy generated at the City's D.G. Hunter facility.[10]  As the City alleges in its petition, a 2003 Services Agreement currently is in effect between the parties, and Cleco performs marketing and trading services under that agreement pursuant to the market-based-rate authority it has received from FERC.[11]  The City further alleges that the 2003 Services Agreement "references, and is dependent upon" the parties' FERC-filed Interconnection Agreement.[12]

The City commenced this damages action on June 22, 2005.  Without alleging any specific transaction, billing month, or even year, the City complains generally in its petition that

---

[8]    The rate at which a facility converts natural gas to electricity is referred to as the "heat rate" – the higher the heat rate, the less efficient the conversion.

[9]    City's Petition at ¶ 11.

[10]    City's Petition at ¶¶ 5, 8, 11, 13.

[11]    *See* Ex. C, Services Agreement by and between Cleco Power LLC and City of Alexandria, Louisiana, dated as of May 19, 2003 (the "2003 Services Agreement"), at § 21.9; City's Petition at ¶¶ 12-14 (discussing the 2003 Services Agreement).

[12]    City's Petition at ¶ 13.

Cleco has performed services deficiently, resulting in the City paying too much or not receiving enough for wholesale energy.[13]  On the basis of this general complaint, the City has attempted to plead a variety of tort and contract claims and a claim under Louisiana's antitrust laws.  Because the relief sought on all of those claims would require the Court to determine whether the rates and charges for wholesale power were just and reasonable, this action must be dismissed.  The City's complaints over rates paid pursuant to FERC-approved tariffs and rate schedules fall within the exclusive jurisdiction of FERC.

## III.   Law and Argument

### A.     Standard for Dismissal under Rule 12

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)."[14]  Rule 12(b)(6) authorizes dismissal of an action if the plaintiff has failed to state a claim upon which relief can be granted.[15]  In ruling on a Rule 12(b)(6) motion, the Court accepts as true the well-pleaded facts of the plaintiff's complaint.[16]  But the plaintiff must plead *specific* facts, and the Court "will not accept as true conclusory allegations or unwarranted deductions of fact."[17]  Moreover, "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[18]  And, importantly, any allegations of fraud that are not stated with particularity in accordance with Federal Rule of Civil

---

[13]     *See, e.g.*, City's Petition at ¶¶ 18, 23.

[14]     *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

[15]     Fed. Rule Civ. Proc. 12(b)(6); *Bell Atl. v. Twombly*, 550 U.S. 544 (2007).

[16]     *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228 (5th Cir. 2007).

[17]     *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[18]     *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  *See also Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (May 18, 2009) (allegations that are "no more than conclusions are not entitled to the assumption of truth").

Procedure 9(b) are disregarded for purposes of determining whether the plaintiff has stated a claim.[19]

In ruling on a Rule 12(b)(6) motion to dismiss, a court may consider documents attached to the motion that are "referred to in the plaintiff's complaint and are central to the plaintiff's claim."[20] These documents are "considered part of the pleadings."[21] It also is well settled in the Fifth Circuit that, when ruling on a motion to dismiss, the courts may consider matters of which they make take judicial notice, including pleadings filed of record and documents filed with federal regulatory commissions.[22] Finally, the federal courts have recognized the Rule 12 motion as a proper vehicle for the application of the filed rate doctrine and federal preemption.[23]

---

[19]    *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). Although this case began in state court, Louisiana procedural law mirrors Rule 9(b). *See* La. Code Civ. Proc. art. 856 ("In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity."). Accordingly, the City has no basis to complain about the Court's disregarding its general, conclusory allegations of fraud.

[20]    *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

[21]    *Collins*, 224 F.3d at 498-99.

[22]    *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (ruling that, when deciding a motion to dismiss, a court may take judicial notice of the contents of documents filed with the Securities Exchange Commission); *Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1250 n.14 (5th Cir. 1997) ("The Court may take judicial notice of the contents of public records on a Rule 12(b)(6) motion."); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (same); *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) ("[M]atters of public record are fair game in adjudicating Rule 12(b)(6) motions, and a court's reference to such matters does not convert a motion to dismiss into a motion for summary judgment."); Fed. R. Evid. 201(b).

[23]    *See Texas Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 507 (5th Cir. 2005); *California v. Dynegy, Inc.*, 375 F.3d 831, 849 (9th Cir. 2004); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

**B.**     <u>The filed rate doctrine and federal preemption bar the City's claims.</u>

The Federal Power Act, 16 U.S.C. § 791a *et seq.*, "gives FERC exclusive jurisdiction to regulate the transmission and wholesale sale of electric energy in interstate commerce."[24]  "This power includes the exclusive authority to determine the reasonableness of wholesale rates."[25] "To the extent that it bars states from acting within the zone of FERC's authority, this exclusive jurisdiction is grounded in the Supremacy Clause of the Constitution."[26]  The federal courts protect FERC's exclusive authority by applying two related legal theories – the filed rate doctrine and federal preemption – to dismiss claims for monetary and other relief that are grounded in complaints over the reasonableness of charges for wholesale energy.

The filed rate doctrine, which developed in the antitrust field, "bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful."[27]  "Simply stated, the doctrine holds that any 'filed rate' – that is, one approved by the governing regulatory agency – is per se reasonable and unassailable in judicial proceedings brought by ratepayers."[28]  Courts "have consistently applied the filed rate doctrine in a number of energy cases to preclude lawsuits against companies based on rates that were filed with a government agency."[29]  The doctrine "has prohibited not just a state court (or a federal court applying state law) from setting a rate different from that chosen by FERC, but also from

---

[24]     *AEP Texas North*, 473 F.3d at 584 (citing 16 U.S.C. § 824(b)(1)).

[25]     *Public Utility District No. 1 of Grays Harbor County Washington v. Idacorp Inc.*, 379 F.3d 641, 647 (9th Cir. 2004).

[26]     *Id.*

[27]     *Texas Commercial Energy*, 413 F.3d at 507.

[28]     *Id.* at 508 (quoting *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994)).

[29]     *Id.*

assuming a hypothetical rate different from that actually set by FERC."[30]   In other words, the

filed rate doctrine precludes claims that seek damages measured by the difference between the

allegedly excessive filed rate and some theoretical reasonable rate that would or should have

been approved or charged absent the purportedly wrongful conduct.[31]   Finally, "the filed rate

doctrine is not limited to 'rates' *per se*";[32] it also requires parties to abide by the terms of FERC-

approved agreements and bars all claims that challenge the terms of a FERC-filed tariff or are

grounded in obligations beyond those set out in the filed tariffs.[33]

Closely related to the filed rate doctrine is preemption under the Federal Power Act.

Federal preemption of state law "is compelled whether Congress' command is explicitly stated in

the statute's language or implicitly contained in its structure and purpose."[34]   Absent express

preemption, federal law may preempt state-law claims in two ways, namely, field preemption or

conflict preemption.[35]   Under field preemption, "if Congress evidences an intent to occupy a

given field, any state law falling within that field is preempted."[36]   Alternatively, conflict

preemption exists "where state law stands as an obstacle to the accomplishment and execution of

the full purposes and objectives of Congress."[37]

---

[30]     *Grays Harbor*, 379 F.3d at 650-51 (quoting *Transmission Agency of Northern California v. Sierra Pacific Power Co.*, 295 F.3d 918, 930 (9th Cir. 2002)).

[31]     *See Texas Commercial Energy*, 413 F.3d at 507; *H.J. Inc. v. N.W. Bell Tel. Co.*, 954 F.2d 485, 488 (8th Cir. 1992).

[32]     *AEP Texas North*, 473 F.3d at 585 (quoting *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966 (1986)).

[33]     *AEP Texas North*, 473 F.3d at 585-86; *California v. Dynegy*, 375 F.3d at 853.

[34]     *California v. Dynegy*, 375 F.3d at 849 (internal quotation and citation omitted).

[35]     *Id.*

[36]     *Id.* (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)).

[37]     *Grays Harbor*, 379 F.3d at 650 (internal quotation and citation omitted).

In a series of cases arising out of California's energy crises of 2000 and 2001, the U.S. Ninth Circuit Court of Appeals concluded that both field and conflict preemption barred state-law damages claims that alleged antitrust violations, fraudulent business practices, unfair competition, unjust enrichment, and breach of contract in the wholesale energy markets.[38]  The court, citing FERC's exclusive authority over wholesale rates, reasoned in one case that "if the prices in those markets were not just and reasonable or if the defendants sold electricity in violation of the filed tariffs, [the plaintiff's] only option is to seek a remedy before FERC."[39] The Ninth Circuit also reasoned that requests for relief that would require a judicial determination of a "fair price" would interfere with the regulatory objectives established by Congress: "To permit [plaintiff] to receive in its court action what is essentially a refund would create a conflict with FERC's authority over wholesale rates."[40]  The Fifth Circuit has applied similar reasoning in its cases,[41] and the law is clear that any attempt to impose judicial remedies in addition to those FERC may impose are barred as impermissible encroachments upon FERC's exclusive authority under the Federal Power Act.

---

[38]    *See California v. Dynegy*, 375 F.3d at 851-52 (concluding that the Federal Power Act preempts the field of transmission and sale of wholesale energy pursuant to a federal tariff and bars state-law claims that "encroach upon the substantive provisions of the tariff, an area reserved exclusively to FERC, both to enforce and to seek remedy"); *Grays Harbor*, 379 F.3d 641 (concluding that field and conflict preemption barred contract-related claims against energy wholesalers that alleged payment of "exorbitant" prices for electricity); *Public Utility District No. 1 of Snohomish County v. Dynegy Power Mktg., Inc.*, 384 F.3d 756, 761 (9th Cir. 2004) (holding that state antitrust claim was "barred by the filed rate doctrine, by field preemption, and by conflict preemption"); *see also Sierra Pacific*, 295 F.3d at 328 (holding that the Federal Power Act preempted state-law claims alleging breach and non-performance of FERC-approved agreements).

[39]    *Snohomish County*, 384 F.3d at 762.

[40]    *Grays Harbor*, 379 F.3d at 650.

[41]    *See, e.g., AEP Texas North*, 473 F.3d at 585 ("FERC, not the state, is the appropriate arbiter of any disputes involving a tariff's interpretation.").

The filed rate doctrine and federal preemption leave no room for the City's claims in this action. The City complains of allegedly excessive charges for wholesale power. But those transactions and their underlying contracts arose under and were governed by FERC-approved tariffs and rate schedules that constitute regulations under the Federal Power Act.[42] In particular, the parties agreed in a schedule to their FERC-filed Interconnection Agreement that wholesale power would be provided to the City at market-based rates in accordance with Cleco's FERC-approved MR-1 Tariff.[43] In the market-based system, the price set between a seller and a buyer constitutes the "rate," and, in the City's own words, the price that it agreed to pay Cleco for power "was based upon market conditions, plus a mark-up."[44]

The fact that market-based rates are at issue in this case does not impede the application of the filed rate doctrine or federal preemption. Cleco's authority to charge market-based rates comes from FERC, and, before it granted that authority, FERC first confirmed that Cleco did not have, or had adequately mitigated, market power in generation and transmission and could not erect other barriers to entry.[45] In light of this active regulation and oversight by FERC, the federal courts have consistently held that the filed rate doctrine and federal preemption apply to

---

[42] *See T&E Pastorino Nursery v. Duke Energy Trading and Marketing, L.L.C.*, 268 F. Supp. 2d 1240, 1246 (S.D. Cal. 2003) ("A tariff filed with a federal agency is the equivalent of a federal regulation.").

[43] *See* Ex. B, Interconnection Agreement at Original Sheet No. 34 ("Electric energy provided by Cleco-WMO to the City shall be in accordance with a service agreement between Cleco-WMO and the City under Company's market based sales tariff (MR-1)."); Ex. D, Cleco Filing of 8/13/98 (FERC Docket No. ER98-4204-000), at pp. 12-13 (Service Agreement under Market Based Tariff with the City of Alexandria).

[44] City's Petition, at ¶ 11. The 2003 Services Agreement between the parties specifies that the City's monthly Power Costs include the Market Price of Cleco's energy purchases from the wholesale market for sale to the City. *See* Ex. C, 2003 Services Agreement, at § 13.1.

[45] *See Central Louisiana Electric Company, Inc.*, 77 FERC ¶ 61,020, 1996 WL 863464 (Oct. 8, 1996).

market-based energy rates.[46]    Accordingly, regardless of the legal theory asserted, all of the City's claims challenging the prices it paid or received for wholesale power at market-based rates are barred by the filed rate doctrine and federal preemption.[47]

Cleco examines below each of the nine counts of the City's petition and explains why each claim is barred by the filed rate doctrine and federal preemption.

### 1.    Count I – Wholesale Power Purchases

Count I concerns Cleco's sales of wholesale power to the City.    Although it does not complain of any specific transactions, the City suggests in Count I that it paid a "higher price for electricity than necessary" and asserts that it is entitled to recover the "substantial economic damage" it allegedly incurred as a result of paying that price.[48]

To award the monetary relief sought by the City, the Court would first have to determine whether the rates for wholesale power were just and reasonable, and then determine what a

---

[46]    *See Texas Commercial Energy*, 413 F.3d at 509-10 (concluding that market-based rates are "'filed' within the meaning of the filed rate doctrine"); *Grays Harbor*, 379 F.3d at 649 (concluding that market-based rates do not change the "scope of preemption regarding FERC's exclusive jurisdiction over wholesale rates").    *See also Wah Chang v. Duke Energy Trading and Marketing, LLC*, 507 F.3d 1222 (9th Cir. 2007) (holding that the filed rate doctrine barred retail purchaser's claims against energy companies seeking to recover damages for the difference between market-based rate it was charged for electricity and the rate it claims was fair); *Snohomish County*, 384 F.3d at 760-61 (discussing FERC approval requirements for market-based trading and concluding that FERC's review and approval process governing market-based tariffs amounts to active regulation and oversight sufficient to justify federal preemption of state laws and the application of the filed rate doctrine); *Town of Norwood, Massachusetts v. New England Power Co.*, 202 F.3d 408, 419 (1st Cir. 2000) (concluding that the filed rate doctrine applied to market-based energy rates); *Utilimax.com, Inc. v. PPL Energy Plus, LLC*, 273 F. Supp. 2d 573 (E.D. Pa. 2003), *affirmed*, 378 F.3d 303, 306 (3d Cir. 2004) (finding that the filed rate doctrine applies to bar claims challenging the rates for electricity set by FERC in a market-based rate system).

[47]    *See Texas Commercial Energy v. TXU Energy, Inc.*, 2004 WL 1777597 (S.D. Tex. 2004), *affirmed*, 413 F.3d 503 (5th Cir. 2005).

[48]    City's Petition at ¶¶ 17, 20 (emphasis added).

reasonable rate would have been. Because Cleco sells power to the City at market-based rates under Cleco's MR-1 Tariff, the filed rate doctrine prohibits the courts from making such determinations.[49] Determining the reasonableness of prices paid for wholesale power falls within FERC's exclusive jurisdiction, and any attempt to impose judicial remedies are barred as impermissible encroachments upon FERC's exclusive authority under the Federal Power Act.[50] Count I of the City's petition must therefore be dismissed.

### 2.    Count II – Sales of D.G. Hunter Generation

Count II of the City's petition contains conclusory allegations that Cleco sold energy originally generated at the City's D.G. Hunter facility to third parties in the wholesale market at prices that were too low or at times when market conditions were unfavorable.[51] Awarding the City the "substantial economic damage" it allegedly sustained in those wholesale transactions would require an impermissible judicial determination of "fair" market prices. For this reason, the filed rate doctrine and federal preemption bar the City's unfounded attack on the prices that Cleco obtained on the wholesale market for power generated at D.G. Hunter.

### 3.    Count III – Transmission Rates

Count III of the City's petition concerns transmission services for wholesale transactions. In a series of conclusory allegations that cannot be accepted as true on a motion to dismiss, the

---

[49]    *TXU Energy*, 413 F.3d at 507; *In re California Wholesale Elec. Antitrust Litig.*, 244 F. Supp. 2d 1072, 1077 (S.D. Cal. 2003) ("[I]n order to resolve Plaintiff's claims and provide it the damages it seeks, the Court would be expressly required to assume a hypothetical rate different from that actually set by FERC. This, the Court cannot do." (internal quotation and citation omitted)).

[50]    *See Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 251 (1951) ("To reduce the abstract concept of reasonableness to concrete expression in dollars and cents is the function of the Commission.").

[51]    City's Petition at ¶ 23.

City contends that Cleco manipulated unspecified transactions. The crux of Count III, however, is a general complaint that transmission costs were too high, and the City requests an award of the economic damages it allegedly incurred as a result.[52] But the City specifically admits that transmission fees are regulated by FERC and that Cleco conducts "transmission operations" pursuant to FERC-approved tariffs:

<blockquote>

26.

The fee that can be charged and the rights of parties to transfer or "wheel" electricity across transmission lines is regulated by the Federal Energy Regulatory Commission ("FERC").

. . . .

28.

. . . Cleco has on file with the FERC an Open Access Transmission Tariff ("OATT"), and a Market Based Rate Transmission Tariff ("MR-1") pursuant to which it conducts its transmission operations.[53]

</blockquote>

Because Cleco's transmission rates are governed by FERC-approved tariffs and its transmission operations are regulated by FERC, any challenge to those rates and operations may only be directed to FERC pursuant to the regulatory scheme established by Congress under the Federal Power Act.[54] Thus, the City's claim must be dismissed.

---

[52]   *Id.* at ¶ 32.

[53]   City's Petition at ¶¶ 26, 28.

[54]   *U.S. by and through Western Area Power Admin. v. Pacific Gas and Elec.*, 714 F. Supp. 1039 (N.D. Cal. 1989) ("The filed rate doctrine provides that a public utility . . . may not collect a rate for transmission or sale other than one filed with FERC . . . . This Court does not have the authority to impose a different rate than the rate filed."). *See also AEP Texas North*, 473 F.3d at 584 (recognizing that the FPA gives FERC exclusive jurisdiction to regulate the transmission and wholesale sale of electric energy in interstate commerce).

4.    **Count IV – Natural Gas Sales**

Count IV of the City's petition concerns the sale of natural gas for use at the City's D.G. Hunter facility.  Under the parties' 2003 Services Agreement, Cleco is the "fuel manager" for the acquisition and delivery of natural gas for the D.G. Hunter facility, and it obtains natural gas from FERC-regulated suppliers.[55]  The City includes in its petition a discussion of the interstate market for natural gas and alleges that Cleco was obligated to secure, in that market, "the lowest price for natural gas that is reasonably possible, using prudent utility practices."[56]  The City's additional allegations in Count IV raise conclusory claims that Cleco fell short of that obligation and mismanaged unspecified fuel transactions, all resulting in "high gas costs" and corresponding economic damage to the City.[57]  Because the same legal principles that bar the courts from determining a hypothetical "fair price" for wholesale electric power also bar damages claims that require a "fair price" determination for natural gas, the claims of Court IV must be dismissed.

The Natural Gas Act ("NGA"), 15 U.S.C. § 717, *et seq.*, sets forth a comprehensive federal regulatory scheme that applies to natural gas transactions in interstate commerce, conferring upon FERC "exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale."[58]  The Federal Power Act and the Natural Gas Act are

---

[55]    *See* Ex. C, 2003 Services Agreement, at § 11.1 and p. 38.

[56]    *See* City's Petition at ¶¶ 34-35, 37.

[57]    *Id.* at ¶ 38.

[58]    *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300-301 (1988) ("The NGA has long been recognized as a comprehensive scheme of federal regulation of all wholesales of natural gas in interstate commerce.") (quotations omitted).

"'substantially identical,' [and] there is an 'established practice of citing interchangeably decisions interpreting the pertinent sections of the two statutes.'"[59]

The relief that the City requests in Count IV of its petition would require the Court to determine a hypothetical fair price for certain unspecified interstate natural gas transactions, but the law does not permit judicial determinations of the reasonableness of the prices in such transactions. Indeed, the United States Supreme Court has struck down court-awarded damages in a case in which the plaintiff sought similar relief, reasoning that such an award would amount to a usurpation of the function that Congress has assigned to FERC, a result prohibited by the Supremacy Clause.[60] Thus, the Court cannot grant the City the relief it seeks here, and its claims must be dismissed.

### 5.    Count V – Fraud Claim

Count V of the City's petition includes scattershot, conclusory allegations of fraud. The City contends that Cleco misrepresented or withheld unspecified information concerning the operation of the City's own electric system to extend and expand the parties' business relationship. As an initial matter, the City's fraud claim should be dismissed because the City does not and cannot state with particularity the circumstances allegedly constituting fraud.[61] According to the Fifth Circuit's well-established rule, "Pleading fraud with particularity in this circuit requires time, place and contents of the false representations, as well as the identity of the

---

[59]    *Grays Harbor*, 379 F.3d at 649 n. 8 (quoting *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 n.7 (1981)).

[60]    *See Ark. La. Gas Co. v. Hall*, 453 U.S. at 581.

[61]    Fed. R. Civ. Proc. 9(b); *Lone Star Ladies Inv. Club*, 238 F.3d at 368.

person making the misrepresentation and what that person obtained thereby,"[62] and the City's petition contains no such details. Furthermore, because the parties' relationship involves the sale and transmission of wholesale energy, the City's request for damages it allegedly sustained in the transactions resulting from the extension and expansion of that relationship is merely a disguised attack on wholesale rates. The courts have rejected similar efforts to escape the application of the filed rate doctrine and federal preemption by couching complaints over pricing in terms of fraud, and, in similar fashion, the City's fraud claim here must be dismissed.[63]

### 6.    Count VI – Louisiana Antitrust Claim

In Count VI of its petition, the City contends that Cleco restrained trade and conspired and attempted to restrain trade in product markets that include electricity generation, wholesale power, transmission services, ancillary services, natural gas trading, and transportation of natural gas, all in violation of Louisiana's antitrust laws. Because (a) the City's antitrust claim relies on allegations that the City was forced to pay rates in excess of those that would have been achieved in a competitive market, and (b) to award damages, the Court would be required to assess the reasonableness of those rates, the claim is both preempted and barred by the filed rate doctrine.[64]

It is well-settled that both field and conflict preemption bar state and federal antitrust

---

[62]    *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (internal quotation and citation omitted).

[63]    *TXU Energy*, 2004 WL 1777597, at *14 (finding that the plaintiff's state-law fraud claim was barred by the filed rate doctrine given that "[a]ny measure of harm suffered by [the plaintiff] as a result of Defendants' fraud could only be determined by calculating the amount [the plaintiff] overpaid for electricity"). *See also Wegoland*, 27 F.3d at 21 ("For only by determining what would be a reasonable rate absent the fraud could a court determine the extent of the damages. And it is this judicial determination of a reasonable rate that the filed rate doctrine forbids."); *Sierra Pacific*, 295 F.3d at 932-33 (finding that the impact of an award of damages based on an alleged fraudulent misrepresentation "would be to undermine FERC's ability to regulate rates").

[64]    *See California Wholesale*, 244 F. Supp. 2d 1072; *TXU Energy, Inc.*, 2004 WL 1777597.

claims when the relief sought would interfere with FERC's exclusive authority under the FPA.[65] And, again, the filed rate doctrine originated in antitrust cases, and courts have held consistently in cases like this one that the doctrine "bar[s] antitrust recovery by parties claiming injury from the payment of a filed rate for goods or services."[66] The City's efforts to plead an antitrust claim cannot overcome these established doctrines.

One other aspect of the City's allegations in Count VI merits brief mention. Although it admits that "the City and Cleco have engaged in transactions which impact the stream of commerce, both intrastate and intestate," the City suggests that its relationship with Cleco primarily concerns intrastate commerce.[67] That suggestion is immaterial and does not impair application of the filed rate doctrine and federal preemption. The federal courts have held that the FPA gives FERC exclusive jurisdiction over the rates charged for wholesale power and transmission over any system that is connected to the national grid *and* that those transactions are necessarily "in interstate commerce."[68] Because Cleco's system is connected to the interstate electricity grid, there is no distinguishing "intrastate element" in this case.[69]

---

[65]    *See, e.g., Snohomish County,* 384 F.3d at 761 (concluding that the plaintiff's state law antitrust claims were preempted); *California Wholesale,* 244 F. Supp. 2d 1072 (finding that the Federal Power Act preempts antitrust claims).

[66]    *TXU Energy,* 2004 WL 1777597, at *7 (citing *County of Stanislaus v. Pac. Gas and Elec. Co.,* 114 F.3d 858, 862 (9th Cir. 1997)). This bar applies to both federal and state antitrust claims. *Id.*

[67]    City's Petition at ¶ 45.

[68]    *New York v. FERC,* 535 U.S. 1, 16 (2002). The transactions still are interstate in nature even if the wholesale power is generated and sold in the same state. *See T&E Pastorino Nursery v. Duke Energy Trading & Marketing, L.L.C.,* 2003 WL 22110491 (S.D. Cal. 2003).

[69]    *Duke Energy Trading & Marketing,* 2003 WL 22110491.

7.    **Count VII – Unfair Trade Practices, Detrimental Reliance, and Negligent Misrepresentation Claims**

In Count VII of its petition, the City – again in scattershot, conclusory fashion – asserts incomplete elements of claims for unfair trade practices, detrimental reliance, and negligent misrepresentation. Regardless of how the City might characterize the claims set forth in Count VII, any remedy that the City may have falls within the exclusive jurisdiction of FERC. Unfair competition and consumer protection claims have repeatedly been dismissed on preemption grounds.[70] Moreover, the City's allegations of detrimental reliance and negligent misrepresentation mirror its fraud assertions in that, to award the damages the City seeks, the Court would be required to determine what the rate for electricity would have been absent Cleco's alleged conduct.[71] The filed rate doctrine and federal preemption bar such judicial determinations, and the City's claims in Count VII must therefore be dismissed.

8.    **Count VIII – Gross Negligence Claim**

The City contends in Count VIII of its petition that Cleco performed unspecified obligations under the parties' agreements in a "grossly negligent" manner and caused the City

---

[70]    *Snohomish County*, 384 F.3d at 761 (concluding that the plaintiff's state-law unfair competition claims were preempted); *California v. Dynegy*, 375 F.3d at 853. Moreover, Cleco is exempt from the provisions of Louisiana's Unfair Trade Practices Act. *See* La. Rev. Stat. § 51:1406, which provides, in pertinent part that "[t]he provisions of this Chapter shall not apply to . . . actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body." *Id.* The City has affirmatively alleged that Cleco is subject to "regulatory oversight by the FERC and the LPSC." City's Petition at ¶ 41. *See also State ex rel. Guste v. Council of City of New Orleans*, 309 So.2d 290, 296 (La. 1975) (finding that gas and electric utility was exempt from regulation under the Louisiana Unfair Trade Practices and Consumer Protection Law).

[71]    *TXU Energy*, 2004 WL 1777597, at *15 ("Any award of damages on [a] negligent misrepresentation claim . . . would require the court to determine what the rate for electricity would have been absent [the] alleged conduct, a practice barred by the filed rate doctrine."). *See also Marcus v. AT & T Corp.*, 138 F.3d 46, 57-58, 64 (2d Cir. 1998) (stating that the plaintiff's claim for negligent misrepresentation was barred by the filed rate doctrine).

"substantial economic damage" by failing to demonstrate "the level of skill, expertise, knowledge and acumen customarily exercised by participants in the wholesale electric generating, sales, marketing and transmission industry."[72] This count contains no specific allegations of fact, but the City's request for damages it allegedly sustained as result of Cleco's actions in the wholesale markets is an impermissible challenge to wholesale rates. The City's conclusory allegations of gross negligence do not allow it to escape application of the filed rate doctrine and federal preemption.[73]

### 9.     Count IX – Rescission

In its final Count, the City contends that it is entitled to the rescission of its agreements with Cleco. As an initial matter, the City's rescission claim should be dismissed because it is grounded in conclusory allegations of fraudulent conduct, but the City does not and cannot state with particularity the circumstances allegedly constituting fraud.[74] Furthermore, the City does not limit its requested relief to setting aside certain unspecified agreements. Instead, the City also seeks in this count "recovery of the substantial economic damage it has incurred," and it asks the Court to nullify any contractual provisions that might limit the City's recoverable damages.[75] The courts have made clear that such claims for monetary relief are barred by the filed rate doctrine and federal preemption, even if styled as a rescission claim.[76] The Court also

---

[72]     City's Petition at ¶ 56-57.

[73]     *See Wah Chang*, 507 F.3d at 1225-26 ("The filed rate doctrine's fortification against direct attack is impenetrable. It turns away both federal and state antitrust actions; . . . it turns away ***state tort actions*** . . . . In short, it turns away attempts . . . which necessarily hinge on a claim that the FERC approved rate was too high and would, therefore, undermine FERC's tariff authority through the medium of direct court actions."(emphasis added)).

[74]     Fed. R. Civ. Proc. 9(b); *Lone Star Ladies Inv. Club,* 238 F.3d at 368.

[75]     City's Petition at ¶¶ 60-61.

[76]     *Grays Harbor*, 379 F.3d at 653.

cannot grant the City the relief it seeks here without determining "fair" prices for the wholesale energy transactions at issue. Such determinations fall within FERC's exclusive jurisdiction, and the City's claim must be dismissed.

### C.    The City cannot seriously dispute that its claims for damages are barred by federal law.

The City cannot seriously oppose Cleco's motion to dismiss, for it acknowledges FERC's exclusive authority in its petition.[77] Moreover, the same body of law that the City relied on when it removed the matter of *Franklin v. City of Alexandria*, No. 07-1011 (W.D. La.), to this Court bars the City's claims in this action. In pleadings in the *Franklin* matter, the City specifically clarified its allegations in this case and stated the following:

- "The Cleco suit directly addresses the City's electrical purchases and transmission costs from Cleco . . . ."[78]

- "Cleco's mismanagement of the City's energy resulted in excessive monthly charges to the City, and thus inflation of the monthly fuel adjustments reflected on utility bills. *These charges challenge the rates and tariffs approved and enforced under federal law, including the FPA and FERC*."[79]

- "[B]oth the sale of power to the City and the transmission of this power by Cleco are governed under authority of filings and tariffs filed with FERC."[80]

- "The allegations regarding fuel cost adjustment and the City's calculations thereunder are entirely based on the application of specific federal orders and tariffs which

---

[77]    City's Petition at ¶¶ 26 ("The fee that can be charged and the rights of parties to transfer or "wheel" electricity across transmission lines is regulated by the Federal Energy Regulatory Commission."); 28 ("Cleco has on file with the FERC an Open Access Transmission Tariff ("OATT"), and a Market Based Rate Transmission Tariff ("MR-1")"); 41 (Cleco is subject to "regulatory oversight by the FERC"); 48 (Cleco is a "utility regulated by the Federal Energy Regulatory Commission").

[78]    City's Mem. in Opp'n to Mot. to Remand (R. Doc. 7-2) in *Franklin v. City of Alexandria*, No. 07-01011 (W.D. La.), at p. 12.

[79]    *Id.* at p. 2 (emphasis added).

[80]    *Id.* at p. 8.

control the cost of transmission or the cost charged for electricity as a product sold in interstate commerce."[81]

- "[T]he fuel costs are the sum of invoices received by the City from LEPA, SWPA and CLECO. These charges are filed with FERC and are part of the statutory scheme of federally regulated tariffs on the sale, distribution and transmission of electricity."[82]

- A challenge to the City's "utility charges and the manner in which these charges are incurred . . . *can only be a challenge to the rates, charges and tariffs filed with FERC* and fall within the exclusive jurisdiction of § 825p."[83]

These statements are binding admissions that prohibit the City from now denying that this action is a challenge to FERC-filed tariffs and rates charged thereunder. On the strength of the City's representations and arguments, the magistrate judge concluded – in the course of a recommendation that was adopted by the Court – that this action and the *Franklin* action present claims that "challenge the rates and tariffs set by federal law under the Federal Power Act (FPA) and enforced by the Federal Energy Regulatory Commission (FERC)."[84]  Under the Fifth Circuit's general rule, "the pleading[s] of a party made in another action . . . are admissible as admissions of the pleading party to the facts alleged therein."[85]  And, as discussed above, this Court may take judicial notice of the pleadings filed in the *Franklin* action.

---

[81]    *Id.* at p. 9.

[82]    *Id.*

[83]    *Id.* at p. 10 (emphasis added).

[84]    Report and Recommendation of 9/17/07 (R. Doc. 13) in *Franklin v. City of Alexandria*, No. 07-01011 (W.D. La.), at p. 4.  *See also* Judgment of 10/16/07 (R. Doc. 16) (denying motion to remand) in *Franklin v. City of Alexandria*, No. 07-01011 (W.D. La.).

[85]    *Continental Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971).  *See also Hardy v. Johns-Mansville Sales Corp.*, 851 F.2d 742, 745 (5th Cir. 1988) (recognizing the "well-established rule that factual allegations in the trial court pleadings of a party in one case may be admissible in a different case as evidentiary admissions of that party").

-21-

IV.    **Conclusion**

The filed rate doctrine and federal preemption bar court actions that seek monetary and other relief and are grounded in complaints over the reasonableness of charges for wholesale energy. As established by Cleco and admitted by the City, the transactions at issue in this case are subject to FERC's exclusive jurisdiction. Accordingly, under federal law and the Supremacy Clause of the Constitution, the City is barred from recovering monetary damages from Cleco in this action, and its claims must be dismissed.

Respectfully submitted,

_____
Richard C. Stanley (# 8487)
W. Raley Alford, III (# 27354)
Alison N. deClouet (#31276)
        Of
STANLEY, REUTER, ROSS,
        THORNTON & ALFORD, L.L.C.
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone:    (504) 523-1580
Telecopier:    (504) 524-0069

-and-

Mark D. Pearce, (#21804)
Cleco Corporation
2030 Donahue Ferry Road
Pineville, Louisiana 71360
Telephone:    (318) 484-7744
Facsimile:    (318) 484-7685

Attorneys for Cleco Corporation, Cleco Power LLC, Cleco Marketing and Trading LLC, Cleco Generation Services LLC, Cleco Midstream Resources LLC, and Cleco Evangeline LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 21st day of October, 2009, I electronically filed the foregoing motion with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.  I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to any non-CM/ECF participants.