

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **CITY OF ALEXANDRIA** | **CIVIL ACTION NO. 1:05-cv-01121** |
| -vs- | **JUDGE DRELL** |
| **CLECO CORP. et al.** | **MAGISTRATE JUDGE KIRK** |

### R U L I N G

Before the Court is a Motion for Leave of Court to File Amended and Restated Complaint (Doc. 269) filed by the plaintiff, the City of Alexandria ("City"). The defendants, Cleco Corp. et al. ("Cleco"), oppose the motion in its entirety.

For the following reasons, the City's motion to amend is hereby **GRANTED**. Disposition will follow by a separate order.

### I. Background

The City filed its original Petition for Damages ("original petition") against Cleco in the Ninth Judicial District Court for the Parish of Rapides in June 2005. (Doc. 1). Cleco removed the lawsuit to this Court on June 24, 2005. (Doc. 2). Since that time, the original petition has not been altered or amended at any point.

Cleco and the City have a longstanding business relationship, whereby Cleco, through a complex series of contracts, agreed to provide various utility services to the City, including monitoring, generation, and marketing services. The City sought relief through nine independent counts in the original petition. Broadly, these counts contained allegations that Cleco manipulated energy transactions and breached its

contractual duties to the City, causing the City and its ratepayers monetary damages.

The three-week trial in this case is, and has long been scheduled to begin on February 22, 2010. Recently, the Court denied the City's attempt to upset that fixing in its Motion to Continue Trial Date and All Other Related Deadlines (Doc. 253), though our ruling did modify some other dates in the Plan of Work filed by the parties. (Doc. 262). Among the deadlines modified was the final day for amending pleadings, which was originally set for November 15, 2009. (Doc. 248). The City did not amend its pleadings prior to that date, but in our denial of the City's motion to continue, the Court reset the deadline for amending pleadings to December 3, 2009. However, bearing in mind the tumultuous history of this case, we explicitly limited such amendments "to those that will have the pleadings conform to the evidence." (Doc. 262, p. 4).

On December 3, 2009, for the first time in the four and one-half-year life span of this litigation, the City sought leave to amend its original petition. (Doc. 269). Attached to the City's motion is a copy of the proposed Amended and Restated Complaint (Doc. 269-2), which reflects a number of substantive changes to the original petition.

Cleco filed an opposition to the motion to amend on December 24, 2009, arguing that all of the proposed amendments should be denied. (Doc. 283). In summary, Cleco opposes: (1) proposed Counts X and XI (respectively, the fiduciary obligations and single business enterprise doctrine counts), because they are both "new"issues which fail to conform to the evidence; and (2) proposed Counts I

through IX, because they fail to add any needed specifics to the City's claims, merely exclude two causes of action which should be dismissed on summary judgment, and otherwise serve only to prejudice Cleco at this late stage in the litigation.

Trial in this matter is impending, and discovery in the case is still ongoing. With these circumstances in mind, we now consider the parties' arguments in more detail.

## II. <u>Law and Analysis</u>

### A. The Motion to Amend *in Globo*

#### 1. *General Standards*

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Cleco does not consent to the proposed amendments, and the City seeks leave to amend its original petition. In this situation, Rule 15(a)(2) directs that "[t]he court should freely give leave when justice so requires." <u>Id.</u> Moreover, in deciding this motion, the Court "must entertain a presumption in favor of granting parties leave to amend." <u>Mayeaux v. La. Health Serv. and Indem. Co.</u>, 376 F.3d 420, 425 (5th Cir. 2004).

Prior to the entry of judgment in a case, Rule 15(a) "endows a district court with 'virtually unlimited discretion' to allow amendments" to the pleadings. <u>Benson v. St. Joseph Reg'l Health Ctr.</u>, 575 F.3d 542, 550 (5th Cir. 2009) (quoting <u>Vielma v. Eureka Co.</u>, 218 F.3d 458, 468 (5th Cir. 2000)). A district court's denial of a motion to amend is subject to review for abuse of discretion. <u>See, e.g.</u>, <u>Coghlan v. Wellcraft Marine Corp.</u>, 240 F.3d 449, 452 (5th Cir. 2001). The Fifth Circuit has noted that, in

3

light of the presumption in favor of liberal pleading, "the term 'discretion' in this context 'may be misleading, because [Rule] 15(a) evinces a bias in favor of granting leave to amend.'" Mayeaux, 376 F.3d at 425.

In fact, while we retain broad authority to allow amendments to the pleadings, our discretion is restrained against denying a timely motion to amend: "[A]bsent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party,[1] 'the discretion of the district court is not broad enough to permit denial.'" Id. (quoting Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co., 195 F.3d 765, 770 (5th Cir. 1999)). As such, when a proposed amended pleading states potentially viable claims, the Court is strongly compelled to grant a motion to amend by the principles described above. See Coghlan, 240 F.3d at 452 ("It contravenes the liberal pleading presumption of Rule 15(a) and constitutes an abuse of discretion for a district court to deny a timely motion to amend where the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.").

There are limits, however, to the liberality with which courts may grant a motion to amend. It is true, as Cleco asserts, that the bias in favor of granting a Rule 15(a) motion to amend "is not automatic," although a "substantial reason" to deny the motion must nonetheless be present. *In re* Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996). Moreover, "[l]iberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time," and the Fifth Circuit has

---

[1] The court draws this "oft-cited list of justifications" for denying a motion to amend from the United States Supreme Court's opinion in Foman v. Davis, 371 U.S. 178, 182 (1962).

noted the importance of protecting "'a busy district court (from being) imposed upon by the presentation of theories seriatim.'" <u>Daves v. Payless Cashways, Inc.</u>, 661 F.2d 1022, 1025 (5th Cir. 1981).

We observe at the outset that there have been no allegations by Cleco, and there are no indications before the Court, that the City has filed the instant motion in "bad faith" or with a "dilatory motive." <u>Mayeaux</u>, 376 F.3d at 425 (citing <u>Foman</u>, 371 U.S. at 182). In addition, technical deficiencies in the original petition are not in contention, and therefore "repeated failures to cure" such deficiencies may not serve to justify denial of the City's motion to amend. <u>Id.</u> As such, the remaining issues before the Court are "undue delay," "undue prejudice," and whether the proposed amendments conform to the evidence, as ordered by the Court. <u>Id.</u>

  2. <u>Rule 16(b)</u>

There appears to be some dispute between the parties as to whether Fed. R. Civ. P. 16(b) should govern our determination of this motion. However, Rule 16(b) "governs amendment of pleadings *after a scheduling order's deadline to amend has expired*," and provides that good cause must be shown in order to justify a modification of the scheduling order. <u>Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.</u>, No. 09-40164, 2009 WL 4877946, at *11 (5th Cir. Dec. 18, 2009) (citing <u>Fahim v. Marriott Hotel Servs., Inc.</u>, 551 F.3d 344, 348 (5th Cir. 2008)) (emphasis added). The heightened "good cause" standard requires the movant to show that, although the movant has been diligent, "the deadlines [contained in the scheduling order] cannot reasonably be met." <u>S & W Enters., LLC v. Southtrust Bank of Ala., NA</u>, 315 F.3d 533,

535 (5th Cir. 2003) (internal citations omitted).

Rule 16(b) does not apply in this case. The relevant "scheduling order" was issued by this Court on November 24, 2009 (Doc. 262), where we denied the City's Motion to Continue Trial Date (Doc. 253), and reset a number of dates originally listed in the scheduling order (Doc. 246-2). The new deadline for filing amended pleadings was set for December 3, 2009, and the City met that deadline. (Doc. 262). As such, the elevated "good cause" requirement is inapposite, and the liberal pleading standard of Rule 15(a) governs in this case.

### 3. *The Issue of Futility*

At several points in its opposition, Cleco contends that the proposed amended complaint, and in particular, Counts I through IX, are "futile." (Doc. 283, p. 3). We agree that if proposed amendments to the pleadings are "frivolous or futile," it is within our discretion under Rule 15(a) to deny a motion to amend. Ayers v. Johnson, 247 F. App'x 534, 535 (5th Cir. 2007) (quoting Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co., 195 F.3d 765, 771 (5th Cir. 1999)).

However, we do not agree that the City's proposed amendments are, in fact, "futile." The Fifth Circuit has employed that term with reference to claims that are, for instance, precluded by the requirements of standing or ripeness,[2] time-barred,[3] or generally unable to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for

---

[2] Ayers, 247 F. App'x at 535-36 ("In his third motion to amend, [the plaintiff] sought to add a claim that does not satisfy the requirements of standing or ripeness, the addition of which would have been futile. The court thus did not abuse its discretion in denying the motion.").

[3] Newby v. Enron Corp., 542 F.3d 463, 469 (5th Cir. 2008) ("[A] court need not grant leave to amend when the filing would be futile because the proposed claims are time-barred.").

failure to state a claim upon which relief may be granted.[4] Cleco does not explicitly argue that any of these infirmities bar the proposed amendments.

Rather, Cleco contends that the "proposed amended complaint adds nothing new," or fails to allege further specifics regarding the claims in the original petition. (Doc. 283, p. 8). This is, quite simply, not a sufficient ground upon which to deny the motion to amend, particularly under the guise that the proposed amendments are futile. The City is not required to justify the proposed amendments by proving that they add more specific factual allegations to the complaint, or cure pleading deficiencies identified by the Court, as Cleco seems to suggest. Instead, the amended complaint contains facially viable claims, which is sufficient to invoke the liberal pleading presumption of Rule 15(a). See Coghlan, 240 F.3d at 452. Moreover, the fact that the amended complaint formally excludes certain claims which have now been abandoned merely helps to streamline the progress of the litigation, and in no way burdens or prejudices Cleco.[5] As such, the motion to amend is not denied on the ground of futility.

### 4. *The Timing of, or Delay in Filing, the Motion to Amend*

Finally, Cleco argues that the Court, in line with Fifth Circuit precedent, may deny the motion to amend in part because it has been filed "on the eve of trial." (Doc.

---

[4] Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 ("While this court has not specifically defined "futility" in this context, we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted. . . . As these courts have done, to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6).") (internal citations and quotations omitted).

[5] We are aware of Cleco's pending motion for summary judgment, seeking dismissal of the antitrust and rescission claims. (Doc. 280). However, we find it equally expedient to allow the plaintiff to excise these claims via amendment, rendering the motion moot, instead of granting the motion.

283, p. 3). In support of this argument, Cleco cites Daves v. Payless Cashways, Inc., a case in which the plaintiff sought leave to amend her complaint on the day of trial, following the closure of discovery, and after nineteen months had passed since the institution of the litigation. See 661 F.2d at 1024. When viewed in context, however, the opinion is clearly distinguishable from the case at bar. To begin with, the court in Daves used the phrase "on the eve of trial" quite literally, as the motion to amend considered in that case came on the day of trial. See id. Here, however, the "eve of trial" will not arrive until February 22, 2010, more than two months after the City filed its motion to amend. Furthermore, discovery is still ongoing in this case, and the City's delay in seeking to amend its complaint, though much longer than the one in Daves, was also much more defensible, as we will discuss further below.

Cleco also cites *In re Southmark Corp.*, a bankruptcy case in which the Fifth Circuit affirmed the district and bankruptcy courts' denial of a plaintiff's motion to amend when no trial date had been set, discovery was ongoing, the parties had taken "a nine month 'hiatus'" to discuss settlement, and no dispositive motions had been filed. See 88 F.3d at 315. In Southmark, however, the plaintiff "offer[ed] no reasonable explanation for its delay in amending its complaint," and the facts underlying the amended complaint were well-known to the plaintiff before the original complaint was filed thirteen months before. See id. at 316.

Here, by contrast, the City does offer a reasonable explanation for its delay, and is refining its original petition based, at least in part, upon facts and evidence that it uncovered during discovery. To be sure, this amended complaint comes well

8

after the removal of the lawsuit to this Court - approximately fifty-three months later. However, we note once again that the City's motion to amend was filed within the Court's rescheduled deadline. The Court denied the City's motion to continue the trial date, expressing our confoundment at the City's protests that discovery remained in its "infancy." (Doc. 262). However, we granted the request to extend the amendment deadline to accommodate some of the practical difficulties that may have been created by, among other things: (1) the parties' lengthy attempt at early mediation and settlement, which prompted the Court to stay the litigation at certain intervals; (2) a later 120-day stay issued on May 23, 2008 at the request of the parties (Doc. 117), and extended through September 30, 2008 (Doc. 131); (3) the six-month order of dismissal issued on December 31, 2008 pending final confection of a settlement (Doc. 143), and the subsequent reopening of the case upon failure of that settlement on October 16, 2009 (Doc. 238); and (4) the complexity of the case, and the purportedly slow progression of discovery. Those rationales hold true in our determination here, and serve to justify the City's delay in filing the motion to amend.

Furthermore, Cleco was well aware of the deadline to file amended pleadings, and of the Court's restrictions upon such amendments. The proposed amended complaint, in very large part, does not constitute a sea change in the City's claims, strategy, or even the likely course that discovery will take. Even absent the City's justifications, we cannot say that the delay was "undue" in the sense that it was prolonged out of mere neglect, or to "ambush" Cleco just before trial.

We note that the timing of the motion (and the import of any additional claims

or legal theories given that timing) bears upon our determination of the degree of prejudice that Cleco may suffer as a result of the amendments to the complaint. That issue, along with the conformity of the amendments to the evidence, will be discussed more fully below. However, given the nature of the amendments proposed by the City, and the somewhat atypical progression of this case, the Court finds that the City did not unduly delay in filing the motion to amend.

### B.  Counts I Through XI

The first nine counts of the proposed amended complaint are essentially refinements of the nine counts contained in the original petition. Broadly, the amendments clarify and expound upon the City's initial allegations. In fact, at some points, the amended complaint seeks to specify, for instance, the manner in which Cleco allegedly manipulated transactions to the detriment of the City, an ambiguity which Cleco has repeatedly complained of in its filings with this Court.[6] Even if unsuccessful, we can find no fault or prejudice in the City's attempt at clarification. Rather, we consider that purpose of the proposed amended complaint favorable to the City's motion to amend. See Chitimacha Tribe of La. v. Harry L. Laws Co., Inc., 690 F.2d 1157, 1163 (5th Cir. 1982) ("[T]he court should consider whether the amendment adds substance to the original allegations, and whether it is germane to the original case of action.").

---

[6] We agree with Cleco that the proposed amended complaint does not detail the specific transactions or representations upon which the City's claims are based. However, it does, at a minimum, clarify some alleged methods of breach, such as that "Cleco sold energy produced by Cleco to third parties whose characteristics insured that additional Cleco services would be required." (Doc. 269-2, p. 13). Nonetheless, more specificity is not required by the general pleading rules contained in Fed. R. Civ. P. 8, or by the liberal pleading presumption contained in Rule 15(a).

Perhaps the most telling statement in Cleco's opposition to the motion to amend is this: "Counts I through IX include no new issues or claims and do not add more specific factual allegations." (Doc. 283, p. 2). That statement aptly summarizes the Court's reasoning as to why amended Counts I through IX should be allowed. The allegations contained in the amended complaint purportedly conform to the evidence, and Cleco does not argue otherwise. Because the amended counts do not present new claims, Cleco has not been deprived of the opportunity to file dispositive motions relative to the existing claims.[7]

Moreover, because the substance of these claims has been known to Cleco throughout the entire course of the litigation, the Court can see no prejudicial effect of allowing the amendments. Cleco claims that prejudice may result, but fails to explain how or why that may be so beyond its statement that "[g]ranting the City's motion for leave to amend would interrupt [the parties'] focus" upon "discovery, dispositive motions, and trial preparation." (Doc. 283, p. 8). Again, however, Counts I through IX do not represent a change of legal or procedural course on the City's behalf, and thus, will not alter the direction of discovery, dispositive motions, or trial preparation.

Therefore, because Counts I through IX of the proposed amended complaint conform to the evidence, and will cause no undue prejudice to Cleco, the City's motion to amend as to Counts I through IX will be GRANTED.

---

[7] Indeed, by filing five independent motions for summary judgment, Cleco certainly availed itself of the opportunity to file dispositive motions pursuant to a deadline reset by the Court in the same order resetting the deadline to file amended complaints. As these motions relate to the same claims as are found in Counts I through IX of the proposed amended complaint, with the exception of the antitrust and rescission claims (which are no longer in contention), no unfairness to Cleco will result from the City's amendments.

### C. Count X - Breach of Fiduciary Duty Claim

Count X of the City's proposed amended petition alleges that Cleco owed fiduciary duties to the City under La. R.S. 42:1461(B), and breached those duties to the monetary detriment of the City and its ratepayers. Cleco opposes this count on two grounds: (1) the governing statute has never been cited in the case, although the facts underlying the count have long been known to the City, and thus, its use as the basis for a new count in the proposed amended complaint may be denied at the Court's discretion; and (2) the City misrepresents facts by asserting that Cleco was the City's "primary source of energy," meaning that the count does not conform to the evidence. (Doc. 283, pp. 3-5). We will consider these arguments in turn.

First, it is correct that La. R.S. 42:1461 has not been previously cited by the City in this case. However, we cannot conclude, and Cleco does not expressly argue, that breach of fiduciary duty is a completely new or unanticipated doctrine of recovery. To the contrary, the original petition asserts, at least in general terms, that Cleco breached its fiduciary duties to the City: "Due to the degree of control exercised by Cleco over the City's utility operations and the public trust and confidence which the City placed in Cleco in connection with this important public function, Cleco has a fiduciary responsibility to the City to perform the obligations contained within the referenced agreements . . . ." (Doc. 1, p. 3). Although the statute was not specifically cited in the original petition, we will allow the City to explore a viable legal basis of recovery, particularly when it has been alluded to in prior pleadings.

We must also consider whether the allegations in Count X conform to the

evidence. The relevant portions of the La. R.S. 42:1461 provide as follows:

> B. When, pursuant to a statute, ordinance, resolution, or contract or other agreement, a public entity, as defined in Subsection A, entrusts to a contractor or to a quasi-public entity of any kind the care, administration, allocation, or disposition of funds, property, or other things of value belonging to it or under its custody or control, the contractor or the quasi-public entity, and the officers and employees thereof personally, shall be deemed to have undertaken the obligation of a fiduciary with respect to such funds, property, or other things of value of the public entity.
>
> C. The breach of an obligation established under this Section gives rise to an action in favor of the public entity for the recovery of any such funds, property, or other things of value and for any other damages resulting from the breach. This action is prescribed by ten years, reckoning from the date on which the breach occurred.

The provision is phrased in very general terms, and given that fact, we find that the evidence before the Court appears, at least on face, to conform to the statute.

First, the role of the party contracted by the public entity may include being entrusted with "the care, administration, allocation, or disposition of" public property. See id. Second, the property itself may constitute "funds, property, or other things of value belonging to [the public entity] or under its custody or control." See id. The public entity (in this case, the City) is vested with a right of action to recover for the breach of the fiduciary's obligations. See Dutton & Vaughan, Inc. v. Spurney, 496 So. 2d 1126, 1128 (La. App. 4th Cir. 1986).

While the evidence may not indicate that "Cleco is to be '[the City's] primary source of energy' [or] that the City has abdicated responsibility for its utility system," it does indicate that Cleco may have been entrusted with the "care, administration, allocation, or disposition of" at least some "funds, property, or other things of value

13

belonging to [the City] or under its custody or control." (Doc. 283, p. 4). The contract indicates that Cleco was vested with various monitoring, transactional, and marketing responsibilities involving public property owned or controlled by the City. Moreover, we agree with the City that whether Cleco was intended to be its primary source of energy, or whether it relinquished some or all control over its utility operations to Cleco, is likely irrelevant to the City's prospects of recovering under the statute. All of this is not to say that other trial evidence will not contradict the contracts themselves. However, that is a determination reserved for trial.

Because Count X conforms to the contract evidence, and is not unduly prejudicial to Cleco, the City's motion to amend as to Count X will be GRANTED.

### D.   Count XI - The Single Business Enterprise Doctrine

The final Count in the City's proposed amended complaint alleges that the various Cleco entities which have been named as defendants in this litigation "constitute a single business enterprise under applicable Louisiana law," and thus "are each liable, *in solido*, for all of the damages incurred by the City." (Doc. 269-2, p. 25). Cleco contends that this amendment conforms to no evidence before the Court, constitutes a change in the City's position, and would cause prejudice to Cleco because of the complex and drastic nature of the remedy.

The single business enterprise doctrine is "[t]ypically used in the context of liability. . . [and] applies 'when corporations are not operated as separate entities, but integrate their resources to achieve a common business purpose.'" Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 428 (5th Cir. 2005) (quoting Gardemal v. Westin

Hotel Co., 186 F.3d 588, 594 (5th Cir. 1999)). "[T]he single business enterprise doctrine is an equitable remedy and not a cause of action." 91 F. App'x 901, 904 (5th Cir. 2003) (citing Gardemal v. Westin Hotel Co., 186 F.3d 588, 594 (5th Cir. 1999)).

In the context of this litigation, the doctrine would allow the Court to disregard the corporate form separating each of the named defendants, and to impose liability upon them *in solido*. In re Ark-La-Tex Timber Co., Inc., 482 F.3d 319, 335 (5th Cir. 2007) (quoting Brown v. Auto. Cas. Ins. Co., 644 So. 2d 723, 727 (La. App. 1st Cir. 1994) ("[W]hen a group of affiliated corporations constitutes a single business enterprise, a court may 'disregard the concept of corporate separateness and extend liability to each of the affiliated corporations' for the purpose of preventing fraud or achieving equity."). However, the decision is not a simple one to make; Louisiana courts typically employ a "non-exhaustive, non-dispositive list" of eighteen independent factors "to determine whether a group of related companies is a 'single business enterprise.'" Rive v. Briggs of Cancun, Inc., 82 F. App'x 359, 367 (5th Cir. 2003) (citing Green v. Champion Ins. Co., 577 So. 2d 249, 257-58 (La. App. 1st Cir. 1991)).[8]

---

[8] The eighteen factors listed by the Green court are:
1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control; 2. common directors or officers; 3. unified administrative control of corporations whose business functions are similar or supplementary; 4. directors and officers of one corporation act independently in the interest of that corporation; 5. corporation financing another corporation; 6. inadequate capitalization ("thin incorporation"); 7. corporation causing the incorporation of another affiliated corporation; 8. corporation paying the salaries and other expenses or losses of another corporation; 9. receiving no business other than that given to it by its affiliated corporations; 10. corporation using the property of another corporation as its own; 11. noncompliance with corporate formalities; 12. common employees; 13. services rendered by the employees of one corporation on behalf of another corporation; 14. common offices; 15. centralized accounting; 16. undocumented transfers of funds between corporations; 17. unclear allocation of profits and losses between

We disagree with Cleco's first contention that this proposed amendment is a drastic change in course. Rather, in the original petition, the City clearly alluded to some of the core elements of this remedy:

> The named defendants, as they have been renamed, consolidated, merged and/or restructured during the time pertinent hereto, are all affiliated, have a commonality of shareholders, owners, members, directors, and officers in common, are subsidiaries, parent companies and/or holding companies of each other, and in their joint and several capacities as such, entered into contracts and/or agreements with the City and incurred legal and contractual obligations to the City, which agreements, relationships, manners of dealing, and obligations have been induced and performed in such a manner as to bring the causes of action asserted by the City herein under the jurisdiction and purview of this Court.

(Doc. 1, p. 2). Given these assertions, it is highly unlikely that Cleco is now surprised at the City's attempt to pursue any form of joint corporate liability available. As noted above, the single business enterprise doctrine is merely an equitable remedy, not a new cause of action. That it has been pleaded specifically in the amended complaint, and was merely touched upon in the original complaint, does not necessarily mean that Cleco will be unduly burdened by its addition to the lawsuit. We find Cleco's arguments as to potential prejudice unpersuasive.

Cleco, however, cites a portion of Count VI from the original petition, the state antitrust count, which seems to contradict the above statement quoted by the City: "The affiliates with whom Cleco has participated in restraining trade or commerce, or with whom Cleco has conspired to restrain trade or commerce are not subsidiaries

---

corporations; and 18. excessive fragmentation of a single enterprise into separate corporations.

577 So. 2d at 257-58.

that Cleco controls, nor are such affiliates wholly owned subsidiaries controlled by the same common parent." (Doc. 1, pp. 20-21). As is evidenced by the eighteen-factor Green test, however, these statements, even if accepted as true, would not be sufficient to constitute a full "admission" that the named defendants were not acting as a single business enterprise.

Moreover, former Count VI has been abandoned in its entirety in the proposed amended complaint. Thus, even if the statements in the original petition are contradictory, the allegations contained in the proposed amended complaint are consistent. In addition, counsel for the City has represented to the Court that evidence in related cases, and evidence currently being gathered in this case, will support the City's contentions as to this Count, justifying the proposed amendment under the Court's order.[9]

Therefore, because Count XI conforms to the evidence and is not unduly prejudicial to Cleco, the City's motion to amend as to Count XI will be GRANTED.

### E. The Antitrust and Rescission Claims

Lastly, the City's antitrust and rescission claims, Counts VI and IX in the

---

[9] We are quizzed at the City's insistence upon including this count, given that the proposed amended complaint is replete with allegations of joint acts of fraud on the part of the named defendants. Under Louisiana law, such intentional acts may give rise to solidary liability. See La. Civ. C. art. 2324(A); see also Boudreaux v. Jeff, 884 So. 2d 665, 674 (La. App. 1st Cir. 2004) ("When the action is performed intentionally, with the assistance of a co-conspirator, both persons are solidarily liable for the damage caused by their actions."); Hernandez v. Chalmette Medical Ctr., 869 So. 2d 141, 147 n.2 (La. App. 4th Cir. 2004) ("[Article] 2324 was amended in 1996 to limit solidary liability for tortfeasors to intentional tortfeasors. Liability for damages caused by two or more non-intentional tortfeasors is now a joint and divisible obligation."). The Court certainly does not have enough evidence before it to make a determination as to the viability of this count on the merits. We merely hold that the inclusion of the count in the proposed amended complaint contravenes neither our order nor the requirements of Rule 15(a).

17

original petition, are formally abandoned in the proposed amended complaint. Both parties have acknowledged this abandonment, and in the interest of efficiency, the Court will allow the claims to be excised by the City's amendments rather than by granting Cleco's motion for summary judgment (Doc. 280) in a separate order.

Because the antitrust and rescission claims are no longer in contest, and because the City's proposed amended complaint excludes any reference to those claims, Cleco's Motion for Partial Summary Judgment on Antitrust and Rescission Claims (Doc. 280) will be DENIED AS MOOT. Likewise, the antitrust and rescission claims are DISMISSED.

### III. Conclusion

We reiterate that the trial date in this matter is quickly approaching, and the time has come to bring a final resolution to this case in one way or another. A critical step toward that goal is to clarify and streamline the issues on which the parties may still have a viable dispute. The City's proposed amended petition appears to be a genuine effort to do just that. What's more, the proposed amendments do not seem to be an attempt by the City to ambush or disadvantage Cleco in any way.

Therefore, the City's Motion for Leave of Court to File Amended and Restated Complaint (Doc. 269) will be GRANTED.

SIGNED on this 11 day of January, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE