RECEIVED
IN ALEXANDRIA, LA.

JAN 2 2 2010

TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CITY OF ALEXANDRIA | CIVIL ACTION NO. 1:05-cv-01121 |
| -vs- | JUDGE DRELL |
| CLECO CORP. et al. | MAGISTRATE JUDGE KIRK |

R U L I N G

Now pending before the Court are four motions for summary judgment filed by the defnedants, Cleco Corp. *et al.* ("Cleco"), against the plaintiff, the City of Alexandria ("City").  For the reasons described below, the Court's rules as follows:

(1)   Cleco's Motion for Summary Judgment Under Interconnection Agreement (Doc. 277) will be **DENIED**;

(2)   Cleco's Motion for Partial Summary Judgment on Prescription (Doc. 278) will be **DENIED**;

(3)   Cleco's Motion for Partial Summary Judgment on the City of Alexandria's Claim Under the Louisiana Unfair Trade Practices Act (Doc. 279) will be **GRANTED**; and

(4)   Cleco's Motion for Partial Summary Judgment on Waiver and Release of Claims Under 2002 Services Agreement (Doc. 281) will be **DENIED**.

Disposition will follow by a separate judgment.

I.   **Background**

This lawsuit arises out of a longstanding contractual relationship between the City and Cleco.  The defendant, Cleco, is a utility company that owns and operates an electrical utility system.  This system is connected to the interstate electricity grid.

1

The City is a utility itself, and operates a power generating facility known as the D.G. Hunter Generating Station ("D.G. Hunter"). As a municipality, the City provides retail electricity services to the residents of Alexandria, Louisiana.

Pursuant to a number of agreements executed by the parties, Cleco provided various utility services to the City, and incidentally, continues to do so. The City relies, in part,[1] upon Cleco to provide a portion of the energy ultimately consumed by its residents. Cleco was also obligated to monitor and administer the City's utility operations in a manner intended to minimize costs, conduct purchases and sales of energy on the City's behalf, and arrange for the purchase and delivery of natural gas for use at D.G. Hunter, among other services.[2]

In June 2005, the City filed suit against Cleco in the Ninth Judicial District Court for the Parish of Rapides. Cleco removed the lawsuit to this Court on June 24, 2005. (Doc. 2). The Court recently granted the City's motion to amend its original petition. (Doc. 269). In the eleven counts of the amended complaint, the City alleges that Cleco breached numerous contractual duties, manipulated transactions, and misrepresented or concealed information, all to the City's monetary detriment.

On December 21, 2009, Cleco filed five motions for summary judgment, four partial and one global, attacking various elements of the City's claims. (Docs. 277-81). These motions were filed before we granted the City's motion to amend. One of Cleco's motions sought dismissal of the City's antitrust and rescission claims. (Doc.

---

[1] The City also receives energy from other sources through its membership in the Louisiana Energy and Power Authority ("LEPA").

[2] More details regarding the agreements and obligations between the parties will be discussed as they become relevant.

2

280).  However, those claims were abandoned in the amended complaint, and were thus dismissed by the Court, rendering that particular motion moot.  Cleco's other four motions remain viable despite the amendments to the City's petition.  Absent a dispositive ruling on Cleco's motions, or a settlement between the parties, trial of the remaining issues in this case will begin on February 22, 2010.

## II.   Law and Analysis

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), the Court will grant a party's motion for summary judgment only if:

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In conducting this analysis, the Court must construe "all of the evidence and all of the factual inferences from the evidence . . . in a light most favorable to the party opposing the motion."  King Realty Co., Inc. v. Chevron USA, Inc., 575 F.3d 510, 517 (5th Cir. 2009).  Any doubts are likewise resolved in favor of the nonmoving party.  U.S. ex rel. Longhi v. United States, 575 F.3d 458, 465 (5th Cir. 2009).  Once the movant has directed the Court's attention to portions of the record which reflect an absence of a genuine issue of material fact, the nonmoving party bears the burden of demonstrating that a genuine issue of material fact exists.  United States v. $

3

92,203.00 in U.S. Currency, 537 F.3d 504, 506-07 (5th Cir. 2008).  "However, mere

conclusory allegations are not competent summary judgment evidence, and such

allegations are insufficient, therefore, to defeat a motion for summary judgment."

Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).

> Moreover, Fed. R. Civ. P. 56(f) provides that:
>
> If a party opposing the motion shows by affidavit that, for specified
> reasons, it cannot present facts essential to justify its opposition, the
> court may:
>> (1) deny the motion;
>> (2) order a continuance to enable affidavits to be obtained,
>> depositions to be taken, or other discovery to be
>> undertaken; or
>> (3) issue any other just order.

The requirement that the nonmoving party set forth specific facts showing that there

is a genuine issue of material fact is "qualified by Rule 56(f)'s provision that summary

judgment be refused where the nonmoving party has not had the opportunity to

discover information that is essential to his opposition."  Anderson, 477 U.S. at 250

n.5.[3]  Rule 56(f) motions are generally favored and should therefore be granted

liberally.  Stearns Airport Equip. Co., Inc. v. FMC Corp., 170 F.3d 518, 534-35 (5th Cir.

1999).  The purpose of Rule 56(f) is to "'to safeguard against a premature or

improvident grant of summary judgment.'"  Brown v. Miss. Valley State Univ., 311

F.3d 328, 333 n.5 (5th Cir. 2002) (quoting Washington v. Allstate Ins. Co., 901 F.2d

1281, 1285 (5th Cir. 1990)).  To obtain relief under Rule 56(f), the nonmovant "must

---

[3] One practical function of Rule 56(f) is to allow for "further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."  Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006).

4

show: (1) why he needs additional discovery and (2) how that discovery will create a genuine issue of material fact." <u>Adams v. Travelers Indem. Co. of Conn.</u>, 465 F.3d 156, 162 (5th Cir. 2006).[4]

### B.     The Motion for Summary Judgment Under Interconnection Agreement

The first motion filed by Cleco seeks summary judgment dismissing the City's claims for alleged "overcharges" via "enforcement" of the parties' Electric System Interconnection Agreement ("Interconnection Agreement"). (Doc. 277).  More specifically, Cleco argues that the Interconnection Agreement required the City to notify Cleco in writing of any disputed charges within 60 days.  Failing such notification, the City was deemed to have waived any dispute as to the rates charged by Cleco.  Because the City never formally disputed any of the charges at issue in this litigation, Cleco argues that the City has waived any claims related to those charges.[5]

The City responds that its claims do not relate to "overcharges," meaning that the waiver provision in the Interconnection Agreement is inapplicable.  Instead, the

---

[4]  We note that no formal Rule 56(f) motion was filed by the City.  Rather, the City argues that disposition of the motions would be premature, and requests that we deny the motions under Rule 56(f).  Throughout its opposition, the City repeatedly claims that further discovery is needed because of logistical problems in taking depositions and the slow pace of document disclosure.  To that end, counsel for the City filed an affidavit in conjunction with the City's opposition to the pending motions, which provides as follows: "Despite diligent and tireless efforts to conduct discovery, the City simply cannot present adequate countervailing affidavits or other discovery evidence with facts essential to oppose Cleco's summary judgment motions at this time." (Doc. 296-2, p. 5).  The Court will evaluate the City's arguments regarding prematurity and the need for further discovery under the general requirements of Rule 56(f) to determine whether further discovery is needed and may raise a genuine issue of material fact.

[5]  As this motion was filed before the amended complaint, Cleco sought dismissal of all nine counts of the original petition.  We will interpret the motion as seeking dismissal of the City's entire lawsuit as it currently stands under the amended complaint.

City maintains that it seeks damages for breaches of contractual and fiduciary duties arising from separate, independent contracts, among other related claims. Moreover, Cleco "has intentionally concealed the basis under which the City might have disputed such charges," according to the City, and thus, the waiver provision is not enforceable. (Doc. 296, p. 25).

The Interconnection Agreement was executed by Cleco Power, LLC and the City on May 13, 1986, and remains in effect to this date. Section 9.3 of the Interconnection Agreement, which is titled "Dispute of Billing," provides as follows:

> If a purchasing Party disputes the charges submitted by a supplying Party under this Agreement, the purchasing Party shall nevertheless pay the full amount when due and payable and give notification in writing, within sixty (60) days of the date the bill is rendered, to the supplying Party stating the grounds on which charges are disputed and the amount in dispute. The complaining Party shall not be entitled to any adjustment on account of any disputed charges which are not, within the time and in the manner herein specified, brought to the attention of the Party making such charges. If settlement of the dispute results in a refund, the refund shall include interest at the maximum legal interest rate under Louisiana law from the date of overpayment to the date of refund.

(Doc. 277-3, pp. 16-17). This provision is the operative ground upon which Cleco seeks dismissal of all of the City's claims related to alleged overcharges for its energy and other utility services.

1.    *Governing Law*

As an initial matter, it is undisputed that the Interconnection Agreement is a contract filed with and approved by the Federal Energy Regulatory Commission ("FERC"). As discussed extensively in the Court's ruling (Doc. 273) denying Cleco's

6

Motion to Dismiss Under Filed Rate Doctrine and Federal Preemption (Doc. 241), the
Federal Power Act ("FPA") "gives FERC exclusive jurisdiction to regulate the
transmission and wholesale sale of electric energy in interstate commerce." AEP
Tex. N. Co. v. Tex. Indus. Energy Consumers, 473 F.3d 581, 584 (5th Cir. 2006).  The
Court's ruling detailed the reasons that FERC's exclusive jurisdiction does not, at this
point, bar our consideration of the merits of the City's claims.  However, FERC's
approval of the Interconnection Agreement carries with it further implications under
the filed rate doctrine as well: "'[T]he filed rate doctrine is not limited to 'rates' per
se.'  The states are bound to implement a FERC-approved agreement." See id.
(quoting Nantahala Power & Light Co. v. Thornburg, 476 U.S. 953, 966 (1986)).  Thus,
as a FERC-filed contract, the terms of the Interconnection Agreement fall within the
boundaries of the filed rate doctrine.

        However, this does not mean that state substantive law does not apply to the
City's claims.  Those claims are, in essence, state law claims seeking damages for
breach of contract and fraud.  Our ruling denying Cleco's motion to dismiss
recognized the implications of FERC's approval of many of the agreements at issue in
this case, but did not preclude the application of state law to the City's claims.  To
the contrary, we held, in accordance with Fifth Circuit precedent, that certain state
law claims could be asserted without infringing upon the parameters of the filed rate
doctrine, and without implicating FERC's exclusive jurisdiction or unique expertise.
See, e.g., In re Mirant Corp., 378 F.3d 511, 518 (5th Cir. 2004) ("[T]he FPA does not

7

provide FERC with exclusive jurisdiction over the breach of a FERC approved contract.  While the FPA does preempt breach of contract claims that challenge a filed rate, district courts are permitted to grant relief in situations where the breach of contract claim is based upon another rationale.").  Thus, the City's claims are governed by state law.[6]

In any case, we agree with Cleco's contention that "Louisiana law allows the parties to shorten the applicable prescriptive period by agreement." (Doc. 305-2, p. 7).  Article 3471 of the Louisiana Civil Code states that "[a] juridical act purporting to exclude prescription, to specify a longer period than that established by law, or to make the requirements of prescription more onerous, is null."  However, "Louisiana jurisprudence generally has allowed the parties contractually to shorten the prescriptive period" despite the general prohibition contained in article 3471.  Sasol Wax Americas, Inc. v. Hayes/Dockside, Inc., No. 06-4790, 2008 WL 2067007, at *3 (E.D. La. May 14, 2008) (citing La. Health Serv. & Indem. Co. v. McNamara, 561 So. 2d 712, 719 (La. 1990)); accord Rochon v. Equitable Life Ins. Soc. of U.S., No. 08-5023, 2009 WL 5215963, at *2 (E.D. La. Dec. 29, 2009) ("In Louisiana, parties are generally permitted to contractually shorten the applicable prescriptive period, if such limitation does not contravene a state statute or public policy."); Noland v. Sun Life

---

[6] The City argues that Section 13.1 of the Interconnection Agreement itself subjects the agreement to state law.  The provision states that "[t]his Agreement is made subject to and shall be governed by the laws of the State of Louisiana and all the terms and provisions hereof and the rights and obligations of the Parties hereto shall be construed and enforced in accordance with the laws of said State, and in accordance with any applicable Federal law." (Doc. 277-3, p. 19).  Because the clause clearly states that "any applicable Federal law" must be applied as well, the provision could not serve to prohibit application of the filed rate doctrine.

8

Assurance Co. of Canada, 252 F.3d 436 (5th Cir. 2001) ("[U]nder Louisiana law, the parties to an insurance policy may contractually agree to limit the period within which suit must be filed, that such a contractual period of prescription is valid so long as it does not contravene a state statute or public policy."). While the 60-day limitation is a relatively short one, the agreement is one between sophisticated parties, and is FERC-approved. We cannot conclude, at least at this juncture, that Section 9.3 violates public policy or a state statute. In principle, then, we do not find a basis in state law to invalidate Section 9.3 of the Interconnection Agreement.

### 2.      *Application of Section 9.3*

Having determined that Section 9.3 is, on face, an enforceable provision, we must now consider the effect that the provision may have on summary judgment. We hold that any decision as to the applicability of Section 9.3 must be deferred for a determination on the merits. As such, we decline to address the balance of the parties' arguments at this point.

One of the City's principal arguments is that "the Interconnection Agreement cannot be enforced where Cleco has intentionally concealed the basis under which the City might have disputed such charges." (Doc. 296, p. 25). Essentially, the City argues that Cleco's acts of fraud may have prevented it from exercising its rights under Section 9.3, if indeed the clause would bar its claims based upon other agreements. Although we do not find that the City has presented sufficient evidence to raise a genuine issue of material fact, we do find that the argument warrants our decision to forego a determination under Rule 56(f).

9

Cleco cites no binding federal authority which makes Section 9.3, as a clause in a FERC-filed contract, impervious to claims that the provision was, for example: (1) executed only after fraudulent inducement; (2) perpetuated and repeatedly consented to under fraudulent guises, vitiating the City's consent; or (3) rendered ineffectual by Cleco's active, fraudulent suppression of the very grounds upon which the Section 9.3 could have been invoked by the City.  Instead, Cleco relies heavily upon the First Circuit's decision in <u>Boston Edison Co. v. F.E.R.C.</u>, where the court found that " FERC's initial acceptance of [a long-term energy contract] for filing placed Paragraph C-8.3 [a claims limitation clause] within the sheltered lee of the filed rate and <u>Mobile-Sierra</u> doctrines."  856 F.2d 361, 371 (1st Cir. 1988).  This reliance is unavailing for a number of reasons.

First, and most obviously, the First Circuit's interpretation of the FPA is not binding upon this Court.  Second, the opinion contains no reference to how state law claims may impact the applicability of a claims limitation clause in a FERC-approved contract.  Most critically, the <u>Boston Edison</u> court's reasoning does not mandate a particular conclusion in a case such as this:

> [W]here, as here, a contract term provides that an overcharge-that is, a charge in excess of a "just and reasonable" rate-is actionable only within a specific period of time, that term clearly "affect[s] or relate[s]" to the rate, so that the contract term is to be treated as an integral part of the rate schedule and the filed rate.

<u>Id.</u> at 371.[7]  The court essentially held that FERC was not authorized "retroactively to

---

[7] Charges became incontestable after one year under the claims limitation clause in <u>Boston Edison</u>, as opposed to the mere sixty days allotted in Section 9.3 of the Interconnection Agreement here.  856 F.2d at 368.

override a reasonable claims limitation clause" contained in a FERC-filed contract. Id. at 373.  By contrast, we need not override Section 9.3 in order to deny summary judgment at this point.  The First Circuit's opinion, even if it were binding upon us, does not foreclose state law claims that fraud may have vitiated the City's consent to the Interconnection Agreement, or effectively prevented the City from disputing a charge.

In short, we do not decide whether Section 9.3 would preclude claims made by the City relating to fraudulent breaches of obligations contained in other contracts. Instead, we hold that, at this point, we have insufficient evidence before us to determine whether Section 9.3 would be impacted by the City's claims of, for instance, fraud and bad faith concealment.  Even if we concede the First Circuit's point - that a claims limitation clause in a FERC-filed contract "is part and parcel of the rate schedule for purposes of the filed rate doctrine" - separate claims challenging a utility's conduct which do not implicate FERC's exclusive jurisdiction may still be viable.  Id. at 371.  Furthermore, these types of claims, if substantiated, may significantly affect the applicability of the claims limitation clause in Section 9.3.[8]

_____

[8] It is axiomatic that fraud may vitiate a party's consent to a contract, as we will discuss more fully below.  See La. Civ. C. art. 1955.  Moreover, the Fifth Circuit explicitly listed fraud as an exception to the application of the filed rate doctrine in certain circumstances.  See Gulf States Utils. Co. v. Ala. Power Co., 824 F.2d 1465, 1471-72 (5th Cir. 1987).  Put another way, the filed rate doctrine does not bar state law fraud claims: "[T]he FPA would not necessarily forbid the district court to set aside contracts obtained unconscionably or by fraud.  The FERC does not warrant that filed contracts . . . are free from fraud."  See id. at 1472.  This language seems to directly contradict the City's reading of the Boston Edison case.  Thus, in spite of the limitations imposed by the filed rate doctrine, the City may be able to assert viable state law claims for fraud in this case.  Moreover, any ambiguity in a release provision, such as a lingering question as to whether the provision waives potential fraud claims, must be resolved against a construction which would make the future claim effective.  See Durio v. Metropolitan Life Ins. Co., 653 F. Supp. 2d 656, 662 (W.D. La. 2009).  Finally, the City may be able to argue that Cleco's alleged intentional concealment of the basis of a dispute may have prevented the running of the shortened prescriptive period under the contra non valentem doctrine.  This doctrine

At this point, we have precisely no evidence as to whether Cleco's alleged fraudulent activities precluded the City from disputing a charge under the Interconnection Agreement, or any of the other related agreements involved in this litigation.  It is on that limited basis that we make our determination here.  We agree with Cleco that, when the issues remaining in a case are "purely legal in nature," a district court does not abuse its discretion in denying a summary judgment motion before discovery is completed.  Rosas v. U.S. Small Business Admin., 964 F.2d 351, 359 (5th Cir. 1992).  We do not agree that the remaining issues in the case are *purely* legal.  While the interpretation of Section 9.3 is a legal question, its *application* is not, given the other claims and added complexities of this case.  Thus, returning to the general rule that "'[s]ummary judgment should not . . . ordinarily be granted before discovery has been completed,'"[9] we decline to rule on the complex issues presented by this motion until both parties have the opportunity to discover and present any relevant evidence.

The record is presently replete with verification that discovery is still proceeding at an active pace, with our knowledge and understanding.  Thus, denial of the motion at this point is, in effect, a referral of the merits of the motion to the trial. Therefore, Cleco's Motion for Summary Judgment Under Interconnection Agreement

---

halts prescription when, for instance, "the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action."  Renfroe v. State *ex rel.* Dep't of Transp. and Dev., 809 So.2d 947, 953 (La. 2002); see also Gonzales v. Gonzales, 20 So. 3d 557, 562 (La. App. 4th Cir. 2009) ("To determine whether a claim is prescribed, a court looks to the time when a plaintiff knew or should have known that a cause of action arose or existed and prescription statutes are strictly construed against prescription and in favor of the claim that is said to be extinguished.") .

[9] Xerox Corp. v. Genmoora Corp., 888 F.2d 345, 354 (5th Cir. 1989) (quoting Ala. Farm Bureau Mut. Cas. Co., Inc. v. Am. Fid. Life Ins. Co., 606 F.2d 602, 609 (5th Cir. 1979)).

(Doc. 277) will be DENIED at this time.

### C.   The Motion for Partial Summary Judgment on Prescription

In its second motion, Cleco contends that certain claims should be dismissed as prescribed, or alternatively, for lack of evidence.  In particular, Cleco seeks dismissal of: (1) the City's fraud claims (which are now Counts V-VI in the amended complaint) as they pertain to damages sustained prior to June 22, 2004; (2) the City's negligence claim (Count IX) as it pertains to damages sustained prior to June 22, 2004; (3) the City's Louisiana Unfair Trade Practices Act (LUTPA) claim (Count VIII), as it pertains to damages sustained prior to June 22, 2004;[10] and (4) the City's breach of contract claims (Counts I through IV), which Cleco argues "actually sound in tort" and are thus subject to a one-year prescriptive period as well (Doc. 278, p. 2).

### 1.   *The City's Tort Claims*

Cleco argues that the City's claims which overtly sound in tort, and which seek damages incurred prior to June 22, 2004, are prescribed.  Indeed, under La. Civ. C. art. 3492 "[d]elictual [tort] actions are subject to a liberative prescription of one year," which "commences to run from the day injury or damage is sustained."  Commentary accompanying this article clarifies that the scope of delictual liability includes "intentional misconduct" and "negligence."  See id. cmt. b.  Moreover, fraud claims are usually considered to be delictual in nature, and are therefore subject to the one-

---

[10]  Because the Court will grant Cleco's motion for summary judgment seeking dismissal of the City's LUTPA claim on separate grounds, its motion on prescription grounds is moot.  Likewise, Cleco's arguments as to the City's antitrust claim, which has already been dismissed, are also moot.

year prescriptive period of article 3492.  Shermohmad v. Ebrahimi, 945 So. 2d 119, 122 (La. App. 5th Cir. 2006).

The amended complaint contains eleven independent counts.  As we will discuss further below, the first four counts of the complaint clearly relate to alleged breaches of contract.  For purposes of clarity, however, we find it necessary to identify the specific counts in the complaint which may be delictual.  They are, to wit: (1) Count V, the City's fraud claim, which is labeled "Material Misrepresentations Or Omissions"; (2) Count VI, "Bad Faith Concealment," which complains of the procurement of the City's consent to contract by fraudulent means; and (3) Count IX, "Gross Negligence."[11]  These are the particular counts in the amended complaint which, at first glance, may be subject to a one-year prescriptive period.

In response, the City advances three principal arguments, the first of which is that Cleco's actions constituted a continuing tort.  The Louisiana Supreme Court has defined a "continuing tort" as "one 'where the operating cause of injury is a continuous one and gives rise to successive damages,'" or a tort that "'is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act.'"  Miller v. Conagra, Inc., 991 So. 2d 445, 456 (La. 2008) (quoting Crump v. Sabine River Auth., 737 So. 2d 720, 726 (La. 1999)).  If Cleco's alleged misconduct did, in fact, amount to a continuing tort, the beginning of the prescriptive period applicable to the

---

[11] Count VI, "Detrimental Reliance," is discussed in a subsequent section of this ruling.  Count VIII, the City's LUTPA claim, will be dismissed.  Count X, the City's breach of fiduciary duty claim, is subject to a statutory prescriptive period of ten years.  See La. R.S. § 42:1461(C).  Count XI, the Single Business Enterprise Doctrine claim, is not a cause of action subject to a separate prescriptive period, but is merely an equitable remedy.  See W. Oil & Gas JV, Inc. v. Castlerock Oil Co., Inc., 91 F. App'x 901, 904 (5th Cir. 2003) (citing Gardemal v. Westin Hotel Co., 186 F.3d 588, 594 (5th Cir. 1999)).

City's claims may be significantly delayed, thus precluding dismissal of those claims:

> The continuing tort doctrine is a jurisprudentially recognized exception to the general rules of prescription. Under the continuing tort doctrine, when the cause of injury is a continuous one giving rise to successive damages, prescription does not begin to run until the conduct causing the damage is abated. Stated otherwise, if both the tortious conduct and the damages continue, the tort may be deemed a "continuing" one and prescription may not begin to run until the wrongful conduct ceases.

Watters v. Dep't of Soc. Servs., 15 So. 3d 1128, 1158 (La. App. 4th Cir. 2009) (internal citations and quotations omitted).

The City also contends that the doctrine of *contra non valentem*[12] may apply in this case.  This doctrine "provides that prescription does not run against one who is ignorant of the facts upon which their cause of action is based, and is an exception to the statutory prescriptive period where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues." Advanced Commercial Contracting v. Powell Ins. Agency, No. 09-CA-758, 2009 WL 5125360, at *4 (La. App. 5th Cir. Dec. 29, 2009).  The Louisiana Supreme Court has applied the doctrine of *contra non valentem* in four circumstances to prevent the running of the prescriptive period:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or

---

[12] The complete title of this doctrine is *contra non valentem non currit praescriptio*, or "prescription does not run against one who cannot bring suit."  Artholee v. Trinity Universal Ins. Co. of Kansas, 3 So. 3d 611, 613 (La. App. 3d Cir. 2009).

(4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.

Renfroe, 809 So.2d at 953.  If this doctrine were to find support in the evidence, then once again, the prescriptive period could be significantly altered.

Finally, the City urges us to characterize its fraud-based claims, Counts V and VI in the amended complaint, as contractual in nature.  The City correctly observes that "it is the nature of the duty breached that should determine whether an action is in tort or in contract," rather than its designation.  Trinity Universal Ins. Co. v. Horton, 756 So. 2d 637, 638 (La. App. 2d Cir. 2000).  The allegations in Counts V and VI are, respectively, that Cleco fraudulently breached its contractual duties, and fraudulently induced the City's consent to the contracts.  In either case, the City contends that the "nature of the duty breached" by Cleco is contractual.[13]

Each of these issues has the potential to alter the City's chances of recovery. At this point, the Court simply does not have enough evidence to make a firm decision as to the viability of the City's arguments.  The progress of discovery, as it

---

[13]  Generally, fraud claims are considered to be delictual, and are subject to a one-year prescriptive period.  See, e.g., Shermohmad, 945 So. 2d at 122.  However, the City's fraud claims in Count V may also be grounded, by nature, in contractual obligations.  See generally Keenan v. Donaldson, Lufkin & Jenrette, Inc., 575 F.3d 483, 487 (5th Cir. 2009) ("[W]hen evaluating which prescriptive period is applicable to a cause of action, courts first look to the character of the action disclosed in the pleadings.") (quoting SS v. State ex rel. Dep't of Soc. Servs., 831 So. 2d 926, 931 (La. 2002)); Davis v. A.G. Edwards and Sons, Inc., 635 F. Supp. 707, 714 (W.D. La. 1986) ("An action in fraud may contain elements which are both contractual and delictual. Where the duty breached arises in contract, violation of that duty constitutes a breach of contract.").  Moreover, under Count VI, the City claims that Cleco's fraud vitiated the City's consent to the relevant contracts, and seeks damages in lieu of rescission of the contracts.  While most fraud cases are characterized as delictual in nature, there is at least some authority for the proposition that claims of fraud vitiating consent to a contract may be subject to a ten-year liberative prescription period.  See Harrell v. Fid. Sec. Life Ins. Co., No 07-1439, 2008 WL 170269, at *6 (E.D. La. Jan. 16, 2008).

16

has been represented to the Court, has likely not been sufficient to enable the City to adequately substantiate its claims. For instance, evidence obtained in discovery may show that Cleco was committing continuing torts against the City, that Cleco successfully concealed the grounds of the City's claims such that they were not reasonably knowable for purposes of the *contra non valentem* doctrine, or that Cleco's fraud contravened its contractual obligations, precluding Cleco's prescription arguments. Further discovery and presentation of evidence at trial is necessary in order to properly decide these claims. As such, under the auspices of Fed. R. Civ. P. 56(f), the Court will defer this issue to the merits.

Therefore, Cleco's Motion for Partial Summary Judgment on Prescription will be DENIED as to Counts V, VI, and IX.

2.    *The City's Breach of Contract Claims*

Under Louisiana law, "personal actions," such as actions seeking damages for breach of contract, are subject to a ten-year prescriptive period. See La. Civ. C. art. 3499; see also Richard v. Wal-Mart Stores, Inc., 559 F.3d 341, 345 (5th Cir. 1999) ("Contract actions are governed by a ten year prescriptive period."). Thus, to the extent that the City's claims are rooted in contractual, rather than delictual liability, those claims would not be subject to a one-year prescriptive period.

Counts I-IV of the amended complaint state claims for breach of contract. While each of the counts cites a different obligation which Cleco allegedly breached, they all contain the following language: "Cleco's actions are contrary to its duties

17

and/or obligations to the City under the 1998 Letter, Services Agreement, and the other agreements resulting in substantial economic damage to the City."  (Doc. 290, p. 12).

Cleco contends, however, that the City's purported breach of contract claims are, in truth, disguised tort claims subject to a one-year prescriptive period.  "The correct prescriptive period to be applied in any action depends on the nature of the action; it is the duty breached that should determine whether an action is in tort or contract."  Terrebonne Parish Sch. Bd. v. Mobil Oil Corp., 310 F.3d 870, 886 (5th Cir. 2002).  The distinction between contractual and delictual claims is that contractual damages "flow from an obligation contractually assumed by the obligor," while delictual damages "flow from a violation of general duty owed by all persons."  See id. at 886-87.  Thus, in order to maintain a claim for breach of contract, the claimant must allege that the defendant breached a particular contractual provision or duty. See Richard, 559 F.3d at 345.  Even if the parties are bound by a contract, "unless a specific contract provision is breached, Louisiana treats the action as tort."  See id. (citing Trinity Universal Ins. Co., 756 So. 2d at 638).

In this case, Counts I-IV each contain an allegation that Cleco violated a particular contractual duty owed to the City.  The "Factual Allegations" section of the complaint makes reference to two agreements executed by Cleco and the City in 1998 which, the City contends, governed the relationship between the parties at least until 2003.  These agreements are referred to as the "1998 Letter" and "Service

Agreement."  The Service Agreement identifies a number of obligations contractually

assumed by Cleco, including the obligation to "use commercially reasonable efforts"

to provide for "Alexandria's Municipal Load in a manner intended to minimize the

cost of serving the Municipal Load."  (Doc. 290, p. 8).  Moreover, the 1998 Letter

purportedly obligates Cleco "to provide the City with energy at the 'lowest available

market cost.'" (Doc. 290, p. 5).  It is these specific contractual duties which the City

contends were breached by Cleco.  While the City's claim that duties contained in

"other agreements" may also have been breached is vague, its allegations are

sufficient to place Counts I-IV within the contractual ambit for purposes of

prescription.[14]

Counts I-IV and Count X of the City's amended complaint are subject to a ten-

year prescriptive period.  Therefore, Cleco's Motion for Partial Summary Judgment on

Prescription will be DENIED as to Counts I-IV and Count X.

### 3.    *The City's Detrimental Reliance Claim*

Finally, there is considerable discussion in the parties' filings as to the nature

of the City's detrimental reliance claim, which is Count VII of the amended complaint.

(Doc. 290).  In that count, the City contends that it "entered into the agreements with

Cleco based upon its representations to the City that it would perform the obligations

of the agreements in a manner which would benefit the City," and ultimately, that the

City "relied, to its detriment, on Cleco's deceit, misrepresentations and omissions."

---

[14] As noted above, the City's breach of fiduciary duty claim in Count X, which arises from the contracts executed between the parties, "is prescribed by ten years, reckoning from the date on which the breach occurred."  See La. R.S. § 42:1461(B).

19

(Doc. 290, p. 22).  Cleco maintains, under the language of the original petition, that the City's detrimental reliance claim is grounded in tort, rather than a failure to fulfill contractual obligations.[15]

Under Louisiana law, detrimental reliance claims are governed by La. Civ. C. art. 1967, which provides, in part, as follows: "A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying."  As a general matter, detrimental reliance claims  are subject to a prescriptive period of ten years.  See Keenan, 575 F.3d at 486; Stokes v. Ga.-Pac. Corp., 894 F.2d 764, 770 (5th Cir. 1990).

However, once again, "[t]he prescriptive period is not determined by the label of the cause of action but by 'the nature of the transaction and the underlying basis of the claim.'"  Copeland v. Wasserstein, Perella & Co., Inc., 278 F.3d 472, 479 (5th Cir. 2002) (quoting Davis v. Parker, 58 F.3d 183, 189 (5th Cir. 1995)).  Therefore, a detrimental reliance claim may, by nature, sound in tort and become subject to a one-year prescriptive period.  The Fifth Circuit has held that "although *non* feasance in the performance of an obligation creates a cause of action that prescribes in ten years, *mis* feasance in the performance of a contract for professional services, such as those provided by a lawyer, doctor, accountant, or insurance agent, gives rise to a

---

[15]  In fairness to Cleco, the motion was filed before the original petition was amended.  The language of the City's detrimental reliance claim was altered substantially during the amendment process.  As such, we will construe Cleco's arguments as broadly as possible to encompass the language of the amended complaint.

claim in tort, which prescribes in one year." Id. The Copeland court explained that the employment of certain professionals, such as financial advisers, implies a duty of "reasonable diligence" in the performance of the task for which the professional was employed. See id. at 479-80. This type of claim is considered delictual for purposes of prescription. See id.

Our task is to determine whether the City's allegations comport more closely to the reasoning of the Stokes or the Copeland court. In this case, the detrimental reliance count contains numerous references to the governing contracts between the parties. The complaint states that the City entered into the various agreements with Cleco in reasonable, but detrimental, reliance upon Cleco's representations that it would perform its contractual obligations in good faith, and to the economic benefit of the City. Moreover, the City avers that Cleco's misrepresentations contravened those very contractual obligations.

The basis of the City's detrimental reliance claim is firmly grounded in contract; specifically, in Cleco's alleged nonfeasance in the performance of its contractual obligations, rather than any acts of misfeasance "in the performance of a contract for professional services." Copeland, 278 F.3d at 479. The City accurately characterizes Cleco's contractual obligations to use "prudent market practices" and to minimize costs as distinctions to the Copeland decision, where the employment of financial advisers implied a general duty to serve the plaintiff "diligently, in accordance with the standard of care among financial advisers." See id.

21

Again, while arguably vague, these particular obligations are sufficient to place the City's claims in the contractual, rather than the delictual, realm.  Therefore, Cleco's Motion for Partial Summary Judgment on Prescription will be DENIED as to Count VII.

### D.   The Motion for Partial Summary Judgment on the City of Alexandria's Claim Under the Louisiana Unfair Trade Practices Act

Cleco next seeks dismissal of the City's LUTPA claim, arguing that: (1) the City lacks standing to assert the claim because it is neither a consumer nor a business competitor of Cleco; (2) Cleco is not subject to regulation under LUTPA; (3) any possible LUTPA claim would be preempted by the Federal Energy Regulatory Commission's ("FERC's") exclusive jurisdiction over wholesale markets; and (4) the City cannot produce any evidence of Cleco's liability under the statute.  Because we find Cleco's first argument sufficient to warrant summary judgment, we rule exclusively upon standing grounds, and we do not address Cleco's remaining arguments in this ruling.

#### 1.   *General Standards*

The LUTPA proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  See La. R.S. § 51:1405(A).  While the term "unfair" is not defined in the statute, Louisiana courts have interpreted the statute to cover acts which "offended 'established' public policy and were 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" Omnitech Int'l, Inc. v. Clorox Co., 11 F.3d 1316, 1332 (5th Cir. 1994)

22

(citing <u>Monroe Med. Clinic, Inc. v. Hosp. Corp. of Am.</u>, 522 So. 2d 1362, 1365 (La. App. 2d Cir. 1988)).  Furthermore, § 1409(A) of the act provides a private right of action to "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405."  La. R.S. § 51:1409(A).

The essential purpose of the LUTPA is to "'deter injury to competition.'" <u>Reingold v. Swiftships, Inc.</u>, 126 F.3d 645, 652-53 (5th Cir. 1997) (quoting <u>Omnitech</u>, 11 F.3d at 1331).  By nature, then, the statute serves to protect consumers and business competitors from economic losses incurred as a result of unfair or deceptive activity.  <u>See</u> <u>Schenck v. Living Ctrs.-East, Inc.</u>, 917 F. Supp. 432, 439 (E.D. La. 1996).

Critical to our determination here is the issue of standing.  The LUTPA provides a right of action to a very limited segment of potential claimants: "To have standing under LUTPA the plaintiffs must demonstrate that they are consumers or business competitors."  <u>Tessier v. Moffatt</u>, 93 F. Supp. 2d 729, 734 (E.D. La. 1998) (citing <u>Delta Truck & Tractor, Inc. v. J.I. Case Co.</u>, 975 F.2d 1192 (5th Cir. 1992)); <u>accord</u> <u>Tubos de Acero de Mex., S.A. v. Am. Int'l. Inv. Corp., Inc.</u>, 292 F.3d 471, 480 (5th Cir. 2002) ("LUTPA's private right of action is limited to direct consumers or to business competitors.").  Thus, in order to avoid dismissal, there must be some indication that the City qualifies as either a consumer or a business competitor.

2.    *The City is Not a "Consumer"*

In its amended complaint, the City alleges that it is a "consumer" with

standing to assert a LUTPA claim.  (Doc. 290, p. 23).  In the LUTPA, Congress defined the term "consumer" rather generally: "'Consumer' means any person who uses, purchases, or leases goods or services."  La. R.S. § 51:1402(1).  A "person" under the statute includes "a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity."  Id. § 51:1402(8).

The LUTPA also defines the term "consumer transactions" as "any transaction involving trade or commerce to a natural person, the subject of which transaction is primarily intended for personal, family, or household use."  Id. § 51:1402(3).  Cleco argues that the City's energy purchases do not constitute "consumer transactions." In support of this argument, Cleco cites Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc., a decision in which the Fifth Circuit affirmed a district court's dismissal of a plaintiff's LUTPA claim on standing grounds.  922 F.2d 220, 225-26 (5th Cir. 1991).  The court held that the plaintiff lacked standing under the LUTPA because it was "not a business competitor of [the defendant] and because the purchase of the computer [did] not fall within the definition of a consumer transaction under the Act." Id. at 226.  This opinion provides a telling parallel to this case, as the City is not a "natural person" and the transactions at issue were not "intended for personal, family, or household use."  La. R.S. § 51:1402(3).  Rather, the City's claims arise from commercial transactions between two sophisticated entities.  Thus, like the computer purchases at issue in Wang, the City's long-term, wholesale purchases of electrical energy and related services were not "consumer transactions" as defined by the

LUTPA.

The question remains, however, whether the City has standing as a "consumer" under the statute.  This is an issue which has been of considerable controversy among state and federal courts in Louisiana.  Some state courts have held that standing may be asserted by claimants who fall within the broad statutory definitions of the terms "consumer" and "person," as quoted above.  See Indest-Guidry, Ltd. v. Key Office Equip., Inc., 997 So. 2d 796, 807-10 (La. App. 3d Cir. 2008). The City cites two such Louisiana appellate court decisions, both of which advocate a broad application of the statute and allow "business consumers" to assert claims under the LUTPA.[16]  Other courts, including the Fifth Circuit in Wang, have applied a much more limited definition, linking the scope of the term "consumer" with the definition of the term "consumer transaction" in the LUTPA.  See id.

However, "notwithstanding the disparate treatment accorded the LUTPA in the state courts, the federal courts in this circuit have been consistent in denying a right of action to 'business consumers.'"  Cent. Healthcare Servs., Inc. v. Eterna Petersburg, Inc., No. Civ.A. 04-580, 2004 WL 1823036, at *2 (E.D. La. Aug. 16, 2004) (chronicling the history of federal courts' rejection of LUTPA claims made by "business consumers").  The Fifth Circuit in Tubos limited the private right of action under the LUTPA to "direct consumers or to business competitors."  292 F.3d at 480. Moreover, the court's decision in Wang, which remains uncontroverted, effectively

---

[16]  See Barrios v. Assocs. Commercial Corp., 481 So. 2d 702, 705 (La. App. 1st Cir. 1985); Roustabouts, Inc. v. Hamer, 447 So. 2d 543, 548 (La. App. 1st Cir. 1984).

precludes LUTPA claims which do not arise from "consumer transactions." <u>See</u>
<u>Wang</u>, 922 F.2d 220, 225-26; <u>see also</u> <u>Lambert v. Bd. of Comm'rs of Orleans Levee</u>
<u>Dist.</u>, No. 05-5931, 2009 WL 152668, at *8 (E.D. La. Jan. 22, 2009) ("[T]he Fifth Circuit
has restricted the definition of 'consumer' under LUTPA to individuals who are
participants in a 'consumer transaction.'"). As Fifth Circuit precedent currently
stands, "business consumers," like the City in this case, do not have standing to
assert a private right of action under the LUTPA.

We do have concerns as to whether the issue should be revisited by the state
supreme court or the Fifth Circuit, but those concerns are irrelevant at this juncture.
With state appellate court opinions divergent on the issue, and no definitive
resolution of this conflict by the Louisiana Supreme Court, we are bound to apply
Fifth Circuit interpretations of the statute.[17] Therefore, we find that the City lacks

---

[17] Other federal district courts have consistently reached the same conclusion. <u>See, e.g.</u>, <u>Gulf</u>
<u>Coast Autoplex, LLC v. Gen. Motors Corp.</u>, No. 2:08-cv-779, 2008 WL 4558212, at *2 (W.D. La. Oct. 9,
2008) ("Since <u>Wang</u>, federal decisions have consistently interpreted LUTPA as permitting a cause of
action for 'consumer transactions' that are 'primarily intended for personal, family or household use'
and excluding a right of action for 'consumers' outside of this definition."); <u>Sudo Props., Inc. v.</u>
<u>Terrebonne Parish Consol. Gov't</u>, No. 04-2559, 2008 WL 2623000, at *5 (E.D. La. July 2, 2008) ("[U]nder
[<u>Wang</u>], the definition of consumer was limited to only those transactions including personal, family, or
household use. These holdings preclude business related claims under the statute."); <u>Bensco One, LLC</u>
<u>v. Volkswagen of Am., Inc.</u>, No. 06-1591, 2008 WL 907521, at *10 (E.D. La. Mar. 31, 2008) ("[T]his Court
is obligated to follow the 5th Circuit precedent. As the existing state court precedent is still split on
the issue and the Louisiana Supreme Court has not provided any guidance, the Court, holds that only a
consumer or a business competitor can bring a LUPTA claim."); <u>Cent. Healthcare Servs., Inc.</u>, 2004 WL
1823036, at *3 (dismissing a plaintiff's LUTPA claim because "[t]he contract between defendants and
plaintiff . . . was a commercial transaction between businesses, not a consumer transaction as defined
under LUTPA"); <u>Cashman Equip. Corp. v. Acadian Shipyard, Inc.</u>, No. CIV.A. 01-2411, 2002 WL
1433876, at *2 (E.D. La. June 28, 2002) ("[T]his Court is not bound by the lower Louisiana courts'
decisions. Rather, the Court must 'look to final decisions of the highest court of the state. When there is
no ruling by the state's highest court, it is the duty of the federal court to determine as best it can,
what the highest court of the state would decide.' Moreover, the Fifth Circuit has repeatedly affirmed
its interpretation of the LUTPA as only providing a right of action for consumers and competitors,
despite the Louisiana First Circuit's contrary interpretation, this Court is bound to follow the law in this
circuit.") (quoting <u>Labiche v. Legal Sec. Ins. Co.</u>, 31 F.3d 350, 351 (5th Cir. 1994)).

standing to assert its LUTPA claim as a "consumer."

    3.    *The City is Not a "Business Competitor"*

The City does not allege that it has standing as a "business competitor." While this issue does not require any decision by the Court, we will nonetheless briefly address it for purposes of clarity.

The term "business competitor" encompasses persons who "actually or potentially engage in business that competes directly or indirectly" with the defendant. See Tubos, 292 F.3d at 480. In this case, a number of contracts govern the relationship between the City and Cleco. In general terms, these contracts establish a system of obligations whereby Cleco performs various utility services for the City. This relationship cannot reasonably be construed as one between "business competitors," and the City could not claim to have standing on that basis.

There is no genuine issue of material fact as to whether the City has standing to assert a LUTPA claim, and Cleco is entitled to judgment as a matter of law. Therefore, Cleco's Motion for Partial Summary Judgment on the City of Alexandria's Claim Under the Louisiana Unfair Trade Practices Act (Doc. 279) will be GRANTED, and Count VIII of the amended complaint will be DISMISSED WITH PREJUDICE.[18]

---

[18] The City's arguments seeking the opportunity to conduct further discovery are completely irrelevant to our disposition of this motion. We grant this particular motion based upon a point of federal law, and upon facts which are well-known to the parties and will not be altered by any amount of discovery. "A party cannot evade summary judgment simply by arguing that additional discovery is needed, and may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." See Adams, 456 F.3d at 162 (internal quotations omitted).

**E.     The Motion for Partial Summary Judgment on Waiver and Release of Claims Under 2002 Services Agreement**

Finally, one of the named defendants, Cleco Marketing & Trading LLC ("CMT"), moves for summary judgment dismissing "any claims against CMT relating to power sales to the City during the period of August 21, 2002, through May 19, 2003." (Doc. 281, p. 1).  On August 21, 2002, CMT and the City executed two agreements, a Services Agreement ("2002 Services Agreement") and a Master Power Purchase & Sale Agreement ("2002 Master Agreement").  These contracts were terminated by the execution of a document titled Termination of Master Power Purchase and Sale Agreement and Services Agreement ("Termination Agreement") on May 19, 2003.  CMT argues that, in the Termination Agreement, the City waived and released any potential claims involving power sales against CMT.

The City summarizes its opposition to this motion by stating that "a release or waiver of claims in meaningless agreements only to protect Cleco is worthless." (Doc. 291-2, p. 41).  The implication of this statement is that Cleco is, and was, attempting to shield itself from liability based upon a waiver of claims executed in favor of an affiliated subsidary controlled by Cleco.[19]  With that general idea in mind, the City submits that the following factual issues remain for our determination: (1) what purpose was served by interposing CMT  into the relationship between Cleco

---

[19]  The City emphasizes that its relationship with Cleco was extremely complex, and was governed by numerous agreements at that time.  This portends the possibility that liability may be found under other contracts that were not terminated, and under which the City did not expressly waive all potential claims.  Enforcing the waiver and release in the Termination Agreement does not alter the City's prospects for recovering under other valid contracts.  But the existence of other such contracts and agreements does not impact the enforceability of the Termination Agreement.

and the City; (2) who was trading for the City's energy between the time that CMT was essentially shut down and the date on which the two agreements with CMT were terminated; and (3) whether the mayor of Alexandria, who executed the Termination Agreement on behalf of the City, signed the agreement in error because he did not have sufficient knowledge of Cleco's activities to give knowing and voluntary consent.

The first two points may be addressed summarily.  The question presented by Cleco's motion is whether we should enforce, on summary judgment, the waiver and release of claims against CMT; in other words, whether the waiver and release was valid.  Neither of the City's first two arguments raise genuine issues of material fact as to that central issue.[20]  The waiver applies only to CMT, and only to claims that may arise under the two listed agreements.  No other entities or contracts are implicated.  Thus, CMT's role in the overall business relationship, the likely role of other named defendants, and the parties' motivations for executing and terminating the agreements, are not material issues to the validity of the waiver and release.

If there were no countervailing arguments by the City, our disposition of this motion would depend largely upon our interpretation of the Termination Agreement .  The guiding principles of contract interpretation under Louisiana law have been summarized as follows:

Contracts have the force of law between the parties, and the courts are

---

[20]  If these questions are somehow relevant to the City's position beyond the scope of the waiver, then the City may certainly present evidence answering the questions at trial.  For purposes of evaluating the waiver and release, however, the questions are irrelevant.

> bound to interpret them according to the common intent of the parties.
> La. Civ. Code arts.1983 and 2045. If the words of the contract are clear,
> unambiguous, and lead to no absurd consequences, the court need not
> look beyond the contract language to determine the true intent of the
> parties. La. Civ. Code art. 2046. "Each provision in a contract must be
> interpreted in light of the other provisions so that each is given the
> meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

Decker v. Cox Commc'ns La., LLC, No. 09-655, 2009 WL 4824713, at *3 (La. App. 3d

Cir. Dec. 16, 2009) (quoting Boykin v. PPG Indus., Inc., 987 So. 2d 838, 842 (La. App.

3d Cir. 2008)).  Thus, when the terms of a contract are unambiguous, this Court "has

no authority to reach beyond the four corners of the document."  Tex. E. Transmission

Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998).

     The fourth numbered paragraph of the Termination Agreement reads:

"Alexandria waives and releases any claims it may have against CMT under the

Master Agreement and Services Agreement." (Doc. 281-3, p. 1).  No ambiguity exists

in this waiver provision, and thus, we need to look no further than these terms to

discover the City's intent.  Skinner v. Derr Constr. Co., 850 So. 2d 24, 27 (La. App. 4th

Cir. 2003) ("[W]here no ambiguity exists, the contract should be enforced as written.

A contract is the law between the parties and is the measure of their rights and

responsibilities.") (internal citation omitted).  However, the City asserts that genuine

issues of material fact remain as to whether the waiver was induced by fraud.

Although counsel's arguments are not totally clear, the error may have arisen from

Cleco's alleged deliberate failure to inform the mayor of the regulatory investigations

that were ongoing against Cleco at that time, or from some other fraudulent conduct

concealment by Cleco which vitiated the mayor's consent.  Alternatively, it may have arisen, as alleged by the City, from the complex relationship between Cleco Power, LLC, and CMT in the trading of energy on the City's behalf, during relevant time periods.  These issues are the countervailing factors which narrowly justify our denial of the motion.

The City correctly states that, as a matter of law, "even facially valid releases 'may be upset by vices of consent consisting of error, fraud, violence and threats.'" Stanley v. Trinchard, 500 F.3d 411, 430-31 (5th Cir. 2007) (quoting Moak v. Am. Auto. Ins. Co., 134 So. 2d 911, 915 (1961)).[21]  "[F]raud in the inducement of a contract cannot be waived."  Shelton v. Standard/700 Assocs., 798 So. 2d 60, 64 (La. 2001).  It is also well settled that release provisions must be construed narrowly.  See Travelers Ins. Co. v. McDermott Inc., No. Civ.A. 01-3218, 2003 WL 21999354, at *7 (E.D. La. Aug. 22, 2003) (citing Young v. Equifax Credit Info. Servs., 294 F.3d 631, 637 (5th Cir. 2002)); see also Durio v. Metropolitan Life Ins. Co., 653 F. Supp. 2d 656, 662 (W.D. La. 2009) ("'[R]eleases of future actions are narrowly construed to assure that the parties fully understand the rights released and the resulting consequences.  As a result, if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action.'")

---

[21]  In Stanley, the Fifth Circuit reversed the district court's grant of summary judgment to a defendant insurance company, because genuine issues of material fact remained as to whether the insurance company fraudulently induced the plaintiff's consent to a waiver and release of liability as part of a settlement.  500 F.3d at 431.  The court relied upon the plaintiff's allegations that the insurance company "failed 'to truthfully and accurately communicate essential information' about the . . . policy limits and coverage period as well as the true extent of the liability he would continue to face after the . . . settlement was reached."  Id.

(quoting <u>Young</u>, 294 F.3d at 637).

Under Louisiana law, a party's consent to an agreement may be vitiated by "error, fraud, or duress." La. Civ. C. art. 1948. Moreover, when a party fraudulently induces another party's error, the latter party's consent is nullified if the error "concern[s] a circumstance that has substantially influenced that consent." <u>Id.</u> art. 1955. The City contends that vices of consent have frequently been cited as grounds upon which to rescind a waiver and release of claims, citing a number of Louisiana cases.

In this case, there is at least some possibility that because of alleged misrepresentations and concealment on Cleco's part, the waiver may have been executed by the mayor without full knowledge and consent. While we do not find that the City's response to this motion was sufficient to raise a genuine issue of material fact, we do feel it prudent to defer this issue to the merits under Fed. R. Civ. P. 56(f) at this point.[22] As we observed above, discovery has likely not progressed to a point which would allow the City to oppose this motion adequately. Of course, this is not to say that the evidence at trial will bear out the City's claims; it well may not.

---

[22] Cleco argues forcefully that "[t]he City's decision to forego the submission of evidence and to rely instead solely on argument and supposition removes all doubts that this claim should be dismissed on summary judgment." (Doc. 312, p. 3). It is true that the City does not put forth evidence that a vice nullified the City's consent to the Termination Agreement. That is why the Court finds the City's response inadequate to raise a genuine issue of material fact. In a typical case, Cleco's arguments, which are cogent, would warrant summary judgment. But the standard relied upon by Cleco, as we have noted, is modified by Rule 56(f), which mandates that "summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." <u>Anderson</u>, 477 U.S. at 250 n.5. Because this an atypical case, in which the extensive discovery process has not been completed, our evaluation on summary judgment is necessarily altered.

Just as in prior motions, however, we are obliged to afford the City the opportunity to uncover any such evidence that may exist, if it can.

Further discovery and presentation of evidence at trial will be allowed on the limited issue of whether the waiver was knowingly and voluntarily executed, or in other words, whether a vice effectively vitiated the mayor's consent to the waiver. Cleco's Motion for Partial Summary Judgment on Waiver and Release of Claims Under 2002 Services Agreement will be DENIED.

## IV.   Conclusion

The Court has carefully evaluated the legal principles cited by the parties, and the scant evidence presented, in ruling upon the pending motions.  As a general principle, the Court does not disfavor summary disposition of claims.  However, we find it practically difficult and legally impermissible to dismiss certain claims arising out of the parties' complex business relationship while discovery is still ongoing.  Put simply, evidence may yet be uncovered which could alter our views, however sound they may seem to be at this point.

To date, the presentation of evidence to the Court has been strikingly limited because, according to the City, little discovery took place prior to the filing and opposition of these motions.  Under these circumstances, the practical value, and more importantly, the fairness of the summary judgment device quickly diminishes.  Moreover, courtrooms are built and trials are conducted to allow litigants to present evidence as comprehensively and accurately as possible.  The Court found it perfectly

prudent to grant one of the summary judgment motions, because the questions presented in that motion were solely legal in nature.  However, a trial is the more appropriate and just forum for deciding the issues that remain after this ruling.  No matter how long, expensive, embittering, difficult, or definitive the result, that trial promises to be thoroughly engaging for all concerned.

SIGNED on this 22ⁿᵈ day of January, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

34