UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | | |
|---|---|---|
| THE CITY OF ALEXANDRIA | * | CIVIL ACTION NO. 05-1121 |
| VERSUS | * | JUDGE DRELL |
| CLECO CORPORATION, ET AL | * | MAGISTRATE JUDGE HILL |

**REPORT AND RECOMMENDATION**
**ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pending before the undersigned for Report and Recommendation is the motion for partial summary judgment filed by plaintiff, the City of Alexandria ("City") on March 5, 2009. [Record Doc. 165].[1]  Intervenor, Bridget Brown ("Brown") filed opposition. [Record Doc. 178].  Oral argument on the motion was held, after which the undersigned took the motion under advisement.  For the following reasons, I recommend that the motion be **GRANTED**.

**Background**

On July 19, 2005, the City Council of Alexandria ("City Council") adopted ordinance No. 214-2005 [Record Doc. 77, Ex. 3] authorizing then Mayor, Edward G. Randolph ("Mayor Randolph"), to enter into a professional services agreement with Brown to provide legal services to the City.  Brown, an attorney practicing law in Alexandria, entered into the undated "Contract for Legal Services and Contingent-Fee

---

[1] The City has also filed a Motion to Dismiss [Record Doc. 158] which will be addressed in a separate Report and Recommendation.

Agreement" ("contract"), with the City to serve as special counsel in this case. [Record Doc. 178-3, Ex. C].

By letter dated February 28, 2007, Brown was notified by the City Attorney, Charles E. Johnson ("Johnson"), that her representation of the City in this case was being terminated. On April 17, 2007, Brown filed a Petition for Intervention, alleging that she was entitled to recover attorney's fees, costs and expenses under the contract. [Record Doc. 77].[2] On March 5, 2005, the City filed this motion for partial summary judgment, arguing that Johnson, as City Attorney, had the legal authority to terminate Brown's contract and that the contract was legally terminated. [Record Doc. 165].

In opposition to the City's motion, Brown argues that Johnson, as a mayoral appointee, does not have the legal authority under the Alexandria Home Rule Charter ("Charter") to terminate a contract which had been authorized by the Council.[3] Brown further argues that because the Charter vests the Council with express authority over utility rates, that her position is even stronger in this case because the contract between her and the City related to litigation seeking to recover alleged over-charges by CLECO Corp. ("CLECO") paid by the city.[4]

---

[2] By order of May 3, 2007, Judge Drell severed the intervention from the main demand. [Record Doc. 89].

[3] In the Petition for Intervention Brown alleges that she was hired by City Ordinance and can only be fired by Ordinance. Since only the Council can pass an ordinance, Brown's argument is, thus, that since she was hired by the Council she can only be fired by the Council. See Record Doc. 77, ¶ 5.

[4] CLECO provides electricity to the City.

## Law and Analysis

A Motion for Summary Judgment shall be granted if the pleadings, depositions and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). When the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case. *International Association of Machinists and Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A.*, 199 F.3d 796, 798 (5th Cir. 2000) (*citing Celotex Corp., v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986)).

Courts consider the evidence in the light most favorable to the non-movant. The non-movant may not rely on mere allegations in the pleadings; rather, the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial. *Id*. (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505 (1986)). After the non-movant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *Id*. (*citing Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2458).

This action was originally filed on the basis of federal question jurisdiction under 16 U.S.C. § 825p.[5] The Petition of Intervention filed by Brown was filed based on Louisiana Law, specifically LA. REV. STAT. § 37:218(A). [Record Docs. 69, 152]. Therefore, Louisiana substantive law governs the intervention. *Wampold v. E. Eric Guirard,* 442 F.3d 269 (5th Cir. 2006). Under Louisiana law, the construction of contingency fee contracts are construed in line with the standard rules of contract interpretation. *Id.* at 271. In Louisiana, the interpretation of an unambiguous contract is an issue of law for the court to decide. *Id.* at 271 and *Taita Chemical Co. Ltd. v. Westlake Styrene Corp*. 246 F.3d 377, 386 (5th Cir. 2001) (*citing Texas E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998).

A court interpreting a contract shall determine "the common intent" of the parties. LA. CIV. CODE ANN. art. 2045. However, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent." *Id.* at art. 2046. The Fifth Circuit has said that when the

---

[5]This section, regarding regulation of licensees and public utilities, provides as follows: "The District Courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder. Any criminal proceeding shall be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder may be brought in any such district or in the district wherein the defendant is an inhabitant, and process in such cases may be served wherever the defendant may be found."

contract is not ambiguous, the court lacks authority to look beyond the four corners of the document. *See Texas E. Transmission Corp.*, 145 F.3d at 741.

To determine the intent of the parties, the Court reads contracts for their plain meaning. LA. CIV. CODE. ANN. art. 2047. In addition, the court must construe "[e]ach provision . . . in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE. ANN. art. 2050.

On July 19, 2005, the Council adopted the Ordinance authorizing Mayor Randolph to enter into a professional services agreement with John M. Sharp, H. Craig Davidson Jr., Phillip Hunter and Brown for legal services and other related matters. [Record Doc. 77, Ex. 3]. The Ordinance provided for "contract attorneys to assist in the City Attorney with legal matters which may arise from time to time on behalf of the City." *Id*. Subsequently, Mayor Randolph, "as the duly authorized and legally empowered representative of the City," entered into the undated contract with Brown to represent the City in all claims related to CLECO and any affiliated companies. [Record Doc. 77, Ex. 1]. The contract identified the "client" as the "City of Alexandria, State of Louisiana." *Id*.

In November 2006, Jacques Roy ("Mayor Roy") was elected mayor of Alexandria. Mayor Roy appointed Johnson as City Attorney. In January 2007, Johnson began performing his duties as City Attorney. By letter dated February 28, 2007, Johnson terminated Brown and her representation of the City pursuant to Sec. 4-02 of the City Charter. [Record Doc. 77, Ex. 2].

There is no real question that Brown's services under the contract can be terminated. Indeed, the contract provides that should "client [the City] discharge attorney [Brown] for any reason, client authorizes Attorney to initiate proceedings . . . for fees, costs, advances, guarantees and any other sums to which attorney is entitled." [Record Doc. 178-3, Ex. C, pp. 1-2].[6]

Since it is clear under the contract that the "client" has the authority to discharge Brown, the issue then becomes who is the "client"? The City argues that it is the "client" and that, under the Charter, the Mayor and City Attorney act for the City. Brown argues that the City Attorney cannot act on behalf of the City here, because this contract was authorized by the Council. Implicit in that argument is that the Council, rather than the City, was Brown's client.

At oral argument, both parties agreed that the resolution of this issue turns on the proper interpretation of the Charter. That is, does the Charter allow Johnson to terminate the legal services contract with Brown that was authorized by the council?

The Louisiana rules relating to the construction of Home Rule Charters was set out in *Breaux v. Lafourche Parish Council*, 2002-1422, p.5 (La. App. 1 Cir. 5/9/03); 851 So.2d 1173, 1176-77, where, citing *Louisiana Television Broadcasting Corp. v. Total C.A.T.V.,* 341 So.2d 1183 (La. App. 1 Cir.), *writ refused,* 343 So.2d 1076 (La. 1977), the

---

[6] Indeed, Brown now apparently concedes the point. While she initially sought to be reinstated as counsel for the City [Record Doc. 77, ¶ 8], she now seeks only to recover on the contingency fee provisions of the contract. [Record Doc. 152, ¶ 67].

court said:

> Statutory rules of construction of laws are as applicable to municipal and parish ordinances as they are to state statutes. . . . When a law is clear and free from ambiguity its letter is not to be disregarded under the pretext of pursuing its spirit. . . . The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words. . . . When a law is clear and free from all ambiguity, it must be given effect as written. . . . Every word in a statute must be given meaning, if possible; no word, clause, phrase or sentence of a statute shall be deemed meaningless or surplusage if a construction can be legitimately found which will give force to and preserve every word of the statute. . . . In construing a statute, legislative aim and design may be inquired into by the courts for the purpose of determining legislative intent, only when a statute is ambiguous or subject to two reasonable interpretations. (citations omitted).

*Id*. at 1176-1177.

The Charter here, in pertinent part, provides as follows:

**Sec. 2-06. General powers and duties.**

All powers of the city shall be vested in the council, except as otherwise provided by law or this charter, and the council shall provide for the exercise thereof and for the performance of all duties and obligations imposed on the city by law.

**Sec. 2-12.  Action requiring an ordinance.**

In addition to other acts required by law or by specific provision of this charter to be done by ordinance, those acts of the city council shall be by ordinance which:

                             *               *               *

(16) Authorize any contract on behalf of the city.

**Sec. 3-01. Executive authority.**

The mayor shall be the chief executive officer of the city. All executive and administrative authority shall be exercised by and through the mayor except as set forth in this chapter.

**Sec. 3-07. Powers and duties of the mayor.**

The mayor shall be the chief executive officer of the city.

**Sec. 4-01. General provisions.**

All divisions, departments, offices and agencies shall be under the direction and supervision of the mayor.

**Sec. 4-02. Legal division**.

(A) The head of the legal division shall be the city attorney who shall be appointed by the mayor, subject to confirmation by the council, and shall serve at the pleasure of the mayor. . . .

(B) The city attorney shall serve as chief legal advisor to the mayor, city council and all divisions or departments, offices and agencies, shall represent the city and all legal proceedings and shall perform any other duties prescribed by this charter or by ordinance.

(C) Any assistant city attorneys authorized by the city council shall be appointed by the city attorney and to serve at his pleasure.

(D) No special legal counsel shall be employed by the city except by written contract and approval of the city council.

[Record Doc. 178-2]

Under Sec. 4-01 of the Charter, "[a]ll divisions, departments, offices and agencies" are "under the direction and supervision of the mayor." This includes the head of the legal division, the City Attorney, who is appointed by the Mayor, subject to confirmation

by the Council. The Council authorized, by ordinance, Mayor Randolph to enter into the professional services agreement with Brown for legal services. [Record Doc. 77, Ex. 3]. Mayor Randolph entered into the contract with Brown "as the duly authorized and legally empowered representative of the City of Alexandria, State of Louisiana (the "client")." [Record Doc. 77, Ex. 1].

It is clear that under the contract, the City is the client. [Record Doc. 77, Ex. 1]. The contract is clear and unambiguous in that regard. Sec. 4-02(A) of the charter clearly provides that the City Attorney is the head of the legal department. Sec. 4-02(B) further provides that the city attorney shall represent the city at all legal proceedings. Sec. 4-02(D) provides that no special legal counsel shall be employed *by the city* except by written contract and the approval of the council. (emphasis added).

The above provisions clearly show that Brown was serving as a special legal counsel for the City pursuant to the provisions of Sec. 4-02(D) of the Charter. By virtue of the placement of sub-section D under Sec. 4-02 (legal division), it is further clear that the head of the legal division, the City Attorney, had supervisory authority over those assistant city attorneys authorized by the Council (pursuant to sub-section C) as well as special legal counsel, specifically approved by the Council pursuant to sub-section D.

Additionally, the Ordinance on which Brown relies provides that the contract attorneys (one of whom was Brown) were "to assist the city attorney . . ." Thus, the clear wording of the Ordinance itself supports the position of the City that Brown was subject

to the City Attorney's authority. [Record Doc. 77, Ex. 3].

Nevertheless, Brown argues that only the Council, not the City Attorney, Johnson, had the authority to terminate her contract, because the Council authorized the Mayor to sign the contract retaining Brown. In support of this assertion, Brown cites *Roy v. Humphries,* 445 So.2d 130 (La. App. 3 Cir. 1984), which involved a challenge by the city attorney of Alexandria to the authority of a "special counsel" employed by the city council of Alexandria. There, the city council retained special counsel, Humphries, to represent it in a dispute regarding the mayor's refusal to comply with a directive of the city council concerning an electrical power contract. The Mayor was represented by the city attorney, Roy, who filed a *Writ* of *Quo Warranto*, to force Humphries to show by what authority he was acting on behalf of the city council. Both the trial court and the appellate court found that under the Alexandria Home Rule Charter, the city council was authorized to hire Humphries to represent it in the dispute with the mayor.

*Humphries* is clearly distinguishable. In *Humphries*, the council, after declaring an "extreme public emergency" retained Humphries *to represent the council* in its suit against the mayor, seeking to compel the mayor to comply with a directive of the council. The contract retaining Humphries as "special counsel" *to the city council* was approved by the Attorney General. *Id.* at 131-32.

It appears clear that the Court's decision in *Humphries* was required by the specific facts of that case. The mayor refused to carry out a directive of the council. The

-10-

council decided to sue. In order to sue, it needed to hire a lawyer, which it did. That lawyer, Humphries, was hired as "special counsel" to the *council*. That was required so that the council could appear in court.

The facts in this case are clearly different. Here, Brown was retained to represent the City, not the City Council, as was Humphries. Brown was retained pursuant to a contract signed by the Mayor who was authorized by the Council to sign the contract. Clearly, under the facts of this case, Brown's argument is not supported by the court's decision in *Humphries*.[7]

As the City points out, the ordinance in question "authorized" the Mayor to enter into the contract with Brown; it did not require him to do so. Presumably, Mayor Randolph was free not to sign the contract in question. A mayor, in the performance of his administrative duties, must be accorded discretion, and his exercise thereof will be presumed to be valid unless the contrary is clearly shown. *City of Alexandria through Snyder v. Lanier*, 446 So.2d 547, 550 (La. App. 3 Cir. 1984).

The Court's reading of the Charter, as a whole, leads to the clear conclusion that either the Mayor or the City Attorney had the requisite authority, under the Charter, to terminate Brown's contract. The Mayor is the chief executive officer of the City (Sec.

---

[7] The continuing validity of *Humphries*, even narrowly construed, is doubtful. *See City Council of Lafayette v. Bowen*, 94-584 (La. App. 3 Cir. 11/2/94), 649 So.2d 611, *writ denied* 94-2940 (La. 1/27/95), 650 So.2d 244 and *Roy v. Alexandria City Council,* 2007-1322 (La. App. 3 Cir. 5/7/08), 984 So.2d 191.

See also fn. 9, *infra.*

-11-

3-01) and has supervisory authority over all city divisions. (Sec. 4-01). Special legal counsel, like Brown here, come within, and are under the authority of, the legal division of the City. That conclusion is inescapable given the provisions of the Charter that provides that the City Attorney "*shall* represent the city in all legal proceedings". (emphasis added). If the city attorney "shall" represent the city in court, then special counsel must, of necessity, be under the direction of the City Attorney.[8]

If Brown's argument were correct, then she, and not the City Attorney, would represent the City in this case because the Council had authorized her contract. That result is expressly precluded by Sec. 4-02(B) of the Charter. Therefore, the City Attorney, as the chief legal officer of the City, had the legal authority to terminate Brown's contract, which he did.[9]

Brown cites several decisions of intermediate Louisiana appellate courts which indicate that the mayor does not have the legal authority to terminate a contract which has been authorized by the council. None of these cases, however, are on point. Contracts for legal services are different from other contracts. Under Louisiana law, a client has the unfettered right to terminate his attorney at any time, with or without cause, subject only to liability to the Attorney for reasonable attorney fees. That is the case even in

---

[8] Again, this conclusion is supported by the clear wording of the Ordinance itself, which provided that Brown was to assist the City Attorney.

[9] This result is further supported by the holding in *Roy v. Alexandria City Council*, *supra.*, where the court held, properly in the view of the undersigned, that the City Council is neither a natural or juridical person under LA. CIV. CODE art. 24, and, therefore, is unable to sue, be sued or "*enter into a contract . . .* [by] Ordinance." (emphasis in original). 984 So.2d 194.

contingency fee contracts such as is present here. *Scott v. Kemper Insurance* Co., 377 So.2d 66, 70 (La. 1979). Brown makes no attempt to distinguish *Scott*, which is settled law. Since the City was Brown's client, the City had the right to terminate the contract, which it did.

For the foregoing reasons, the undersigned finds that the City Attorney and the Mayor had the authority to terminate Brown's contract under the Home Rule Charter.

## Conclusion

Accordingly, it is recommended that the motion for partial summary judgment filed by the City of Alexandria be **granted.** The undersigned finds that Johnson, as City Attorney, had the authority under the Home Rule Charter, to terminate Brown's contract.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR**

**WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

March 11, 2010, Lafayette, Louisiana.

/s/ C. Michael Hill
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE