

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CITY OF ALEXANDRIA | CIVIL ACTION NO. 1:05-cv-01121 |
| -vs- | JUDGE DRELL |
| CLECO CORP. et al. | MAGISTRATE JUDGE KIRK |

## R U L I N G

A number of matters are currently pending before the Court in the captioned
lawsuit.  Among them is a Rule 12(b)(6) Motion to Dismiss Intervenor's Tortious
Interference with Contract Claims (Doc. 158) filed by the Intervenor Defendants, the
City of Alexandria ("City"), Mayor Jacques Roy ("Mayor Roy"), and City Attorney
Charles E. Johnson ("Mr. Johnson") (collectively, "City"), against the Intervenor
Plaintiff, Ms. Bridgett Brown ("Ms. Brown").  The magistrate judge issued a Report
and Recommendation on Motion to Dismiss (Doc. 383), suggesting that we grant the
City's motion.  For the reasons detailed below, the City's motion will be GRANTED,
and the magistrate judge's report and recommendation will be ADOPTED IN PART,
as specified herein.  Disposition will follow by a separate judgment.

## I.    Background

The history of this lawsuit is well documented in the annals of this Court and
this community.  As a brief summary, in the principal action the City alleged that the
Defendants, Cleco Corp. *et al.* (collectively, "Cleco"), the City's electrical utilities
provider, caused the City and its ratepayers substantial economic losses through a

series of intentional and negligent acts of mismanagement.  After more than four long years of litigation, the parties resolved the main demand.  By a judgment of dismissal dated February 24, 2010 (Doc. 379), the Court dismissed the City's claims against Cleco with prejudice.  The claims in the intervention, however, require us to recount events dating back to the beginning of the litigation.

On July 19, 2005, shortly after the original lawsuit was filed, at the request of the City administration, the Alexandria City Council ("City Council") adopted ordinance No. 214-1005 (Doc. 77-1, Exh. 3) ("Ordinance").  The Ordinance authorized then-Mayor Edward G. Randolph ("Mayor Randolph") to "enter into a Professional Services Agreement with . . . Bridgett Brown," a licensed attorney practicing in Alexandria, Louisiana.  (Doc. 77-1, Exh. 3, p. 1).  Subsequently, Ms. Brown entered into a "Contract for Legal Services and Contingent Fee Agreement" ("Contract") with the City.  (Doc. 77-1, Exh. 1).  The Contract was executed by Ms. Brown and Mayor Randolph, but was not dated.  Under the Contract, Ms. Brown was retained "to represent [the City] in all claims related to any and all transactions and/or any and all other relationships [the City] has or had with Cleco."  (Doc. 77-1, Exh. 1, p. 1).

In November 2006, Jacques Roy ("Mayor Roy") was elected Mayor of Alexandria.  Mayor Roy appointed attorney Charles E. Johnson, Jr. ("Mr. Johnson") as City Attorney, and Mr. Johnson assumed responsibilities as City Attorney in January 2007.  Approximately one month later, in February 2007, Mr. Johnson issued a letter to Ms. Brown purporting to terminate her representation of the City under Section 4-02 of the City's Home Rule Charter.  (Doc. 77-1, Exh. 2).  In the termination letter, Mr.

2

Johnson opined that Ms. Brown's client was "the City of Alexandria . . . not just the Council," and that Ms. Brown's "actions have created an incurable conflict of interest with the elected chief administrator of this City." (Doc. 77-1, Exh. 2, p. 2). Finally, Mr. Johnson requested a "detailed itemization" of Ms. Brown's work on the case. (Doc. 77-1, Exh. 2, p. 2).

Instead of complying with Mr. Johnson's requests, Ms. Brown filed a Petition for Intervention (Doc. 77) in the principal litigation on April 17, 2007. Nearly two years after filing her initial "petition," or complaint, Ms. Brown filed a supplemental complaint, adding allegations that Mayor Roy and Mr. Johnson breached their fiduciary duties to the City, and tortiously interfered with her contract with the City, making them jointly or solidarily liable with the City for any damages that she may have incurred. (Doc. 152).

Also during the course of the litigation of the main demand, the City filed two motions against Ms. Brown's claims. The first motion, and the only one that we consider in this ruling, was a motion to dismiss Ms. Brown's tortious interference with contract claims under Rule 12(b)(6). (Doc. 158).[1] The magistrate judge recommended that we grant both of the City's motions. (Docs. 382, 383). Ms. Brown filed timely objections to these recommendations (Docs. 384, 387), and both parties have had ample opportunity to brief their positions on the City's motion to dismiss. After carefully considering these materials, and after reviewing the applicable law, the Court is now prepared to rule.

---

[1] The second is a motion for partial summary judgment (Doc. 165), seeking a judgment declaring that Mr. Johnson had the authority to terminate the Contract.

3

## II.   Law and Analysis

### A.   Standards for a Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss an action for "failure to state a claim upon which relief can be granted."  In evaluating a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts in the plaintiff's complaint, and must construe the facts in a light most favorable to the plaintiff.  Arias-Benn v. State Farm Fire & Cas. Ins. Co., 495 F.3d 228, 230 (5th Cir. 2007).  However, the Court need not "'accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'"  Id. (quoting Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005)).

To survive a Rule 12(b)(6) motion, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Finally, we note that "[m]otions to dismiss are viewed with disfavor and are rarely granted."  Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005).

### B.   Discussion

This motion to dismiss presents the question of whether the cause of action for tortious interference with contract in Louisiana should or can be extended beyond the narrow factual confines of the case in which it was recognized.  Ms. Brown maintains that the cause of action may be properly stated against public officers, such as Mayor Roy and Mr. Johnson.  The City argues that this Court should decline to extend the

cause of action.  The magistrate judge adopted the latter view.  We do the same.

1.    *Lineage of Tortious Interference with Contract Claims in Louisiana*

The troubled history of the tortious interference with contract theory in Louisiana may be appropriately traced to the year 1902.  In that year, the Louisiana Supreme Court issued its opinion in <u>Kline v. Eubanks</u>, in which the plaintiff, a plantation owner, alleged that the defendant induced a farm laborer to breach his services contract.  33 So. 211, 212 (La. 1902).  The plaintiff sought, and was denied, damages under a Louisiana statute which required a criminal conviction for the act of inducement as a prerequisite to civil recovery.  <u>See</u> <u>id.</u>

The <u>Kline</u> court next considered the possibility of awarding the plaintiff relief under La. Civ. C. art. 2315, which provides the general foundation for tort recovery in Louisiana.  Specifically, the article states that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."  <u>Id.</u>[2] Ultimately, the court held that the plaintiff had not stated a viable cause of action under article 2315, effectively repudiating the doctrine of tortious interference with contract in Louisiana.  <u>Kline</u>, 33 So. at 213.  This holding stood firm for the next eighty-seven years.[3]  During many of those years, Louisiana was the only state in the union

_____

    [2] This particular language remains the same today as it was in 1902.

    [3] Of course, the court's holding in <u>Kline</u> was neither forgotten nor entirely uncontroversial during that period.  For instance, the Louisiana Supreme Court in 1984 intimated that its prior decisions rejecting the cause of action for tortious interference with contract should perhaps be revisited.  <u>Sanborn v. Oceanic Contractors, Inc.</u>, 448 So. 2d 91, 95 n.5 (La. 1984).  Although the issue was not squarely presented in that case, the opinion also provided that "were plaintiff to allege and prove defendant intentionally and willfully interfered with plaintiff's contract with Scimitar, that such intentional interference was the proximate cause of the failure of the contract, and that defendant's actions were motivated by malice, or at least not by a significant interest of its own, he might well be

5

that did not recognize a cause of action for tortious interference with contract.  See
Glenn G. Morris and Wendell H. Holmes, 8 La. Civ. L. Treatise: Business
Organizations § 33.12 (2009).

Finally, in 1989, the Louisiana Supreme Court reexamined its ruling in Kline,
and lifted the longstanding bar to allow at least a limited cause of action for tortious
interference with contract.  This seminal case was set against the backdrop of the
1984 Louisiana World's Fair.  9 to 5 Fashions, Inc. v. Spurney, 538 So. 2d 228, 229-30
(La. 1989).  A nonprofit corporation created to conduct the fair had entered into a
contract with a clothing company to supply uniforms for the fair's employees.  Id. at
230.  The corporation went bankrupt after the fair, and the clothing company was not
able to fully collect under the contract.  Id.

Subsequently, the clothing company filed suit against Spurney, the chief
executive officer of the corporation, alleging that his acts of interference, both
intentional and negligent, made the clothing company's performance under the
contract "more burdensome and costly."  Id. at 230.  More specifically, the clothing
company argued that Spurney: (1) told his employees to contact other clothing supply
companies to determine if any could furnish the uniforms; (2) failed to assign an
employee to oversee the design and supply of the uniforms for a significant length of
time; and (3) eventually appointed a less experienced employee to coordinate the
supply of the uniforms, instead of an employee who had performed that task for a
previous fair.  See id. at 230.

--------------------

entitled to relief."  Id.

6

In deciding the case, the court began with a brief discussion of the basic premise underlying La. Civ. C. art. 2315: "The framers conceived of fault as a breach of a preexisting obligation for which the law orders reparation, when it causes damage to another, and they left it to the courts to determine in each case the existence of an anterior obligation which would make an act constitute fault." Id. at 231. With that premise in mind, the court held that,

> in the light of modern empirical considerations and the objectives of delictual law, an officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct. The officer's action is justified, and he is entitled to a privilege of immunity, if he acted within the scope of his corporate authority and in the reasonable belief that his action was for the benefit of the corporation.

Id. The opinion also explicitly overrules Kline, and repudiates the precedents upon which it relied as "outflanked and rendered obsolete by modern economic developments." Id. at 232. Finally, the court explained that the Louisiana Civil Code is commonly applied to issues that have arisen well after its drafting. Id. at 232-33.

What the opinion failed to do is specify the exact scope of this newly available cause of action. The court expressly overturned its "previous expressions barring absolutely any action based on a tortious interference with a contract," but, critically, included the following limiting language in its opinion:

> It is not our intention, however, to adopt whole and undigested the fully expanded common law doctrine of interference with contract, consisting of "a rather broad and undefined tort in which no specific conduct is proscribed and in which liability turns on the purpose for which the defendant acts, with the indistinct notion that the purposes must be

7

considered improper in some undefined way." Some aspects of this tort
have been subjected to serious criticisms, leaving open a good many
questions about the basis of liability and defense, the types of contract
or relationship to be protected, and the kinds of interference that will be
actionable. In the present case we recognize, as set forth particularly
herein, only a corporate officer's duty to refrain from intentional and
unjustified interference with the contractual relation between his
employer and a third person.

Id. (internal citations omitted).  Finally, the court set out five independent elements of

the tort:

(1) the existence of a contract or a legally protected interest between
the plaintiff and the corporation; (2) the corporate officer's knowledge of
the contract; (3) the officer's intentional inducement or causation of the
corporation to breach the contract or his intentional rendition of its
performance impossible or more burdensome; (4) absence of justification
on the part of the officer; (5) causation of damages to the plaintiff by the
breach of contract or difficulty of its performance brought about by the
officer.

Id.  The proper interpretation of this language is crucial to our determination in this

case.

Having reached the necessary legal conclusions, the Spurney court held that

the evidence did not support the plaintiff's claims under the third and fourth elements

of the newfound tortious interference claim: that Spurney intended to make the

performance of the contract more difficult or costly, and that he acted in excess of his

authority or contrary to the interests of the corporation.  See id.  In light of those

conclusions, the justices reversed the decisions of both lower courts, and rendered

judgment against the plaintiff.  Id. at 235.  Thus, this newfound cause of action for

tortious interference with contract in Louisiana wound up being first elucidated in a

8

case in which it was found inapplicable.[4]

### 2.    Interpretations of Spurney

In the intervening two decades, the Louisiana Supreme Court has offered little guidance regarding the proper scope of its decision in Spurney, save to note its determination to "proceed with caution in expanding [the tortious interference] cause of action."  Great Sw. Fire Ins. Co. v. CNA Ins. Cos., 557 So. 2d 966, 969 (La. 1990).[5] However, we do have some implicit indications of the direction the court may take. In Cowen v. Steiner, for instance, the Louisiana Third Circuit held that a plaintiff could state a tortious interference claim against the medical director of a hospital, who was not a corporate officer, "because of the corporate context of the allegations and because it appears from the pleadings that [the medical director] had the power or influence that a corporate officer might have."  689 So. 2d 516, 518, 521 (La. App. 3d Cir. 1997).  In other words, the appellate court attempted to extend the tort to circumstances analogous to a suit against a private corporate officer.  The Louisiana Supreme Court, without written reasons, reversed the judgment of the appellate court and reinstated the judgment of the trial court dismissing the plaintiff's tortious

---

[4] Several years after Spurney was decided, Professor Glenn G. Morris wrote of the peculiarity of the court's decision: "The court had thus taken the initiative to reexamine a rule of law that the lower courts had not mentioned, about a tort that had not occurred, and then had changed the law to the extent necessary to permit recovery for the type of tort that might have occurred in the case had the facts just been different."  Glenn G. Morris, Personal Liability for Corporate Participants Without Corporate Veil-Piercing: Louisiana Law, 54 La. L. Rev. 207, 249 (1993).

[5] The court in Great Southwest Fire Insurance Co. held that a "primary insurer does not owe a duty of care or even of good faith performance to the excess insurer of its insured."  557 So. 2d at 971. One of the reasons cited by the justices in that case was the apprehension that "a primary insurer's good faith duty to an excess carrier would evolve to include a duty to avoid negligent interference." Id.  However, the issue of negligent interference is not before the Court in this case.

9

interference claim.  701 So. 2d 140 (La. 1997).  This ruling at least implies ambivalence on the court's part to extend the cause of action to other factual circumstances.

In spite of the limited guidance from the Louisiana Supreme Court, however, various other courts have issued interpretations of Spurney.  Shortly after the Spurney decision, our United States Fifth Circuit declined to expand the scope of the newly-created tort beyond the context of a private corporate officer.  See Am. Waste & Pollution Control Co., Inc., 949 F.2d at 1391.  In that case, a parish sanitary landfill commission entered into a contract with the appellant to operate a landfill.  Id. at 1385.  The appellant argued that another company intentionally induced the commission to breach its contract with the appellant.  See id.

The court held that dismissal of the appellant's tortious interference claim was appropriate, because "[t]he requisite duty in Spurney arose out of a corporate officer's narrowly defined duty to those with whom his corporation contracts. The Louisiana courts have refused to find this duty, or obligation, in other circumstances." Id. at 1390.  It is important to note that no duty (which would have supported liability for tortious interference) existed between the appellant and the competing company. See id.  Nonetheless, the court *specifically* declined to extend the *factual circumstances* in which a plaintiff may state a cause of action for tortious interference with contract in Louisiana:

> In fulfilling our Erie role, we can only predict Louisiana state law; "[i]t is up to the Supreme Court of Louisiana and not this court to change the substantive law of that state."  It took the Louisiana Supreme Court almost 90 years to recognize a quite narrow cause of action for tortious contractual interference; it is not for this diversity court to expand that cause of action in the face of Louisiana's expressed unwillingness to do

so.

Id. (quoting Cargill, Inc. v. Offshore Logistics, Inc., 615 F.2d 212, 215 (5th Cir. 1980)).

Since 1989, the Fifth Circuit has declined, with broad consistency, to expand the scope of the tort beyond the facts of Spurney, and has often relied upon the status of the alleged tortfeasor as an officer of a private corporation in doing so.[6]  Many district courts in our circuit have followed suit.[7]  In one of its most recent expositions on the subject, the Fifth Circuit declined to extend the Louisiana cause of action for tortious interference in a case brought by a Russian law firm seeking damages for another law firm's alleged interference with a contract for legal services.  Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey, 183 F.3d 453, 455 (5th Cir. 1999).  The court repeatedly characterized Louisiana's tortious interference cause of action as "very limited" and narrow.  Id. at 457.  But, in that case, there were "no allegations of a corporate officer's intentionally and unjustifiably interfering with a

---

[6]  See, e.g., Huffmaster v. Exxon Co., 170 F.3d 499, 504 (5th Cir. 1999) ("The [Spurney] Court specifically recognized only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person and disavowed any intention to adopt whole and undigested the fully expanded common law doctrine of interference with contract."); Ingraffia v. NME Hosps., Inc., 943 F.2d 561, 566-67 & n.2 (5th Cir. 1991) (noting that, "in Spurney, the court recognized a cause of action for tortious interference in extremely limited circumstances," and more specifically, in circumstances involving corporate officers); Junior Money Bags, Ltd. v. Segal, 970 F.2d 1, 5 n.2 (finding that the district court properly dismissed a tortious interference claim which did not involve a corporate officer, because "[f]ederal courts have respected the restricted nature of this new delict"); Gulf States Land & Dev., Inc. v. Premier Bank, N.A., 956 F.2d 502, 508 (5th Cir. 1992) (refusing to apply the "limited" exception to the general bar against tortious interference claims in a case which did not involve an officer of a private corporation).

[7]  See, e.g., Restivo v. Hanger Prosthetics & Orthotics, Inc., 483 F. Supp. 2d 521, 536 (E.D. La. 2007) ("[T]o date the [Spurney] holding has been 'restricted to the precise cause of action it explicates: that is a situation involving a corporation, an officer of the corporation, and a contract between the corporation and a third party.'") (quoting Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey, No. Civ.A. 97-0212, 1998 WL 483483, at *3 (E.D. La. Aug. 14, 1998); Hibernia Cmty. Dev. Corp., Inc. v. U.S.E. Cmty. Servs., Inc., 166 F. Supp. 2d 511, 514 (E.D. La. 2001) ("The Court does not find that Louisiana law permits a cause of action for tortious interference with a contract against anyone other than an officer of a corporation.").

contract between his corporate employer and the appellants." Id.  Therefore, the court affirmed the disposition of the appellants' claims on summary judgment.  Id. Importantly, as Ms. Brown has noted, the court also found that there had been no showing of an "individualized duty existing between [the plaintiffs] and their alleged tortfeasors that could give rise to the type of delictual liability established by the Louisiana Supreme Court in [Spurney]."  Id.

As we have emphasized, courts' reasoning for dismissing tortious interference claims bears added emphasis.  Some opinions have focused upon the *fiduciary duty* of the corporate officer, rather than the officer's position in a *private* (not a *municipal*) corporation, as the key element of tortious interference in Louisiana.[8]  Indeed, in American Waste & Pollution Control Co., Inc., the Fifth Circuit stated that "[t]he common thread in Spurney and its progeny is the requisite duty, or obligation, for such a cause of action; a duty must exist for recovery of damages under Louisiana law."  949 F.2d at 1384.[9]  Nonetheless, there is no firm consensus in federal courts regarding the proper scope of the tortious interference cause of action under Louisiana law, and certainly none warranting the expansion of the tort.

Likewise, Louisiana appellate opinions are split on the issue.  Some opinions have taken the conservative approach and have refused to extend the doctrine

_____

[8] See, e.g., America's Favorite Chicken v. Cajun Enters., Inc., 130 F.3d 180, 184-85 (5th Cir. 1997) ("[B]efore a Louisiana court will allow a tortious interference action, the plaintiff must identify a duty existing between it and the alleged tortfeasor, the violation of which would give rise to delictual liability."); Shaw Indus., Inc. v. Brett, 884 F. Supp. 1054, 1060 (M.D. La. 1994) (finding that "the Louisiana Supreme Court has not foreclosed the expansion of [the tortious interference] cause of action on the basis of other facts," as long as a fiduciary duty is present).

[9] Once again, however, we note that this statement is followed by the court's refusal to extend the Spurney court's reasoning to other factual circumstances.

12

beyond the facts of Spurney.[10]  Other decisions, however, are more expansive in their

analysis of Spurney claims, and emphasize the fiduciary duty of the alleged tortfeasor

as the linchpin of the tortious interference analysis.[11]  In sum, courts at both the

federal and state level have varying views on the proper interpretation of Spurney.

The circumstances of this case now compel us to enter the fray.

3.    *Ms. Brown's Claim*

As a precursor to analyzing Ms. Brown's tortious interference claim, we note

once again that the Louisiana Supreme Court has not decided a case which directly

addresses the question presented by the City's motion.  As such, we must observe

the following rules:

> "When presented with an unsettled point of state law, our role under
> Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),
> is to determine how the [Louisiana] Supreme Court would resolve the

---

[10]  See, e.g., Doles v. Cent. Boat Rentals, Inc., No. 2006 CA 0304, 2006 WL 3813700, at *3 (La. App. 1st Cir. Dec. 28, 2006) ("In . . . Spurney . . . the supreme court did not adopt the broad common law doctrine of tortious interference with contracts, but recognized a limited and narrowly defined cause of action for the breach of duty by a corporate officer to refrain from intentionally and unjustifiably interfering with a contractual relationship between the officer's corporate employer and the particular plaintiff involved therein. Louisiana courts have limited the Spurney decision to its facts."); Technical Control Sys., Inc. v. Green, 809 So. 2d 1204, 1209 (La. App. 3d Cir. 2002) ("[W]e conclude that this doctrine should not be expanded to include corporate entity defendants."); Healthcare Mgmt. Servs., Inc. v. Vantage Healthplan, Inc., 748 So. 2d 580, 583 (La. App. 2d Cir. 1999) ("In Louisiana, this court has limited the application of . . . Spurney . . . to its facts."); Duplessis v. Warren Petroleum, Inc., 672 So. 2d 1019, 1025 (La. App. 4th Cir. 1996) ("The theory of recovery for intentional interference with contract has not been expanded beyond the limited facts of . . . Spurney . . . where a plaintiff sued a corporate officer; the broad common law action has not been adopted."); Belle Pass Terminal, Inc. v. Jolin, Inc., 618 So. 2d 1076, 1080 (La. App. 1st Cir. 1993) ("Spurney is limited in its scope and application. It applies to a corporate officer interfering with his employer's corporate contract with third persons.").

[11]  See, e.g., Glod v. Baker, 899 So. 2d 642, 650 (La. App. 3d Cir. 2005) ("Spurney and subsequent cases include those persons with a fiduciary relationship to the corporation among those subject to liability for intentional interference with contract."); Spencer-Wallington, Inc. v. Service Merchandise, Inc., 562 So. 2d 1060, 1064 (La. App. 1st Cir. 1990) ("In Spurney the duty of the third party independent of the contract was the fiduciary duty imposed upon the corporate officer to act within his scope of authority and in the best interests of the corporation . . . .").

issue if presented to it." In addition, "[w]hen making an Erie-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it." "[W]e are not free to fashion new theories of recovery under Louisiana law."

Am. Waste & Pollution Control Co., Inc., 949 F.2d at 1386 (internal citations omitted).[12]  Moreover, when the state's highest court has not definitively ruled upon an issue, "we defer to intermediate state appellate court decisions 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'" Herrmann Holdings Ltd. v. Lucent Techs. Inc., 302 F.3d 552, 558 (5th Cir. 2002).

With these principles in mind, we now consider Ms. Brown's arguments.  Ms. Brown objects to the magistrate judge's report and recommendation on three principal grounds: (1) tortious interference claims are not limited under Spurney to officers of private corporations, but may also apply to officers of municipal corporations, because the central element of such claims is the breach of a fiduciary duty; (2) denying Ms. Brown's claim affords undue deference to public officials, and effectively immunizes them from liability for tortious interference; and (3) the magistrate judge improperly shifted the burden of justifying its tortious interference claim to the plaintiff, rather than requiring the defendant, under Fed. R. Civ. P. 12, to show that the claim lacks a valid legal foundation.

> a.   *Tortious Interference Claims Are Limited to the Private Corporate Officer Context*

Ms. Brown contends that public officials, like Mayor Roy and Mr. Johnson, are

---

[12]  In determining how the Louisiana Supreme Court would likely rule in this case, we may consult various sources, including general rules of Louisiana law, decisions from other jurisdictions, and policy concerns.  Stanley v. Trinchard, 500 F.3d 411, 423-24 (5th Cir. 2007).

subject to liability for tortious interference, because they owe a fiduciary duty to the municipality. The Court agrees that "a public officer owes an undivided duty to the public whom he serves and is not permitted to place himself in a position that will subject him to conflicting duties or cause him to act other than for the best interests of the public." Plaquemines Parish Comm'n Council v. Delta Dev. Co., Inc., 502 So. 2d 1034, 1039 (La. 1987) (quoting Anderson v. City of Parsons, 496 P.2d 1333, 1337 (Kan. 1972)). In other words, according to Ms. Brown, public officials owe a fiduciary duty to their constituencies and public employers.[13] The City does not take issue with this basic premise. The question before us, however, is whether that fiduciary duty (rather than an individual's status as a private corporate officer) may be the basis for liability in a Louisiana tortious interference claim. We find that it may not.

As an initial matter, it is unclear, considering the jurisprudence before us, that public officers like Mayor Roy and Mr. Johnson owe third parties any "fiduciary duty" in the legal sense of that term. Such a duty is, however, required for a tortious interference claim. The Louisiana Supreme Court hinged the cause of action, in part, upon a private corporate officer's "obligation to a third person having a contractual relationship with the corporation" not to tortiously interfere with the third person's contracts with the corporation. Spurney, 538 So. 2d at 231. As noted above, public officials owe a duty to the constituency that elected them, and the municipality that

---

[13] Compiling a number of sources, the Louisiana Supreme Court has explained that "[t]he term ['fiduciary'] is not restricted to technical or express trusts, but includes also such offices or relations as those of an attorney at law, a guardian, executor, or broker, a director of a corporation, and a public officer." State v. Hagerty, 205 So. 2d 369, 375 (La. 1968) (quoting Black's Law Dictionary, Fourth ed. (1951), Fiduciary Capacity). Moreover, Louisiana statutory law defines the term "fiduciary" to include an "officer of a corporation, public or private, public officer, or any other persons acting in a fiduciary capacity for any person, trust or estate." La. R.S. § 9:3801(2).

15

they serve.  However, neither party has shown that public officials owe a duty to third-party contractors similar to a private corporate officer's duty.  Therefore, we are not certain that the requisite fiduciary duty exists regarding public officials.

Nonetheless, even if public officials owe a fiduciary duty to third-party contractors, the Court is unconvinced that any such duty may support a claim for tortious interference under current Louisiana law.  Ms. Brown argues that courts have sanctioned claims against various parties on the basis of fiduciary duty alone, such as officers of non-profit corporations[14], brokers[15], a member of a corporation's board of directors[16], officers of a publicly-owned, non-profit hospital[17], and, perhaps most importantly, officers of a public housing authority[18].  A review of these decisions, however, reveals no compelling reason to conclude that the doctrine should be applied to the facts of this case.

To begin with, the fact that <u>Spurney</u> involved an officer of a non-profit corporation is of no consequence here, because the Louisiana Supreme Court highlighted only the defendant's status as an officer of *a corporation*.  <u>See</u> 538 So. 2d at 234.  Whether the corporation is a for-profit entity is not mentioned in the opinion.

---

[14] <u>See</u> <u>Spurney</u>, 538 So. 2d at 230.

[15] <u>See</u> <u>Shaw Indus., Inc.</u>, 884 F. Supp. at 1060.

[16] <u>See</u> <u>Comm'n and Info. Res., Inc. v. Expressions Acquisition Corp.</u>, 675 So. 2d 1164, 1168-69 (La. App. 5th Cir. 1996) ("Although the <u>Spurney</u> case involved a corporate officer and the court specifically referred to 'corporate officer', the court made it clear that the basis of the liability was the fiduciary duty owed by the corporate officer to the corporation.'").

[17] <u>See</u> <u>Marine & Indus. Healthcare Servs., Inc. v. LaVie</u>, No. Civ.A. 02-3415, 2003 WL 1193677, at *2-3 (E.D. La. Mar. 12, 2003).

[18] <u>UniDev, L.L.C. v. Hous. Auth. of New Orleans</u>, No. 05-2649, 2008 WL 906308, at *1 (E.D. La. Apr. 2, 2008).

Also, the decision involving officers of a public housing authority contains absolutely no rationale for applying the tort beyond the facts of Spurney. See UniDev, L.L.C., 2008 WL 906308, at *6.[19] The opinion in LaVie, the case involving the non-profit hospital, does not support Ms. Brown's arguments, but is more accurately read as a case recognizing the limitations of the court's holding in Spurney. See 2003 WL 1193677, at *3.[20] And the final two cases cited by Ms. Brown simply settle upon an interpretation of Spurney which is contrary to this Court's reading of the case, albeit under distinguishable facts.[21] We emphasize that none of the cases cited by Ms. Brown are binding upon this Court, and none address the precise circumstances presented in this case involving a mayor and/or a city attorney.

Furthermore, both parties rely upon the lack of jurisprudence which may shed some light on our decision here. No binding precedents explicitly allow or prohibit application of the cause of action to the circumstances of this case. The City points out that no cases have held that tortious interference may properly be applied to a

---

[19] Ms. Brown argues that "[n]o expansion of the doctrine, and no discussion of any expansion, was necessary." (Doc. 402, p. 3). We disagree. As we will describe more fully below, the Spurney court limited its holding to the particular facts of that case. Other courts – and in particular, those sitting in diversity – should at least explain a deviation from the court's decision.

[20] Counsel for Ms. Brown interprets this case as holding that the cause of action against officers of a publicly-owned hospital was potentially cognizable, but that the plaintiff did not allege unjustifiable interference by an officer of the hospital: "Plaintiff's alleged contract with [the hospital] was not 'unjustifiably interfered with' by any of the officers of the hospital." LaVie, 2003 WL 1193677, at *3. However, this lone statement does not support the conclusion that the court was willing to apply the cause of action to officers of the hospital. To the contrary, just before this statement, the court noted that "the United States Fifth Circuit Court of Appeal has recognized the limitations of Spurney, and failed to extend it beyond its specific facts." Id.

[21] See Shaw Indus., Inc., 884 F. Supp. at 1060 ("[T]he Louisiana Supreme Court has not foreclosed the expansion of that cause of action on the basis of other facts."); Expressions Acquisition. Corp., 675 So. 2d at 1168-69 ("Although the Spurney case involved a corporate officer and the court specifically referred to 'corporate officer', the court made it clear that the basis of the liability was the fiduciary duty owed by the corporate officer to the corporation.").

case involving an elected municipal official.  Ms. Brown, however, notes that none of the cases cited by the City have refused to extend the cause of action because a corporate officer was not involved; rather, they have done so because a fiduciary relationship was lacking.  Therefore, the Court is not bound (except to the extent that the Fifth Circuit jurisprudence has precedential value) by applicable precedent to decide this case in any particular manner.

In the absence of such precedent, the Court is unwilling to extend the cause of action for tortious interference with contract beyond the limited facts of Spurney.  We reach this conclusion for a number of reasons, the first of which is the particular language selected by the Louisiana Supreme Court in creating, and limiting, the cause of action.  The court first specified that it did not wish "to adopt whole and undigested the fully expanded common law doctrine of interference with contract." Spurney, 538 So. 2d at 234.  The court's reasoning for this conclusion was that various unsettled questions about the doctrine remained, including "the basis of liability and defense, the types of contract or relationship to be protected, and the kinds of interference that will be actionable." Spurney, 538 So. 2d at 234.  The next sentence, as we read it, unequivocally confines the scope of the tort to situations involving officers of private corporations: "[i]n the present case we recognize, *as set forth particularly herein, only a corporate officer's duty* to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." Id. (emphasis added).  The court mentioned only corporate officers, and included the phrase "as set forth particularly herein" as an additional limiting

18

clause in its holding.  Id.  More clear statements of restraint would be difficult to formulate.

Moreover, what the court did not say in Spurney is arguably just as important as what it did say.  The Louisiana Supreme Court did not "recognize . . . only a [fiduciary's] duty" to refrain from interference with contract; it recognized a "corporate officer's duty" in that regard.  See id.  The court did not sanction the cause of action in cases analogous to those involving the corporate officer context; it sanctioned the cause of action "as set forth particularly" in that case alone.  Finally, the court did not outline a set of generalized parameters within which appellate and diversity courts could experiment with the tort in various factual settings; instead, it consistently used the terms "officer" and "corporation" in the five elements of the tort.  See id.  Therefore, we interpret the language of the Spurney decision as confining the cause of action for tortious interference with contract to the facts of that particular case.

Second, as noted above, it is not the province of this Court to draw bold (and strained) inferences in matters of state law which are, at the very least, unsettled.  Although we must attempt to determine how the Louisiana Supreme Court would rule in this case, we may not craft new theories of recovery under Louisiana law.  See Am. Waste & Pollution Control Co., Inc., 949 F.2d at 1386.  Rather, we adhere to the following principle articulated by the Fifth Circuit: "It took the Louisiana Supreme Court almost 90 years to recognize a quite narrow cause of action for tortious contractual interference; it is not for this diversity court to expand that cause of action

in the face of Louisiana's expressed unwillingness to do so." Id. at 1390.  By most

indications, that unwillingness remains largely unchanged more than twenty years

after Spurney was decided, and it makes no difference that in this case, our original

jurisdiction was grounded in a federal question rather than in diversity.

     Third, we reemphasize that no binding precedent explicitly allows us to

extend the cause of action to a context beyond the facts of Spurney.  Ms. Brown (and

some courts) have made much of the following language in American Waste &

Pollution Control Co., Inc.: "The common thread in Spurney and its progeny is the

requisite duty, or obligation, for such a cause of action." Id. at 1384.  However, this

statement is followed by the court's refusal to extend the Spurney court's reasoning

to other factual circumstances: "The requisite duty in Spurney arose out of a

corporate officer's narrowly defined duty to those with whom his corporation

contracts. The Louisiana courts have refused to find this duty, or obligation, in other

circumstances . . . ." Id. at 1390.  Moreover, the court noted that its decision was only

partially dependent upon the fiduciary duty issue: "Accordingly, in making our

Erie-guess on this aspect of Louisiana law, *and because the requisite duty is lacking*,

we hold that Louisiana would not allow a claim against [the defendant] for tortious

interference with contract." See id. (emphasis added).  Therefore, neither this case,

nor any other, obligates (or even expressly allows) this Court to expand the scope of

the tortious interference doctrine in Louisiana.

     Fourth, although Louisiana appellate courts are divided on this issue, the

weight of authority in Louisiana appears to favor this Court's interpretation.  Even if

many or all opinions refusing to extend the tort rely upon the absence of a fiduciary duty, language confining <u>Spurney</u> to its facts is pervasive in the state jurisprudence as well. <u>See</u> n.9, <u>supra</u>. Cases extending the tort seem to be the exception and not the rule. Our decision here certainly does not rest upon a tally of the "wins and losses" in Louisiana appellate courts for the position of either party. But, it is instructive to note which position seems to carry more sway, particularly because we must consult appellate court opinions when definitive guidance from the state's highest court is lacking. <u>See</u> <u>Herrmann Holdings Ltd.</u>, 302 F.3d at 558.

Fifth, those courts which would extend the tort invariably (and improperly) cite to the concept of fiduciary duty. <u>See, e.g.</u>, <u>Spencer-Wallington, Inc.</u>, 562 So. 2d at 1063-64. It is true that the <u>Spurney</u> court rooted the tort in the concept of fault under La. Civ. C. art. 2315, and noted that "[t]he framers conceived of fault as a breach of a preexisting obligation for which the law orders reparation." 538 So. 2d at 231. Based upon this foundation, the court held that "an officer of a corporation owes an obligation to a third person having a contractual relationship with the corporation to refrain from acts intentionally causing the company to breach the contract or to make performance more burdensome, difficult or impossible or of less value to the one entitled to performance, unless the officer has reasonable justification for his conduct." <u>See</u> <u>id.</u>

However, the mere fact that the court derived the new cause of action from the concept of fiduciary duty does not mean that the court intended the cause of action to apply in any situations involving a similar obligation. To the contrary, the court's

21

language refers only to the fiduciary duty borne by corporate officers.  See id. Likewise, the court only specifically recognized a cause of action for tortious interference arising out of a corporate officer's obligations.  See id. at 234.  Therefore, we do not read Spurney as creating an expansive cause of action based upon a breach of any preexisting fiduciary duty.  Instead, we read the case as recognizing a cause of action only for a corporate officer's breach of that officer's preexisting duty to refrain from tortiously interfering with a third party's contract, and to serve the best interests of his corporation.

Sixth, while the City does not contest that municipal officers have a fiduciary duty to their employers, we note that the nature of this duty is distinguishable from the corporate officer's duty.  A corporate officer's duty is linked to his status as a trusted agent of the corporation; a public official's duty is linked to his commitment to perform a public service on behalf of the municipality and its citizens.  Private corporations exist for profit or some charitable purpose; municipal corporations exist to govern and provide services to citizens.  Thus, we do not find the nature (and perhaps the scope and extent) of those duties to be necessarily identical.

Lastly, in further analyzing the facts here, we note that the contract in question is not a usual commercial contract but is, rather, a contract for legal services.  Such contracts are to an extent *sui generis*, as there are multiple rules, obligations and standards – including ethical and professional ones – which attach to them. Specifically, there are rules which govern the *relationship* created in a legal representation arrangement – rules which are quite different from and essentially

22

unrelated in many ways to commercial contracts.  Thus, legal services contracts are

generally terminable at the behest of the represented party prior to completion of the

representation[22], and there is a well-established battery of jurisprudence defining

what happens in the event of early termination.[23]  The very nature of the relationship

created in legal services contracts dramatically contrasts them, being terminable

virtually at will, with the corporate contract analyzed in Spurney.[24]

---

[22] See, e.g., In re Jones, 859 So. 2d 666, 670 (La. 2003) ("It is well settled that a client has an absolute right to discharge his or her lawyer at any time."); Doles v. Cent. Boat Rentals, Inc., No. 2006 CA 0304, at *2 (La. App. 1st Cir. Dec. 28, 2006) ("Even when a client is obligated by a contract, the client has a right to discharge the attorney (and terminate the contract) at any time, with or without cause, subject to liability for payment for reasonable attorneys' fees.") (citing Scott v. Kemper Ins. Co., 377 So. 2d 66, 70 (La. 1979)) .

[23] See O'Rourke v. Cairns, 683 So. 2d 697, 704 (La. 1996) (holding that "'[t]he amount prescribed in the contingency fee contract, not quantum meruit, is the proper frame of reference for fixing compensation for the attorney prematurely discharged without cause,'" but that, "in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the Saucier rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. The court should then allocate the fee between or among discharged and subsequent counsel based upon the Saucier factors. Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the Saucier allocation.") (quoting Saucier v. Hayes Dairy Products, Inc., 373 So. 2d 102 (La. 1979); see also Succession of Wallace, 574 So. 2d 348, 362 & n.4 (La. 1991) (holding that when an attorney is discharged for cause, the attorney is entitled, by statute, "only to a reasonable fee," is "entitled to be paid a fee only for work that he has done," and noting that "[e]ven if attorney fees are fixed by statute or in a contract between the parties, courts may inquire into the reasonableness of such fees as part of their inherent power to govern the conduct of attorneys"); Francis v. Hotard, 798 So. 2d 982, 985 (La. App. 1st Cir. 2001) ("[E]ven with a contract, the client has a right to discharge the attorney (and terminate the contract) at any time, with or without cause, subject to liability for payment for reasonable attorney's fees."); Clegg v. USAgencies Ins. Co., 985 So. 2d 781, 784 (La. App. 1st Cir. 2008) ("[D]espite the unenforceability of 'contract provisions on compensation' as a basis for collecting unearned fees, the discharged attorney does remain 'entitled to compensation for services actually rendered prior to his discharge.' When fees are owed, the provisions of a prior reasonable fee schedule or agreement may be used as a guide to calculate the amount of fees owed. In the absence of a prior fee agreement, the fees are traditionally set based on quantum meruit.") (internal citations omitted).

[24] The Louisiana Supreme Court has implicitly expressed a willingness to entertain tortious interference claims regarding legal services contracts, at least in some cases.  In Chaffin v. Chambers, the Louisiana First Circuit court declined to extent the tortious interference cause of action to a plaintiff attorney's claim that "the defendant attorney solicited the representation of the plaintiff attorney's client and intentionally interfered with the plaintiff attorney's employment contract with his client."  577 So. 2d 1125, 1129 (La. App. 1st Cir. 1991).  Because improper client solicitation implicates

In sum, we find that a cause of action for tortious interference with contract is limited, in Louisiana, to circumstances involving officers of private corporations. The cause of action is thus not applicable to the circumstances of this case, involving the mayor and city attorney of a municipality. Therefore, Ms. Brown has failed to state a claim for tortious interference with contract upon which relief can be granted, and accordingly, the City's Rule 12(b)(6) Motion to Dismiss Intervenor's Tortious Interference with Contract Claims (Doc. 158) will be GRANTED. Because our

---

ethical standards governing law practice, and because the Louisiana Supreme Court has plenary power to regulate the practice of law, the court refused to "recognize a tort cause of action arising from the violation of the [Louisiana Rules of Professional Conduct]." See id. at 1129-30.

Subsequently, and without written reasons, the Louisiana Supreme Court reversed the judgment of the appellate court, reinstated the trial court's judgment overruling the defendant attorney's exception of no cause of action, and remanded the case to the trial court for further proceedings. See 584 So. 2d 665 (La. 1991). No further history of the case is reported. However, a number of courts have interpreted the Chaffin decision as support for a tortious interference action in the context of a legal services contract. See, e.g., Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 44 (5th Cir. 1992).

However, we have neither written reasons for the court's decision in Chaffin, nor written opinions in the case subsequent to the court's remand. Moreover, the Louisiana Supreme Court limited a subsequent case from the same circuit, which held that "Chaffin clearly establishes that, in some circumstances, a tort action may lie for unwarranted interference by an attorney with the attorney-client contract of another attorney." Krebs v. Mull, 727 So. 2d 564, 568 (La. App. 1st Cir. 1998). The Louisiana Supreme Court subsequently overruled that case, and held as follows:

> There is only one reported decision in Louisiana that suggests that a breach of the fiduciary duty owed by attorneys engaged in a joint venture might in some circumstances support a cause of action for intentional interference with contract. . . . To the extent that Krebs deviates from the bright-line rule announced herein that no cause of action will exist between co-counsel based on the theory that co-counsel have a fiduciary duty to protect one another's prospective interests in a fee, it is disapproved.

Scheffler v. Adams and Reese, LLP, 950 So. 2d 641, 653 (La. 2007). Aside from this holding, this Court's review of the jurisprudence revealed no other reported decision in which a cause of action for tortious interference with a legal services contract has been allowed. We thus find the Louisiana Supreme Court's "approval" of the doctrine in this context tenuous at best. And to the extent that Chaffin conflicts with more recent decisions purporting to limit tortious interference to the facts of Spurney – particularly the Louisiana Supreme Court's decision in Cowen, 701 So. 2d 140 (La. 1997), reversing, without written reasons, an appellate court's judgment extending the cause of action beyond the corporate officer context – we find the decision anomalous.

determinations substantially comport with those of the magistrate judge, the Report and Recommendation on Motion to Dismiss (Doc. 383) is hereby ADOPTED IN PART, as modified and supplemented herein.

### b.   *Deference to Public Officials*

Ms. Brown next objects to the magistrate judge's reference to "policy considerations" supporting his recommendation to grant the City's motion.  In addition to finding that the Spurney decision was limited to its facts, as this Court has now done, the magistrate judge also provided the following rationale for his decision:

> Additionally, based on policy considerations, I do not believe the Louisiana Supreme Court would extend a tortious interference claim to a municipal officer, such as the mayor or city attorney. Such claims would have the potential to spur mass litigation against municipal officers, and would likely invade the political domain, something which courts do at their peril.

(Doc. 383, p. 7).  Ms. Brown alleges that, through this brief observation, the magistrate judge has granted absolute immunity to, and cast judges as guardians of, public officials.  This result, according to Ms. Brown, contravenes Louisiana statutory and jurisprudential law.  We disagree.

It is true that La. R.S. § 2798.1(B) provides a form of qualified immunity to public officers: "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties."  The scope of this immunity, however, was neither mentioned nor impacted by the magistrate judge's opinion.

25

Nor is the statute an issue before this Court.

To the contrary, the magistrate judge made this statement only after concluding, as a matter of law, that "Ms. Brown's allegations do not fall within the narrow parameters of Louisiana's tortious interference cause of action." (Doc. 383, p. 7). The statement merely supports the magistrate judge's vestigial opinion that the Louisiana Supreme Court would not favor extending the tortious interference cause of action to the political arena. It is therefore not an essential element of the magistrate judge's decision in any case.

To be clear, however, this Court's decision does not rest, to any degree, upon any theory of immunity for public officials. This Court merely finds here that the Louisiana Supreme Court's decision in <u>Spurney</u> limits the cause of action for tortious interference to circumstances involving officers of private corporations. Our conclusion does not grant public officials absolute immunity; it merely declines to recognize one particular cause of action against public officials, which had not been recognized at all for nearly nine decades. Nonetheless, because the magistrate judge's observation is non-essential, and to avoid any remote chance of confusion regarding the Court's intentions, we DO NOT ADOPT the portion of the magistrate judge's Report and Recommendation on Motion to Dismiss (Doc. 383) referring to "policy considerations" which may disincline the Louisiana Supreme Court from extending the cause of action for tortious interference to encompass claims against public officials.

c.     *The Court Has Properly Imposed the Burden of Proof*

Finally, Ms. Brown contends that the magistrate judge misapplied the burden of proof on this Rule 12(b)(6) motion to dismiss by requiring "the plaintiff – on pain of dismissal – to show that the Fifth Circuit had previously blessed a Spurney cause of action in the municipal-corporation context." (Doc. 387-1, p. 3).  Instead, Ms. Brown argues that the City must show that Louisiana courts distinguish between private corporations and municipal corporations, and that such a distinction precludes her tortious interference claim.  This argument is unavailing.

First, the magistrate judge did not improperly shift the burden to the plaintiff. Instead, the magistrate judge merely noted that neither the court, nor "[t]he parties," uncovered opinions extending a tortious interference claim to a mayor or a city attorney.  (Doc. 383, p. 6).  Then, the court held that "[a]bsent explicit authority from the Louisiana Supreme Court or, at the very least a Louisiana appellate court, the undersigned declines to extend Spurney to officers of municipal corporations."  (Doc. 383, pp. 6-7).  The magistrate judge merely rested his conclusion upon the lack of jurisprudential support for the extension of a doctrine which was not only disfavored, but barred, in this state for the major portion of a century.  The court began from the proposition, however, that Louisiana state and federal courts alike have confined Spurney to its facts, meaning that the defendant properly bore (and carried) the burden on its motion.

Nevertheless, this Court has certainly applied the burden properly.  Our analysis rested upon (1) the City's citation of cases in which state and federal courts

27

have limited the Spurney decision to its facts, or have at least declined to extend the cause of action to other sets of facts; (2) consideration, and ultimate rejection, of the non-binding authorities cited by Ms. Brown purporting to extend Spurney beyond its facts; and (3) our own independent analysis of the interplay between the jurisprudence cited by both parties.  The City established that Ms. Brown has failed "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Ms. Brown has failed to refute that showing, and to establish that her "[f]actual allegations . . . [are sufficient to] raise a right to relief above the speculative level." Bell Atl. Corp., 550 U.S. at 555.  Therefore, the City's motion must be granted.[25]

## III.   Conclusion

Ms. Brown's claim has required the Court to delve into an unsettled aspect of Louisiana law.  In such circumstances, the Court is appropriately loathe to reach conclusions which are not firmly supported in state law, and to draw inferences from persuasive authorities which are not otherwise warranted.  As such, the balance of Ms. Brown's claims may move forward at this point.  Ms. Brown's claim for tortious interference with contract, however, is not viable under Louisiana law as it stands.  Therefore, the City's Rule 12(b)(6) Motion to Dismiss Intervenor's Tortious Interference with Contract Claims (Doc. 158) will be GRANTED, the magistrate

---

[25] In light of the Court's dispositive ruling that Ms. Brown cannot, as a matter of law, state a tortious interference with contract claim against the Intervenor Defendants, we need not address the issue of whether Ms. Brown's claims were time-barred.  In the initial filings on the City's motion to dismiss, both parties briefed the prescription issue.  However, the magistrate judge never addressed the issue in his ruling, and the City did not object to the magistrate judge's failure to do so.  Of course, the magistrate judge ruled in favor of the City on different grounds, as we do herein.  The prescription issue was briefly addressed by both parties in their filings to this Court.  However, it is not essential for the Court to decide whether Ms. Brown's claims were prescribed, although that question appears, at least in part, to be a viable one.

judge's Report on Motion to Dismiss (Doc. 383) will be ADOPTED IN PART, as

specified herein, and the Recommendation (Doc. 383) ADOPTED IN FULL.


SIGNED on this ___ day of August, 2010 at Alexandria, Louisiana.


DEE D. DRELL
UNITED STATES DISTRICT JUDGE

29