

RECEIVED
IN ALEXANDRIA, LA

AUG 2 0 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CITY OF ALEXANDRIA | CIVIL ACTION NO. 1:05-cv-01121 |
| -vs- | JUDGE DRELL |
| CLECO CORP. et al. | MAGISTRATE JUDGE KIRK |

## R U L I N G

Pending before the Court is a Motion to Segregate Funds (Doc. 403) filed by the Intervenor Plaintiff, Bridgett Brown ("Ms. Brown").  The motion seeks an order from this Court compelling Intervenor Defendant the City of Alexandria ("City") to deposit into this Court's registry ten percent of any funds received by the City in the settlement of the main demand.  For the reasons detailed below, Ms. Brown's motion (Doc. 403) will be DENIED.  Disposition will follow by a separate order.

### I.    Introduction

In the principal litigation, the City alleged that Cleco Corp. *et al.* ("Cleco"), its primary electrical utility services provider, caused the City and its ratepayers substantial economic losses through various intentional and negligent acts ("Cleco litigation").  The City and Cleco ultimately reached a settlement, and on February 24, 2010, the Court dismissed the City's claims in the Cleco litigation ("Cleco Settlement").  (Doc. 379).

Ms. Brown had been retained as special legal counsel to represent the City in the Cleco litigation.  Her representation was secured and conducted pursuant to an

undated "Contract for Legal Services and Contingent Fee Agreement" (Doc. 77-1, Exh. 1) ("Contract"), which Ms. Brown and then-Mayor Edward G. Randolph both executed. The Contract contained a contingency fee clause under which Ms. Brown was to recover "ten percent (10%) of the underlying amount recovered including judicial interest." (Doc. 77-1, Exh. 1, p. 2). The nature and extent of Ms. Brown's work under the Contract are matters still in dispute before this Court. However, it is now clear that on February 28, 2007, Mr. Charles E. Johnson ("Mr. Johnson"), Alexandria's city attorney, terminated Ms. Brown's representation of the City in the Cleco litigation by written letter. (Doc. 77-1, Exh. 2). Thereby, Mr. Johson effectively terminated Ms. Brown's Contract approximately two years before the settlement was reached.

On April 17, 2007, Ms. Brown intervened in this lawsuit, seeking to recover any fees to which she may be entitled under the Contract. (Doc. 77). Litigation of the main demand continued for nearly three subsequent years, during most of which time Ms. Brown's intervention was effectively halted. Since the settlement of the Cleco litigation was finalized, the Court has entertained a number of motions in this intervention. Ms. Brown filed the instant Motion to Segregate Funds (Doc. 403) on May 11, 2010, seeking an order from this Court mandating that the City deposit in the Court's registry ten percent of any settlement funds that the City received from the Cleco settlement. The parties have had a full opportunity to brief the motion, and the Court has reviewed those briefs. After careful consideration, the Court rules as follows.

## II.    Law and Analysis

### A.    La. R.S. § 37:318

In support of her motion, Ms. Brown cites four potential sources of authority, none of which are availing.  First, Ms. Brown cites La. R.S. § 37:218, which states:

> A.  By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. Such interest shall be a special privilege to take rank as a first privilege thereon, superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial laws. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition has been made.

> B. The term "fee", as used in this Section, means the agreed upon fee, whether fixed or contingent, and any and all other amounts advanced by the attorney to or on behalf of the client, as permitted by the Rules of Professional Conduct of the Louisiana State Bar Association.

"'The obvious intent of [§] 37:218 is to prevent a client's discharging an attorney and thereby depriving the attorney of his earned fee.'"  Hanks v. Columbia Women's & Children's Hosp., 865 So. 2d 745, 748 (La. App. 3d Cir. 2003) (quoting Scott v. Kemper Ins. Co., 377 So. 2d 66, 70 (La. 1979)).  Accordingly, the privilege in § 37:218 applies "in situations where the attorney's *former client* settled a suit in which the attorney provided legal services."  Ross v. Salomon, 756 So. 2d 629, 630-31 (La. App. 2d Cir.

3

2000) (emphasis added).[1]

In one of its principal decisions interpreting § 37:218, the Louisiana Supreme Court recognized that the statute "gives the attorney who has a written contract affording him an 'interest' in the claim a privilege to the extent of his *earned fee* on any recovery obtained by settlement." Calk v. Highland Constr. & Mfg., 376 So. 2d 495, 499 (La. 1979) (emphasis added). The court also held that, "for the attorney to succeed he must assert his claim by intervention or other legal proceedings prior to disbursement of the proceeds to a third party." Id.[2] Finally, when an attorney asserts the statutory privilege against his client, it is not essential that the attorney have previously recorded the contract for legal services. Id.; see also Francis v. Hotard, 798 So. 2d 982, 985 (La. App. 1st Cir. 2001) ("[T]o recover from his former client, recordation is not required for the attorney to maintain a privilege on any compromise or settlement funds.").

Considering these authorities, the Court concludes that, at least in principle, Ms. Brown may viably assert a privilege under § 37:218 upon settlement funds received by the City in order to recover any attorney's fees to which she may be

---

[1] A related statute provides a privilege for attorney's fees on judgments obtained by the attorney:

> A special privilege is hereby granted to attorneys at law for the amount of their professional fees on all judgments obtained by them, and on the property recovered thereby, either as plaintiff or defendant, to take rank as a first privilege thereon superior to all other privileges and security interests under Chapter 9 of the Louisiana Commercial Laws.

La. R.S. § 9:5001. Of course, Ms. Brown cannot rely upon this statute, because the Cleco litigation was settled rather than brought to judgment.

[2] Ms. Brown intervened well before the settlement between the City and Cleco was finalized.

entitled. But, that privilege, in and of itself, does not entitle Ms. Brown to the specific

relief requested in her motion: an order from this Court forcing the City to deposit in

the Court's registry an amount representing her prospective attorney's fees. Nothing

in the statute, or the cases interpreting it, provides the Court with a legal basis for

issuing such an order. Put simply, the mere existence of a privilege does not, by

default, vest this Court with the authority to seize property from a party at the whim

of an adverse party.[3]

Nonetheless, had Ms. Brown presented the Court with authority supporting

her request for an order "segregating" funds, the source and amount of those funds

remain unclear to the Court. Of course, the amount to which Ms. Brown may be

entitled is still disputed. In this circumstance, the Court could arguably retain all

funds to which Ms. Brown may possibly be entitled – in this case, a full ten percent of

the City's total recovery under its settlement agreement with Cleco. However, to this

Court's knowledge, no freestanding "fund" has been created in the wake of the Cleco

settlement. Ms. Brown has likewise failed to specifically allege that such a fund

---

[3] There is some support in Louisiana statutory law for the proposition that a party may
sequester property over which that party has a privilege:

> When one claims the ownership or right to possession of property, or a mortgage,
> security interest, lien, or privilege thereon, he may have the property seized under a
> writ of sequestration, if it is within the power of the defendant to conceal, dispose of,
> or waste the property or the revenues therefrom, or remove the property from the
> parish, during the pendency of the action.

La. R.S. § 3571. Ms. Brown, however, has not moved for a writ of sequestration under Louisiana law.
Her motion flatly asserts that the funds should be "segregated." Moreover, she has not sought to
satisfy the prerequisites for the issuance of a writ of sequestration (such as the provision of security),
assuming one could be issued by this Court in the instant intervention. Even so, in her filings related
to this motion, Ms. Brown has maintained that "the City's contention that [she] is asking for a writ of
attachment," a device which parallels the writ of sequestration, "has no basis in fact or law." (Doc.
411, p. 1).

exists, or that cash actually changed hands as part of the settlement.  This presents a

serious impediment to the assertion of the privilege created by § 37:218:

> [T]he Saucier privilege presupposes a fund of some type. It does not
> contemplate a dismissal, with prejudice, as well as no satisfaction or
> compromise of the plaintiff's claims. Without a fund on which a privilege
> may attach to help the attorney collect his fee, [§] 37:218 may not be
> applicable.

Francis, 798 So. 2d at 986.  Because Ms. Brown has failed to identify or specify the

fund in which the City's purported "settlement monies" have been deposited, or the

amount of those funds which may be subject to her claims, we cannot afford her the

relief that she now seeks under § 37:218.[4]

### B.    The Contract

Second, Ms. Brown cites the following provision of her Contract with the City:

> As security for Attorney's fee, Client expressly pledges a special lien
> and privilege to Attorney on any amount recovered for the Claims from
> any source and by whatever means.  Should Client discharge Attorney
> for any reason, Client authorizes Attorney to initiate proceedings and/or
> intervene in any proceedings for fees, costs, advances, guarantees, and
> any other sums to which Attorney is entitled.

(Doc. 77-1, Exh. 1, pp. 1-2).  Ms. Brown has obviously availed herself of the right to

intervene in these proceedings to recover any fees to which she may be entitled.

That right is secured by the second sentence of the provision quoted above.  The first

sentence grants Ms. Brown "a special lien and privilege . . . on any amount

---

[4] Ms. Brown makes factual allegations related to the City's plans to distribute funds derived
from the Cleco settlement, including that: (1) the City "is negotiating payment of fees to consultants
and attorneys retained in said litigation"; and (2) the City "is contemplating a cash rebate to rate
payers."  (Doc. 403, p. 1).  We agree with the City that Ms. Brown's allegations are not substantiated
on the record.  Moreover, as discussed below, the Louisiana Supreme Court has promulgated specific
rules regarding the calculation of attorney's fees when contingency fee contracts are prematurely
terminated.  These rules are unaffected by any unrelated payments which the City may be
contemplating.

recovered" in the Cleco litigation.  (Doc. 77-1, Exh. 1, p.1).  This provision mirrors the statutory privilege granted to attorneys by La. R.S. § 37:218.

However, Ms. Brown's argument regarding the Contract suffers from the same basic infirmity as her argument concerning the statutory privilege.  That is, the Contract does not provide to Ms. Brown the right to demand that any settlement funds be deposited in the Court's registry.  Conversely, the Contract does not impose upon the City the obligation to deposit any such funds in the Court's registry upon settlement of the main demand.  Thus, while the Contract basically incorporates the statutory privilege applicable to settlement funds, it once again does not support the specific form of relief requested by Ms. Brown in this motion.

### C.      Rule 1.15 of the Louisiana Rules of Professional Conduct

Third, Ms. Brown cites Rule 1.15 of the Louisiana Rules of Professional Conduct ("LRPC"), which is titled "Safekeeping Property."  Ms. Brown contends that Rule 1.15 "grants her special lien and privileges," but fails to further specify which portion of the rule serves that end.  (Doc. 403, p. 2).  As such, we are left to analyze the following portions of LRPC Rule 1.15, which we discern to be the only portions that Ms. Brown may seek to rely upon:

> (c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred. The lawyer shall deposit legal fees and expenses into the client trust account consistent with Rule 1.5(f).
>
> (d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. For purposes of this rule, the third person's interest shall be one of which the lawyer has actual knowledge, and shall be limited to a

statutory lien or privilege, a final judgment addressing disposition of
those funds or property, or a written agreement by the client or the
lawyer on behalf of the client guaranteeing payment out of those funds
or property. Except as stated in this rule or otherwise permitted by law
or by agreement with the client, a lawyer shall promptly deliver to the
client or third person any funds or other property that the client or third
person is entitled to receive and, upon request by the client or third
person, shall promptly render a full accounting regarding such property.

As is clear from the quoted text, neither provision grants Ms. Brown a special lien or

privilege on any settlement funds acquired by the City.  These subsections, and the

other portions of the rule, relate to *the attorney's obligation* to safeguard the property

of the client or a third person, and to a *third person's privilege* over funds deposited

with the attorney.  Rule 1.15 is inapposite to Ms. Brown's motion.[5]

### D.   Jurisprudence

Finally, none of the cases cited by Ms. Brown warrant the relief requested.  In

conducting this analysis, it is necessary to focus upon the specific form of relief Ms.

Brown is seeking through her motion.  The real question before the Court, then, is

whether we may or should *compel* the City – in response to a motion to "segregate"

funds – to deposit funds into the registry of the Court for purposes of potentially

satisfying Ms. Brown's claim, if any recovery is warranted.  We are simply unaware of

any precedential support for such relief.

This Court is, however, aware of similar cases in which settlement funds were

voluntarily paid into the registry of the court, pending a resolution of disputes

---

[5]  Even if some interpretation of the rule, or an alteration in its text, did imply a special lien or
privilege over settlement funds, the rule presupposes the existence of the attorney client relationship.
As we have noted, Ms. Brown was terminated by the City on February 28, 2007, well before the Cleco
litigation was settled.

between attorneys regarding legal fees.[6]  At least one Louisiana court has also held

that a judgment debtor "may deposit" in the court's registry the amount an

intervenor-attorney claimed as a contingency fee, and then pay the judgment creditor

the balance after the judgment becomes final.  See Robichaux v. Cade, 357 So. 2d 849,

852 (La. App. 4th Cir. 1978).  Thus, contested funds may be deposited into the Court's

registry to be disbursed when legal issues regarding entitlement to such funds are

resolved.  However, that conclusion does not encompass the circumstances presently

before the Court.

The precedent cited by Ms. Brown likewise fails to reach the central issue

presented by her motion.  Ms. Brown first cites the Louisiana Supreme Court's

decision in Saucier for the broad proposition that La. R.S. § 37:218 "is specifically

designed to protect attorney's [sic] contingency fee if the lawyer contract is

terminated."  (Doc. 411, p. 1).  Interpreted loosely, we agree that Saucier at least

reaffirms an attorney's statutory privilege over settlement proceeds under certain

circumstances.  More directly, Saucier holds that § 37:218

> allows the lawyer who is a party to an employment contract to secure
> an interest in his client's claim, but the nature of that interest is not
> established by the provisions of the statute. Because the Disciplinary
> Rules prohibit the acquisition of an absolute ownership interest in the
> client's claim prior to his performance of all or substantially all the legal

---

[6] See, e.g., Evans v. Cal Dive Int'l, Inc., No. Civ.A. 97-0719, 1998 WL 799234, at *5 (E.D. La. Nov. 13, 1998) ("A hearing was held before this Court and all three attorneys agreed that the $ 200,000 settlement check should be placed in the registry of the Court, all potentially disputed funds should remain in the registry until counsel agree on the disbursement and apportionment of the fees and costs . . . ."); Kinsey v. Dixon, 467 So. 2d 862, 863-64 (La. App. 2d Cir. 1985) ("After complying with La. R.S. 37:218, the original plaintiff's attorney intervened in the lawsuit seeking reimbursement of his expenses and one-third of the settlement pursuant to his contingent fee contract with the deceased. The settlement funds were paid into the registry of the court and all funds were disbursed except the portion claimed by intervenor.").

> services, the "interest in the subject matter of the suit, proposed suit or
> claim" safeguarded by the statute is, we believe, no more than a
> privilege granted to aid the attorney's collection of a fully earned fee out
> of the fund which the satisfaction of the client's claim yields.
> Compliance with the statute would result in the creation of a cause of
> action against the client and the opposing party for such fee as is legal
> and is earned in the event a settlement or other disposition results
> without the consent of the lawyer.

373 So. 2d at 117.  The court then addressed the contract before it, and held that

"[t]he amount prescribed in the contingency fee contract, not quantum meruit, is the

proper frame of reference for fixing compensation for the attorney prematurely

discharged without cause."  Id. at 118.[7]  However, the Saucier court makes no

mention of the Court's power – under § 37:218, or the general rule securing the

attorney's right to recover a reasonable fee – to order an attorney's former client to

deposit funds in the Court's registry.

Similarly, in Hawthorne v. National Union Fire Ins. Co., the Louisiana Third

Circuit court considered the intervention of a discharged attorney seeking to recover

attorney's fees in a worker's compensation case.  562 So. 2d 473, 473-74 (La. App. 3d

Cir. 1990).  The Hawthorne court held that a discharged attorney must record the

---

[7]  Ms. Brown also refers to the Louisiana Supreme Court's decision in O'Rourke v. Cairns, where
the Court held that,

> in cases of discharge with cause of an attorney retained on contingency, the trial court
> should determine the amount of the fee according to the Saucier rule, calculating the
> highest ethical contingency to which the client contractually agreed in any of the
> contingency fee contracts executed. The court should then allocate the fee between or
> among discharged and subsequent counsel based upon the Saucier factors. Thereafter,
> the court should consider the nature and gravity of the cause which contributed to the
> dismissal and reduce by a percentage amount the portion discharged counsel
> otherwise would receive after the Saucier allocation.

683 So. 2d 697, 704 (La. 1996).  Clearly, this opinion provides the method of calculating attorney's fees
under contingency fee contracts when the attorney is prematurely terminated.  It does not pertain to
the "segregation" of settlement funds in any respect.

contract for legal services, in compliance with § 37:218, "where the discharged attorney seeks to impose an obligation *on the opposing parties* in the main demand." Id. at 475 (emphasis added).  The court addressed neither an attorney's attempt to recover fees *against a client*, nor an attorney's request to force either party to segregate those funds pending disposition of the attorney's intervention.

Lastly, Ms. Brown cites Carlson v. Nopal Lines, a case from the United States Court of Appeals for the Fifth Circuit in which an attorney was dismissed by his client, and thereafter, withdrew as counsel of record.  460 F.2d 1209, 1210-11 (5th Cir. 1972).  The attorney then intervened in the pending suit to enforce the contingency fee contract under which his client had retained him.  Id. at 1211.  The Fifth Ciruict held that the attorney's "purely formal act of withdrawal as counsel of record" did not "automatically cut off his right to enforce the contract."  Id.  Moreover, while the client had the power to discharge his attorney, the court noted that "[t]he lawyer's rights under [a contingency fee] contract turn at least in part on whether the lawyer's performance gives the client good cause for dismissal or whether the dismissal frustrates what had been satisfactory performance of the attorney's obligations."  Id. Once again, while this opinion generally supports an attorney's right to recover under a contingency fee contract, it does not mention an attorney's right to have settlement funds obtained by the client sequestered.  Therefore, this case also does not support Ms. Brown's argument.[8]

---

[8] We decline to explore or impose any sanction against Ms. Brown arising from this motion, as was suggested by counsel for the City. Fed. R. Civ. P. 11(b)(2) provides, in relevant part:

> By presenting to the court a . . . written motion . . . an attorney or unrepresented party

## III.    **Conclusion**

At this juncture, the merits of Ms. Brown's claims are, at best, amorphous. To the Court's understanding, based upon the record currently before it, any financial benefits to the City arising from the settlement of the main demand will take the form of future savings, rather than contemporaneous cash payments. Thus, even if Ms. Brown is entitled to a statutory privilege, there is no fund of which the Court is aware, and to which that privilege may attach. Moreover, Ms. Brown has cited no firm legal basis which would support an order by this Court compelling the City to deposit in the Court's registry any purported settlement funds. To reiterate, the time has come to determine whether Ms. Brown is entitled to recover under her now-terminated Contract, and if so, to calculate the proper amount of that recovery. Aside from these determinations, further discord between the parties to this intervention will be fruitless.

SIGNED on this 20 day of August, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

---

certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Although we find Ms. Brown's request to be legally untenable, and her arguments to be unsupported, we do not find that Ms. Brown has breached the parameters of this rule. Ms. Brown presented a cognizable, though incorrect, argument in support of the requested relief, arising from a statutory privilege. While we reject Ms. Brown's arguments, we find, at least under the scant filings before us, no violation of Rule 11(b)(2).