RECEIVED

DEC 1 6 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

CITY OF ALEXANDRIA                        CIVIL ACTION NO. 1:05-1121

-vs-                                                              JUDGE DRELL

CLECO CORPORATION, ET AL.                 MAGISTRATE JUDGE KIRK

## RULING AND ORDER

Pending before the Court are motions to:

- dissolve (Doc. 508) the Temporary Restraining Order ("TRO") issued November 30, 2010 (Doc. 503) enjoining the City of Alexandria ("the City"), Cleco Corporation and Cleco Power, LLC (collectively "Cleco"), and anyone acting on their behalf from disposing of any portion of the $3 million in settlement funds set aside in the February 24, 2010 Release and Indemnity Agreement executed by Cleco and the City;

- sequester these same funds (Docs. 498, 501, 505); and

- issue a preliminary injunction pursuant to the two requests above (Docs. 501, pp. 2-3; 502).

A hearing in this matter was held on Monday, December 13, 2010 to address, among other issues, the first of these motions, seeking to dissolve the TRO and / or sequester the disputed funds. All parties were present and appeared at the hearing, and all have submitted briefs on these issues.

Based on the parties' arguments and for the reasons given below, the Court: (i) DENIES the motion to dissolve the TRO (Doc. 508); and (ii) DENIES the motions to sequester funds (Docs. 498, 501, and 505).

## BACKGROUND

The present dispute concerns three claims in intervention for attorney's fees based upon contracts entered into between the City and Bridgett Brown, John Sharp, and Craig Davidson (collectively, "the claimant attorneys") for representation in the above captioned matter. The City received a settlement from Cleco through to a Release and Indemnity Agreement, under which Cleco agreed to pay "a sum not exceeding $3 million to reimburse Alexandria for its . . . verifiable costs associated with the lawsuit (including attorney's fees, expert fees...)". (Doc. 498, exh. A).

The circumstances of each attorney differ. However, they all claim that they were not paid the amount due to them by their contracts, and they all seek preliminary relief to prevent the City from disposing of the funds it received from Cleco under the settlement. Moreover, they all hold valid attorney fee liens, pursuant to La. R.S. 37:218, which predate the settlement. (Doc. 408-4).

The claimant attorneys sought the original TRO when, after this Court set the motion for sequestration (Doc. 498) for hearing, a member of the City Council put on the City Council agenda whether to pay immediately an expert in the case, purportedly with the settlement funds. Pursuant to Fed. R. Civ. P. 65(b), we granted the TRO with notice to the adverse parties. (Doc. 503). The City moved to dissolve the TRO (Doc. 508), and we scheduled a hearing on that motion, the motion to sequester, and other matters which we have dealt with separately elsewhere.

At the hearing, the City was offered the opportunity to have all preliminary relief dissolved by reserving the funds or otherwise pledging not to deplete them without an

2

order.  It refused.

ANALYSIS

## I.   THE TRO HAS BEEN EXTENDED UNTIL THE PRELIMINARY INJUNCTION HEARING

By separate order, we have extended the Temporary Restraining Order.  (Doc. 523.) To obtain a preliminary injunction, a party must establish four factors: (i) a substantial likelihood of success on the merits; (ii) a substantial threat that failure to grant the injunction will result in irreparable injury; (iii) that the threatened injury outweighs any damage the injunction may cause the opposing party; and (iv) that the injunction will not disserve the public interest.  *E.g.*, *Lakedreams v. Taylor*, 932 F.2d 1103, 1107 (5th Cir. 1991).

An analysis of each of these factors, as well as the contents of the TRO and the persons bound, was set forth in our order granting the initial TRO (Doc. 503) and in attorney claimant Sharp's Opposition to the City's Motion to Dissolve the TRO (Doc. 513). Those reasons still apply here.  To summarize, we found and continue to find that (i) claimant attorneys are likely to prevail on the merits in an amount not yet determinable;(ii) the liens would be irreparably lost if the funds which they encumber are released and paid to another party; (iii) the maintenance of the liens and the TRO prevent the City merely from paying experts or other attorneys in this case for a limited time period, and thus will not harm the City or will do so only minimally; and (iv) the public interest is served by requiring the parties to honor their lien and settlement agreements, which they voluntarily executed to enforce the important Federal acts at issue in the underlying case.

3

The City has contested the TRO on these and other grounds. It argues that preliminary relief is inappropriate because the moving parties are not likely to prevail on the merits, and there is no risk of immediate and irreparable injury. It also argues that the seizure of municipal property is barred by Louisiana law, and that there is no separate corpus of funds and thus no asset which can be encumbered.

We disagree, in part, and address each of these objections below. In general, we find that the City presents sound arguments for why an amount of funds large enough to satisfy whatever judgment the parties may obtain should not be encumbered out of general public funds. However, its arguments do not apply to the settlement funds for which the claimant attorneys currently seek relief.

## A. The claimant attorneys have a high chance of success on the merits

First, the City claimed at the hearing that the TRO was inappropriate because the claimant attorneys are unlikely to succeed on the merits. We disagree. That some money is owed to them, however large or small, is almost indisputable, and the City's efforts to claim otherwise are unpersuasive. While we do not yet have the evidence as to the amount owed, **at this juncture**, we are **actually** aware that all three claimants did actually represent the City at divers times in the underlying litigation. The only question is how much they are each owed individually given their drastically varying circumstances. We have separately ordered the parties to mediate this issue.

As the claimant attorneys point out, however, under their preliminary lodestar method of calculation, the fees **claimed** by them together likely total several million dollars, and, they argue, could be much more. Accordingly, we find the parties highly

4

likely to attain success on the merits entitling them to a portion and possibly all of the proceeds they seek to encumber. As we have said, however, the Court is unable, at this juncture, to determine the amount payable.

**B. The claimant attorneys face an "immediate and irreparable" injury**

Second, the City argues there is no risk of "immediate and irreparable" injury because the parties seek only a money judgment, which the City, whose solvency is not in question, would be able to pay in the future. This argument entirely overlooks the fact that the claimant attorneys hold a valid lien on the settlement funds, and if these funds are disbursed, the liens likely dissolve. *See, Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213-14 (2002). Moreover, it ignores the Fifth Circuit rule that, while assets may generally not be encumbered in anticipation of a judgment, a preliminary injunction may issue when "the assets frozen [are] in some way the subject of the litigation," as they are here. *In re Fredeman Litigation v. Channel Fueling Service, Inc.*, 843 F.2d 821, 827 (5th Cir. 1988); *see also, Grupo Mexicano de Desarrollo, SA v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 325-26 (1999) (discussing preliminary relief generally) (holding a District Court's preliminary freeze of the assets of an unsecured general creditor impermissible, while stressing that a party "assert[ing] an equitable lien on the property . . . present[s] a different case.").

Moreover, the City's objection overlooks that the intent of this lien, like all liens, is not solely to ensure that a party is solvent and able to pay a judgment. Rather, a lien permits a party to collect the sum owed to it efficiently, with less hassle, time, or cost than a full collection proceeding, and it allows an aggrieved party to exert pressure on

the party which owes payment. *See, In re Smith*, 119 BR 757, 760 (Bankr. E.D. Ca. 1990) ("The fundamental purpose of a lien is to 'hold' the asset to which it attaches 'hostage' as assurance that the debtor's obligation to the creditor will be satisfied."). The City presents no arguments to counter this point.

Likewise, the City is unwilling to offer any assurances that it will not deplete the funds and/or refuse to pay an equivalent amount later in a judgment, as the claimant attorneys fear. The Court offered the City the opportunity to avoid preliminary relief by pledging to preserve or not dissipate the funds at issue, or to offer other assurances that it would honor any judgment rendered against it. It refused. Such is its right, but if the party holding contested funds is unwilling to pledge not to dissipate them, then the party claiming an interest and holding a valid lien in those funds is entitled to preliminary relief to prevent such dissipation.

**C. Recognition of this encumbrance is permissible under Louisiana Law**

Next, the City argues that any of the contemplated forms of preliminary relief would be a seizure of public funds forbidden by Louisiana law and the Louisiana Constitution. La. Const. Art. XII, § 10(C); La. R.S. 13:5109B(2). The City is correct that a federal court's seizure and execution powers are generally governed by the law of the state in which it sits, subject to a "federal interest" or "congressional mandate" exception that "a federal statute governs to the extent it applies." Fed. R. Civ. P. 64 and 69. We consider whether this exception would apply in this case to be an open question. *Compare, Bowman v. City of New Orleans*, 747 F.Supp. 344 (E.D. La. 1989) (permitting seizure, under Fed. R. Civ. P. 69 and despite the contrary state constitutional and

statutory provisions cited by the City here, of city property to satisfy an unpaid judgment for attorney fees against the city arising out of a suit to strike down an unconstitutional city ordinance); *with, Bruno v. New Orleans*, 724 F.Supp. 1222 (E.D. La. 1989) (not permitting seizure, under and secondary to the same rules and statutes, of city property to satisfy an unpaid judgment arising out of a federal civil rights suit). We decline to reach this question, however, because we find that the applicable Louisiana restrictions do not prevent injunctive encumbrance in the circumstances before us.

Specifically, the City cites many cases to support of its position, *e.g., Hoag v. State*, 889 So.2d 1019, 1023 (La. 2004). However, all of these cases involve "the enforcement of *money judgments* against the state or its political subdivisions," (Doc. 508-1, p. 6) (emphasis added), either from general public funds, by the seizure and sale of public property, or through mandamus ordering that the municipality appropriate the requisite funds. *See, Newman Marchive P'ship, Inc. v. Shreveport*, 979 So.2d 1262 (2008). In other words, all of these cases involve the judiciary's substituting its judgment for the discretion of the legislature in deciding how to allocate or dispose of general public property. *Id.* These cases demonstrate that this power is wisely withheld from the judiciary. However, they do not show that we are denied the power at issue here.

Instead, we find a case cited by claimant attorneys, *Sanford v. Town of Ball*, 999 So.2d 304 (La. App. 3d Cir. 2008) more analogous. That case, discussing at length the relevant constitutional and statutory provisions and the cases mentioned above, involved a suit against a municipality where the Board of Alderman had passed a resolution prohibiting the town from paying the judgment. The Court acknowledged that "any

7

payment to the plaintiffs would have by necessity had to have been appropriated from public funds" pursuant to the Louisiana constitutional and statutory provisions discussed by the City here. In the face of the town's refusal, it lacked the power to order such payment. *Id.* at 308. However, the municipality had received, in a settlement with its liability insurer, a sum equal to the amount of the judgment, "tendered to [the town] *only* to pay the damages resulting from the incidents" giving rise to the claim, a purpose which the town acknowledged in signing the settlement release. *Id.* at 309. The court found that, despite the specific town resolution to the contrary, "upon execution of the release the funds received . . . were dedicated to pay the judgment of this court." *Id.* Ergo, the decision on how to allocate the funds had already been made, and "no element of discretion was left." Instead, what had to be ordered was only "a 'ministerial duty.'" *Id.* The town "had a simple, definite duty, arising under conditions to which it admitted and agreed when it signed the release and accepted the check." *Id.* Therefore, the court could order these specific funds paid to the judgment creditors, notwithstanding the provisions of Louisiana law to the contrary.

We find our case analogous. Here, as in *Ball*, the City received a sum of monies from a third-party pursuant to a settlement which it signed. By the terms of the settlement and, here, under ample provisions of Louisiana law protecting attorney's fee liens,[1] these funds, like those in *Ball*, were received only for the specific purpose of paying certain other third parties. The court in *Ball* found that it had the power to order

---

[1] See *Scott v. Kemper Ins. Co*, 377 So.2d 66 (La. 1979) for a discussion of the attorney fee lien statute, La. R.S. 37:218.

payment of the funds to these third parties, and we find likewise here. Further, we find that the differences between our case and *Ball* strengthen this conclusion. In particular, the third party payor in *Ball* was an insurance company which was not a party to the suit giving rise to the judgment, and the release signed by the town was separate from the underlying suit. Here the third party payor is Cleco, which was a party before this Court in the underlying action, and the funds at issue were paid pursuant to a settlement in that action which this Court approved. The inherent and latent power which a court ordinarily retains over parties and settlements thus provides an additional source and reason to find that we have authority to order the payment - or non-payment - of the funds at issue here.

Likewise and finally, we note that not all funds in the possession of a municipality are "public funds." *See, Board of Directors. of the Indus. Dev. Bd. of the City of New Orleans v. All Taxpayers, et al.*, 848 So.2d 740, 749 (La. App. 4th Cir. 2003). The parties did not fully brief this issue and its final resolution is perhaps best left to the final decision on whether to grant a preliminary injunction. However, when a city receives funds not from the public through taxes but from its actions as a private plaintiff before this Court, when it only receives these funds by agreeing to a settlement, and when a set of third parties contemplated by the settlement holds a valid and senior lien in these funds, we would, on its face, find it perverse to deem these funds "public funds" beyond the purview of our jurisdiction. *See, Ball*, 999 So.2d at 307. In all, we are not forbidden from ordering the ministerial payment of such funds where there is no need for an exercise of discretion as to their allocation, and the municipality has previously agreed

9

to the overarching payment conditions.  Concomitantly, we may order that such funds not be depleted for a short period, at no detriment to the City or the public, pending the litigation of these conditions.

Crucially, and for clarity given the weighty federalism and separation of powers issue at stake, we reiterate that we do not hold this judicial power extends to the payment of public funds, the allocation of which rests solely with the discretion of the legislative arm of the City.  Before a municipality receives settlement funds or after it disposes of them, a court, under Louisiana law, has almost no power to order the municipality to pay a judgment out of public funds; it is only once it has received settlement funds, and while those funds remain in its possession, that a court may order that they be properly disposed of.  Accordingly, the parties here have correctly *not* requested that we encumber public property in an amount equal to their claim.  Rather, they seek an order encumbering only those funds received by the City in settlement.  We find that such an order, as part of a temporary restraining order, is well within the power of this Court, and in these circumstances is warranted.

## D.  The funds encumbered, clarified

Finally, the City argues that a temporary restraining order is unwarranted, and indeed impossible, because there are no specific assets to encumber.  It says that it had the settlement funds wired into an account that, while distinctly for utility-related business, also contains money from other sources.  It thus argues that, as money is fungible, the settlement funds cannot be distinguished from the other proceeds already in the account, and thus no specific set of assets exists.

10

The City cites no authority for this proposition, and we have found none. The City's continued pressing of it at oral argument borders on frivolous. If accurate, any party could defeat any encumbrance on any sum of funds by simply mixing those funds with any other pool of money, no matter how trivial the sum or improper or illegal its behavior in doing so. If true, then the entire mechanism underlying many time honored remedies, such as attorney's fee liens and constructive trusts, among others, would collapse.

We think it clear that the correct test is whether the funds have yet been depleted or spent, or more simply, whether they remain in the party's possession. *See, Great-West Life*, 534 U.S. at 213-14. The City has never claimed that "the proceeds have been dissipated" or the funds otherwise disposed of or spent; indeed, the entire purpose of the present proceeding is to prevent the City from spending the funds. *Id*. As the funds still rest in the account to which they were deposited, we find no grounds for denying the validity of claimant attorneys' liens on these funds or the requisite preliminary relief protecting them.

Nonetheless, we do not wish to interfere in the day-to-day conduct of City business, nor for the City to be confused by our order. Accordingly, to encumber the settlement funds in which claimant attorneys claim a lien - and only said funds - we find that the City may comply with our order in one of three ways. Specifically, until the restraint is lifted, we order that it must: (i) maintain a balance in the account into which the settlement funds were deposited equivalent to the amount of the settlement; (ii) segregate the funds into a separate account; or (iii) deposit them with the Court. As all

11

of these methods ensure that the encumbered property will not be dissipated, we find it appropriate to leave the optimal mode of possession - but not *whether* to maintain such possession - to the discretion of the City.

## II.  SEQUESTRATION IS NOT WARRANTED

Claimant attorneys have also moved that the funds at issue be sequestered, pursuant to La. C.C.P. art. 3571.  Sequestration is an extraordinary remedy under Louisiana law.  Generally, it is only used when a party has it in its immediate power to dispose of or waste disputed assets, and an injunction against such waste would be ineffective.

Here, though the City has the assets in its possession, it does not have the power to dispose of them immediately, and its ability to do so may be effectively enjoined. Specifically, the allocation and appropriation of these funds to another party would require multiple steps, including approval by the Alexandria City Council, the publication of the ordinance approving the appropriation, and the passage of ten (10) days for objections to be made following publication.  Ergo, before a disbursement is complete, claimant attorneys would have ample notice and opportunity to take mitigating action.  Moreover, there is no reason to believe that the other relief requested here enjoining the City from taking such actions would be ineffective.  Accordingly, we do not find the circumstances to warrant this extraordinary remedy.

## III.  THE EMS SETTLEMENT

Much conversation at the hearing revolved around the perceived immediate need to preserve the funds in question because of the danger that the City would use them

12

to fund a settlement of fees claim by a consulting company known as EMS.  EMS likewise had a fee contract applicable to the underlying litigation here and the City worked out a settlement.  In some quarters it was suggested that the settlement would be funded in whole or in part by the $3 million to which the attorneys have made claim. It is acknowledged that EMS is not a law firm and it has no actual or perfectable lien to exert.

We wish to make clear that any proposed settlement between the City and EMS is neither enjoined nor encumbered by this ruling.  It is only the previously paid settlement funds of $3 million which is preserved here. The City is free to draw from any other funds if it wishes to do so.

<u>CONCLUSION</u>

For the reasons given above,

IT IS ORDERED that the City's motion to dissolve the TRO (Doc. 508) is DENIED.

As this relief, in conjunction with the extension of the TRO achieved by separate order, is sufficient to ensure the funds are not depleted,

IT IS FURTHER ORDERED that claimant attorneys' motions to sequester funds (Docs. 498, 501, and 505) are DENIED without prejudice.

A decision on the motions to allow direct claims against Cleco will be determined separately by written ruling.

SIGNED on this 16 day of December, 2010 at Alexandria, Louisiana.


DEE D. DRELL
UNITED STATES DISTRICT JUDGE

14