RECEIVED
AUG 15 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| CITY OF ALEXANDRIA | CIVIL DOCKET NO. 05-1121 |
| -vs- | JUDGE DRELL |
| CLECO CORP., et al. | MAGISTRATE JUDGE KIRK |

---

### RULING

Before the Court is a Motion to Enforce Judgment and for Writ of Execution (Doc. 757) filed by third party defendant and counter-claimant, H. Craig Davidson, Jr. ("Mr. Davidson"). Given the nature of the motion and the existence of a state constitutional provision on enforcement of money judgments against the state and its political subdivisions, a hearing was held on July 21, 2014. All responsive pleadings have since been filed (Docs. 762, 771), and the matter is ready for disposition. For the following reasons, the motion will be **GRANTED**.

I.  **Background**

The history of this litigation is well documented in the annals of this Court and this community. As a brief summary, the City of Alexandria instituted the principal action against Cleco Corp. ("Cleco"), the City's primary electrical utilities provider, alleging it caused the City and its ratepayers substantial economic losses through a series of intentional and negligent acts of mismanagement. After more than four years of litigation here, the parties settled the principal demand by execution of a Release and

Indemnity Agreement ("Settlement Agreement"), under which Cleco agreed, in relevant part, "to pay to Alexandria a sum not exceeding $3 million to reimburse Alexandria for its documented and verifiable costs associated with the Lawsuit (including attorneys' fees, expert fees, consulting fees and court costs)." (Doc. 498-2, Exh. A at p. 5). Pursuant to the global settlement of the case, and by Judgment of Dismissal dated February 24, 2010 (Doc. 379), the Court dismissed the City's claims against Cleco with prejudice.

Mr. Davidson had been retained as special legal counsel for the City pursuant to a contingency fee contract (Doc. 408-4, Exh. B) ("Contract") signed by then-Mayor Edward G. Randolph. When the Cleco litigation settled, Mr. Davidson made a demand for payment of his contingency fee under the Contract. The City, rather than pay the fee, filed a Third Party Complaint and Request for Declaratory Judgment (Doc. 413) against Mr. Davidson in this Court on June 4, 2010. Broadly, the City asserted that the Contract was void and/or unenforceable, and that Mr. Davidson could recover only on the basis of *quantum meruit*. Mr. Davidson then counterclaimed against the City (Doc. 437), seeking full enforcement of the Contract, and a six-day bench trial ultimately occurred. By Judgment dated July 19, 2012 (Doc. 706), we ruled that the Contract was unenforceable, but we awarded Mr. Davidson $1.3 million in attorney's fees on a *quantum meruit* basis ("Fee Award"), which award was affirmed by the U.S. Fifth Circuit Court of Appeals on January 15, 2014. See City of Alexandria v. Brown, 740 F.3d 339 (5th Cir. 2014). This judgment is now final ("Final Judgment").

On August 7, 2012, the Alexandria City Council ("City Council") adopted ordinance No. 158-2012, authorizing City Attorney Charles E. Johnson, Jr. ("Mr.

Johnson") "to resolve the claims of . . . H. Craig Davidson" and appropriating $1.3 million out of the City's Risk Management Fund "to be used by the City Attorney to tender satisfaction of the judgment or obtain receipt and satisfaction of any judgment or claims in favor of H. Craig Davidson." (Court Exh. 1). However, on February 5, 2013, a unanimous City Council voted to repeal the appropriation and to revoke Mr. Johnson's settlement authority via ordinance No. 25-2013. (Id.). Approximately one year later, Michael Davis, attorney for Mr. Davidson, issued a letter to Mr. Johnson requesting payment of the Final Judgment. In response, Mr. Johnson wrote: "Mike, the City Council has repealed the ordinance [with] the appropriation for this judgment [and] has revoked my authority to negotiate a settlement. Your client had $1.4 million available then. This case is closed as far as the City is concerned." (No. 1:14-cv-00723, ECF Doc. 1-7).

On April 2, 2014, the City instituted a new action invoking this Court's jurisdiction in City of Alexandria v. Davidson, 1:14-cv-00723, and asked us to enjoin Mr. Davidson and the 9th Judicial District Court in and for Rapides Parish, Louisiana ("State Court") from proceeding with the litigation of Bridgett Brown, Craig Davidson, John Sharp v. City of Alexandria, Cleco Corp., Cleco Power, L.L.C., Suit No. 240,524, 9th Judicial District Court, Parish of Rapides, State of Louisiana (No. 1:14-cv-00723, ECF Doc. 6-3, Exh. 8) ("State Court Suit"), and from enforcing a preliminary injunction that had issued therein (No. 1:14-cv-00723, ECF Doc. 6-3, Exh. 9). By Order dated June 25, 2014 (No. 1:14-cv-00723, ECF Doc. 20), we enjoined Mr. Davidson and his counsel from further relitigation of the Contract's enforceability and the amount of the Fee Award, but otherwise denied the City's preliminary injunction request. In so ruling, we did not enjoin Mr. Davidson

3

from attempting to enforce and collect on the Final Judgment in this Court or in the State Court.

Accordingly, Mr. Davidson filed the instant Motion to Enforce Judgment and For Writ of Execution (Doc. 757) on July 2, 2014. As a basis for his motion, Mr. Davidson submits that: (1) state law provides authority to enforce the Final Judgment; (2) federal law provides authority to order execution of the Final Judgment because the City has made it abundantly clear it will never satisfy the Final Judgment; and (3) the City has waived its constitutional protection against seizure of public funds. The City has opposed the motion (Doc. 762), to which opposition Mr. Davidson has replied (Doc. 771). After carefully considering the evidence, argument, and briefs of counsel, the Court rules as follows:

## II.  Law & Analysis

In the present motion, Mr. Davidson seeks an order directing a responsible public official of the City to pay the Final Judgment or, in the alternative, a writ of execution directing the U.S. Marshall for the Western District of Louisiana to seize and possess $1.3 million, plus costs and legal interest,[1] from the City's Utility System Enterprise Fund. The City responds that the requested forms of relief would amount to a forced appropriation of funds to satisfy a judgment or a seizure of public funds, both of which are forbidden by Louisiana law and the Louisiana Constitution. See La. Const. art. XII, § 10(C); La. R.S. § 13:5109(B)(2).

---

[1] Pursuant to the July 23, 2014 letter from Michael Davis (Doc. 769-2), counsel for Mr. Davidson, the parties agree on an interest amount of $5,214. Mr. Davidson has also submitted a Bill of Costs (Doc. 769) requesting $15,423.40.

4

Under Federal Rule of Civil Procedure 69(a),

> [a] money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Article XII of the Louisiana Constitution contains an "anti-seizure" provision whereby "no public property or public funds shall be subject to seizure. . . . No judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is rendered." La. Const. art. XII, § 10(C). Similarly, La. R.S. § 13:5109(B)(2) mandates that "[a]ny judgment rendered in any suit filed against . . . a political subdivision, or any compromise reached in favor of the plaintiff or plaintiffs in any such suit shall be exigible, payable, and paid only . . . out of funds appropriated for that purpose by the named political subdivision."

### A. Execution Under Louisiana Law

According to the Louisiana Supreme Court, § 13:5109(B)(2)

> requires a specific appropriation of funds to pay a particular judgment before disbursement of those funds may be compelled by writ of mandamus. Prior to such an appropriation, the funds remain "public funds," and any effort by the judiciary to direct their disbursement would constitute an unlawful seizure of public funds under La. Const. art. XII, § 10(C).

Newman Marchive P'ship, Inc. v. City of Shreveport, 979 So. 2d 1262, 1271 (La. 2008). In Newman, the state supreme court concluded that a municipality's allocation of funds to an account created specifically for the payment of claims and judgments against the municipality was not "a specific appropriation or disbursement of funds to pay a

5

particular judgment." Id. at 1263. However, the Louisiana Third Circuit Court of Appeal has held that upon a municipality's execution of a release acknowledging that settlement funds were tendered only to pay the claims of certain judgment creditors, those funds were "dedicated to pay [their] judgment," and therefore, a specific appropriation by the municipality's legislative branch was not necessary before disbursement of those funds could be compelled. See Stanford v. Town of Ball, 999 So. 2d 304, 308–09 (La. App. 3d Cir. 2008).

In the present case, the City admittedly received $3 million from Cleco as reimbursement for attorney's fees pursuant to a Settlement Agreement, which both parties signed and this Court approved. As we understand the State Court litigation, the City retained the $3 million portion of the Cleco settlement proceeds in its Utility System Enterprise Fund ("Settlement Funds"). Thereafter, the State Court issued an injunction, barring the City from disposing of the Settlement Funds and requiring it to maintain a balance of at least $3 million in escrow for the purpose of protecting Mr. Davidson's potential lien and enforcement rights. (No. 1:14-cv-00723, ECF Doc. 6-3, Exh. 9).[2]

The City takes the position that the Settlement Funds are "public funds" exempt from seizure under La. Const. art. XII, § 10(C) because they were not earmarked or appropriated specifically for the payment of the Final Judgment; instead, those funds were "internally allocated" to reimburse the City for its "already incurred and paid expenses," which the City claims were previously paid from public funds. (Memorandum in Opposition, Doc. 762 at p. 12). The City also suggests that because Louisiana law

---

[2] That injunction remains in effect until a trial on the merits in the State Court Suit.

prohibits judgment creditors from compelling municipalities to appropriate funds for the payment of a judgment by writ of mandamus, see Hoag v. State, 889 So. 2d 1019, 1023 (La. 2004), any order directing the City to pay the Final Judgment would amount to an unconstitutional seizure of public funds through the forced disbursement of the Settlement Funds. See Newman, 979 So. 2d 1267–70.

Mr. Davidson, on the other hand, avers that the Louisiana Third Circuit's decision in Stanford v. Town of Ball, 999 So.2d 304, provides authority to payment of the Final Judgment and seizure of the Settlement Funds. In this regard, Mr. Davidson suggests, but does not expressly state, that upon execution of the Settlement Agreement, the Settlement Funds were dedicated to pay the Final Judgment, and thus were not "public funds" under the anti-seizure law, because (1) the City received those funds pursuant to its Settlement Agreement with Cleco, and (2) the City acknowledged that the funds were tendered for reimbursement of *all* attorney's fees when it executed the Settlement Agreement and agreed to indemnify Cleco for any such claims. See Id. at 309.

Although factually distinguishable from Ball, in which the judgment predated the settlement and the terms of the settlement provided that the funds were to be received only for the purpose of paying certain third parties, the City and Cleco specifically discussed Mr. Davidson's potential attorney's fee claim during settlement negotiations. In fact, as City Attorney Johnson testified via deposition, Cleco was reluctant to pay the $3 million because it anticipated a claim from Mr. Davidson, but "ultimately, they decided to go ahead and do it . . . because they believed the indemnification agreement would protect them." (Johnson Deposition, Doc. 763-3, Exh. B). Moreover, in its third party complaint, the City acknowledged that Mr. Davidson's attorney's fee claim "will

7

directly affect the proceeds of the settlement reached in the Cleco litigation." (Doc. 413 at p. 1). These facts are obviously significant.

Whether Ball and the jurisprudential development of state law give us the authority, under the unique facts of this case, to compel payment of the Final Judgment or seizure of the Settlement Funds remains to be decided. We decline to reach this question, however, because we find that there is a sufficient federal interest in the remedy of this case, as discussed below.

### B. Federal Interest Exception

According to the Fifth Circuit, "federal courts are not reduced to issuing (judgments) against state officers and hoping for compliance." Freeman Decorating Co. v. Encuentro Las Americas Trade Corp., 352 F. App'x 921, 925 (5th Cir. 2009) (quoting Gates v. Collier, 616 F.2d 1268, 1271 (5th Cir. 1980)). Indeed, the Fifth Circuit has held that "when there is a federal interest in the remedy," federal courts "may trump a state's anti-seizure provision and enforce a money judgment against a public entity." Id. at 923 (citing Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp., 220 F.3d 650, 653 (5th Cir. 2000)). A sufficient federal interest has been found, for example, "when a state makes abundantly clear that it will never satisfy the judgment." Id. (citing Gates, 616 F.2d at 1271–72).

Gates involved the enforcement of a judgment for attorneys' fees in a civil rights action against the state of Mississippi. Similar to the Louisiana provisions at issue here, a Mississippi law prohibited the satisfaction of a judgment against the state "except by an appropriation therefor by the legislature." Gates, 616 F.2d at 1270 (quoting Miss.

Code Ann. § 11-45-5 (1972)).³ Relying on that provision, the state defendants argued that the district court could not enforce its judgment by ordering a state official to satisfy the judgment from state funds. A unanimous Fifth Circuit panel disagreed, concluding that the district court "acted well within its authority to ensure compliance with its lawful orders." Id. at 1271. The court explained:

> [W]here a state expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance. . . . Only when the district court's response to the recalcitrance of a litigant is so inappropriate under the circumstances as to amount to an abuse of discretion will the Court of Appeals intervene. . . . If statutory authority is needed for the court's actions, it may be found in Fed. R. Civ. P. 70. The defendants have made it abundantly clear that they intend to resist the judgment until the bitter end. Given such obstinance, we think it beyond peradventure that the remedy fits the wrong.

Id. at 1271–72. The court also stated that the defendants' position was, "in effect, you can order us to pay, but you can't make us pay if we don't want to." Id. at 1271. However, the Fifth Circuit did not elaborate or provide further details about the defendants' actions or the standard for a state's "unwillingness" to comply with a federal court judgment.

In a more recent case involving a diversity action against the City of New Orleans, Freeman Decorating Co., the Fifth Circuit recounted the obstinance of the defendants who refused to pay in Gates and clarified that a municipality would demonstrate the requisite level of "recalcitrance" if the evidence indicates "the [c]ity intends to never satisfy the judgment" ("Gates recalcitrance standard"). 352 F. App'x at 925. The court

---

³ The Fifth Circuit subsequently applied the rationale of Gates in a case involving Louisiana's anti-seizure provision, finding no relevant distinctions between the Mississippi and Louisiana statutes. See Gary W. v. Louisiana, 622 F.2d 804, 806–07 n.8 (5th Cir. 1980).

9

concluded, however, that a particular letter from the city attorney was insufficient to demonstrate "the level of obstinance required for this court to trump state law." Id.[4] In so ruling, the court observed that the letter "only indicates the [c]ity does not believe it must *immediately* satisfy the judgment; it does not indicate that the [c]ity will *never* satisfy the judgment." Id. (emphasis added). The court also stated that the judgment creditor "does not have a right to command satisfaction of the [c]ity's judgment at a particular time. The [c]ity asserts it will satisfy the judgment once the funds have been allocated by the [c]ity [c]ouncil, thereby recognizing the debt it owes" the judgment creditor. Id. at 924. Nevertheless, the court left open the possibility of a future enforcement action to compel payment of the judgment:

> If the [c]ity's behavior reaches the level of recalcitrance required under Gates, [the judgment creditor] will be able to file a new Motion for Order Directing the Mayor of New Orleans to Satisfy Judgment and to Authorize Issuance of a Writ of Fieri Facias. At the present time, however, there is no evidence in the record indicating that the [c]ity intends to never satisfy the judgment.

---

[4] In addition to arguing that the City of New Orleans "made it abundantly clear that it [would] never satisfy the judgment," the Freeman plaintiff also argued that the federal jurisdictional statutes over two international defendants provided the requisite federal interest for the district court to trump state law. The Fifth Circuit disagreed, concluding that
> 22 U.S.C. §§ 283f, 283gg, the statutes granting federal jurisdiction over the [international defendants], do not provide a sufficient federal interest in the remedy of this case. . . . Both of the international defendants were dismissed as parties to the case prior to judgment. Under Specialty Healthcare, the federal interest must be specifically focused on enforcing the remedy. Since the two [international] defendants who created the federal interest were dismissed prior to judgment, there is no federal interest in enforcing the judgment that followed.

Freeman, 352 F. App'x at 924 (quoting Freeman, 2008 WL 4922072, at *2 (E.D. La. Nov. 12, 2008)). For the reasons discussed herein, we find that, on the unique facts of this case, the underlying federal interest in enforcing the Final Judgment is more significant than in Freeman.

Id. at 925.[5]

Mr. Davidson posits that the facts of this case are quite different and that this matter presents a substantial federal interest under Gates and Freeman because the City has made it abundantly clear it will never satisfy the Final Judgment. In response, the City submits that because Gates involved a federal court's inherent interest in enforcing a judgment issued under a federal statute (the Civil Rights Attorneys' Fee Act of 1976), it has no application to the present case. The City further contends that Freeman "gratuitously expanded" and "misapplied dicta from Gates," thereby creating "dicta on dicta," because it "ignored the fact that the Gates decision is couched entirely in a discussion of the federal interest in enforcing the Civil Rights Act." (Memorandum

---

[5] Notably, the judgment creditor in Freeman filed a renewed "Motion for Order Directing the Mayor of New Orleans to Satisfy Judgment and to Authorize Issuance of a Writ of *Fieri Facias* Through the United States Marshal" less than two years after the Fifth Circuit's ruling. Our colleague in the Eastern District of Louisiana denied the motion based on the following reasoning:
> [T]his [c]ourt cannot conclude that the [c]ity has no intention ever to satisfy the judgment based on an unanswered recent discovery request, when the [c]ity has otherwise responded to [the judgment creditor's] discovery requests and evidently placed [the judgment creditor] "'on the list and when the money is appropriated and it is up, it will be paid.'"

Freeman, 2011 WL 3290390, at *2 (E.D. La. Aug. 1, 2011) (citations omitted).

The judgment creditor subsequently filed a motion for reconsideration, which the court likewise denied. In so ruling, the district court conceded that it looked primarily to the judgment creditor's "dissatisfaction with [the city's] post-judgment discovery requests in denying [the] initial motion, and that it did not specifically address [the judgment creditor's] argument that [the city] failed to appropriate funds for payment of the judgment, and failed to set a date for certain payment." Freeman, 2011 WL 6826484, at *2 (E.D. La. Dec. 28, 2011). However, the court concluded that
> these arguments do nothing to change the outcome because they fail to meet the Gates standard for issuing an order requiring a state or city official to comply with a judgment. None of the [the city's] actions rise to the level of making it "abundantly clear that they intend to resist the judgment." Gates, 616 F.2d at 1271–1272. [The judgment creditor] points to no evidence that [the city has] ever "expressed its unwillingness to comply" with this [c]ourt's judgment. Gates, 616 F.2d at 1271. Indeed, [the city has] indicated that [it] intend[s] to pay the judgment. [citation omitted].

Id.

in Opposition, Doc. 762 at p. 20). Therefore, the City argues, <u>Freeman</u> "cannot meaningfully form the basis of the significant relief sought" by Mr. Davidson. (<u>Id.</u>).

The City is indeed correct that pre-<u>Freeman</u> jurisprudence appears to have applied the "federal interest" or "congressional mandate" exception with limitation to judgments awarded under a federal statute. In fact, there appear to be no cases in which a court in this circuit has found a sufficient federal interest justifying the circumvention of state anti-seizure law outside of the civil rights context. Still, the language in <u>Freeman</u> is clear: "This court has also recognized a sufficient federal interest when a state makes abundantly clear it will never satisfy the judgment." 352 F. App'x at 923 (citing <u>Gates</u>, 616 F.2d at 1271–72).

Interestingly, the <u>Freeman</u> court also cites <u>Gates</u>, along with two other civil rights cases,[6] for the proposition "that in a civil rights action, such as an action filed pursuant to 42 U.S.C. § 1988, there is a federal interest in the remedy sufficient to trump a state's anti-seizure provision." <u>Id.</u> This belies the City's argument that the Fifth Circuit ignored the civil rights considerations underlying its decision in <u>Gates</u>. Moreover, the fact that <u>Freeman</u> treated the recalcitrance of a municipality to ever satisfying a federal court judgment as a completely distinct federal interest, and that it allowed the judgment creditor to file a subsequent motion to enforce if it could satisfy the <u>Gates</u> recalcitrance standard, tells us that the "federal interest in ensuring compliance" language was not "dicta on dicta," but rather, a touchstone of the <u>Gates</u> decision upon which a subsequent

---

[6] <u>Bowman v. City of New Orleans</u>, 914 F.2d 711 (5th Cir. 1990) (permitting seizure of city property to satisfy judgment for attorneys' fees against the city arising out of civil rights suit to strike down an unconstitutional city ordinance); <u>Gary W.</u>, 622 F.2d 804 (permitting order compelling state official to pay judgment for attorneys' fees, awarded in civil rights action, from state funds).

12

court could rely.

Next, the City suggests that even if the "federal interest" exception applies outside of the civil rights context, there is no overriding federal interest in the "remedy of this case" because "the federal interest must be specifically focused on enforcing the remedy" and Mr. Davidson's claims "are purely based in state law." (Memorandum in Opposition, Doc. 762 at pp. 20–21) (quoting Freeman, 352 F. App'x at 924). In support of this argument, the City emphasizes the fact that the "court in Freeman directly addressed the requisite federal interests and found them *lacking* for purposes of [overriding] Louisiana's anti-seizure provisions." (Id. at 20) (emphasis in original). The City also states: "It should be noted that the Freeman judgment was, in part, based on federal banking law." (Id. at 21).

That statement is incorrect. The claim on which the Freeman plaintiff "was ordered judgment was essentially a state law claim for breach of contract." Freeman, 2008 WL 4922072, at *2 (E.D. La. Nov. 12, 2008). Nevertheless, the Fifth Circuit applied the Gates recalcitrance standard to the facts and found it was not met "based on the lack of any evidence indicating that the [c]ity ha[d] made it clear that it intend[ed] to never satisfy the judgment." Freeman, 352 F. App'x at 925. The Fifth Circuit did not state, or even intimate, that a federal court could never find a significant federal interest in enforcing a judgment issued on a state law claim. To the contrary, the court allowed the judgment creditor to file another motion to enforce, which suggests that we have authority to ensure compliance with our judgments, notwithstanding the nature of the underlying claim upon which those judgments are based. To rule otherwise not only would render our judgments effectively meaningless, but also would allow

13

municipalities to select which federal judgments they deem worthy of following, a right which the Fifth Circuit has considered and rejected. See Gates, 616 F.2d at 1271–72.

Moreover, in the present case, the City has acknowledged the existence of a prevailing federal interest throughout the course of this nine-year litigation. At the hearing on the instant motion, the City agreed there was a sufficient federal interest when this case was removed pursuant to 16 U.S.C. § 865p of the Federal Power Act because the Cleco litigation raised issues regarding electric tariffs approved by the Federal Energy Regulatory Commission. The City also agreed there was a federal interest when it participated in mediation and confected a settlement with Cleco, all under the umbrella of this Court's jurisdiction. Although Cleco was subsequently dismissed from the suit, the evidence reveals that the City and Cleco specifically discussed Mr. Davidson's potential attorney's fee claim during these Court-supervised mediation negotiations, and that the City received $3 million as reimbursement for all attorney's fee claims pursuant to the Court-approved settlement. Thereafter, the City voluntarily invoked the jurisdiction of this Court for the specific purpose of resolving its attorney's fee dispute with Mr. Davidson. In its third party complaint, the City even acknowledged that Mr. Davidson's attorney's fee claim "will directly affect the proceeds of the settlement reached in the Cleco litigation and is interconnected with that case and controversy." (Doc. 413 at p. 1). Finally, when the City was unsuccessful in appealing our Fee Award, it invoked our jurisdiction again and asked us to enjoin the State Court and Mr. Davidson from enforcing the Final Judgment in the State Court Suit. For these reasons, we reject the City's argument that there is no overriding federal interest in the remedy of this case because the Final Judgment is based on state law.

We also reject the City's final argument that there exists no evidence of its intention to "never" satisfy the Final Judgment. Unlike in Freeman, where the defendant-municipality asserted it would satisfy the judgment following an appropriation of funds, the City filed suit *as plaintiff* and asked this Court to determine the amount of attorney's fees owed to Mr. Davidson on a *quantum meruit* basis. We did exactly what the City asked us to do, but the City cross-appealed, arguing that our Fee Award was unreasonably high. Furthermore, the City Council actually appropriated monies from the City's Risk Management Fund "to be used by the City Attorney to tender satisfaction of the judgment or obtain receipt and satisfaction of any judgment or claims in favor of" Mr. Davidson, and then unanimously voted to repeal the appropriation only six months later. (Court Exh. 1). Thereafter, when Mr. Davidson requested payment of the Final Judgment, City Attorney Johnson replied that "[t]his case is *closed* as far as the City is concerned." (No. 1:14-cv-00723, ECF Doc. 1-7) (emphasis added). This letter, coupled with the City's resistance at every phase to comply with our judgment, makes it "abundantly clear" that the City intends to refuse and resist the Final Judgment "until the bitter end." Gates, 616 F.3d at 1272. We do not know how "this case is closed" could mean anything else other than: "We aren't paying you—PERIOD."

At the hearing on the instant motion, the City stressed that Mr. Johnson's letter "doesn't mean the case can't be reopened," and that the City Council has not taken an official position that the Final Judgment will "never" be satisfied. However, at the preliminary injunction hearing held on June 25, 2014, the City indicated it has no plans to place a proposed ordinance with an appropriation for the Final Judgment on the City

15

Council's agenda. In addition, the City has vigorously fought Mr. Davidson's attempts, both in this Court and in the State Court, to collect on the Final Judgment. In fact, the City filed the new action *in this Court* to enjoin Mr. Davidson from pursuing collection of his Final Judgment in the State Court Suit. Such actions by the City clearly indicate that City intends to never satisfy the Final Judgment.

On these facts, which are unlike any facts this Court has seen in prior jurisprudence, we find there is a clear and sufficient federal interest in the remedy of this case that allows us to enforce the Final Judgment against the City.

### C.  Waiver of Louisiana's Anti-seizure Law

Under Louisiana law, "'conduct so inconsistent with the intent to enforce a right as to induce a reasonable belief that the right has been relinquished' constitutes a waiver." Specialty Healthcare, 220 F.3d at 656 (quoting Steptore v. Masco Constr. Co, 643 So. 2d 1213, 1216 (La. 1994)).

At the hearing on the instant motion, Mr. Davidson went to great lengths to emphasize that the City voluntarily invoked the jurisdiction and benefits of this Court and asked us to determine the amount of its liability to him for attorney's fees. Mr. Davidson also noted that the City resisted an injunction by arguing that any damages resulting from the City's disbursement of the Settlement Funds could be remedied by adequate compensatory relief, and thus, there was no risk of irreparable harm. (See Motion to Dissolve, Doc. 508-1 at pp. 3–4). Therefore, Mr. Davidson argues, the City has waived its reliance on Louisiana's anti-seizure provision.

The City responds that although its Eleventh Amendment immunity from suit in federal court has been waived, the City has retained its separate immunity from the

seizure and forced appropriation of public funds under Louisiana's anti-seizure provision. However, the City has presented no evidence to show that its waiver of immunity from suit does not affect its enjoyment of immunity under Louisiana's anti-seizure provision. See Meyers ex rel. Benzing v. Texas, 410 F.3d 236, 253 (5th Cir. 2005) ("[T]he Constitution permits a state whose law provides that it possesses an immunity from liability separate from its immunity from suit to show that its waiver of one does not affect its enjoyment of the other.").

We agree with Mr. Davidson's argument, and in particular his reliance on the dissent in Specialty Healthcare, 220 F.3d 650. In that case, the plaintiff brought an action to enforce an arbitral award of nearly $750,000 against a parish hospital in Louisiana, asserting that the hospital waived its state anti-seizure law argument by insinuating in its opposition to a preliminary injunction that monetary damages would be available if the judgment creditor prevailed at arbitration. A divided Fifth Circuit panel ruled that the hospital's arguments were not sufficient to amount to a waiver of the protections under Louisiana's anti-seizure provision. However, one judge was willing to conclude that the hospital's conduct "was so inconsistent with the intent to enforce the anti-seizure provisions as to induce the reasonable belief that the right had been relinquished. This would be a waiver under Louisiana law." Id. at 659. In so finding, the dissenting judge stated:

> Any reasonable person would believe that an agreement to "binding" arbitration means that any resulting damages would be enforceable and collectable. Otherwise, why agree to arbitrate? Moreover, when the other side argues below that there will be no irreparable injury because damages will be sufficient, *any reasonable person would take this as indicating that damages will be collectable. For how can it be that damages which cannot be collected repair any injury?*

Id. at 658–59 (emphasis added).

In the present case, the City's behavior is even more "inconsistent with the intent to enforce the anti-seizure provisions" than that of the Specialty Healthcare defendant because, in addition to the behavior discussed above, the City *twice* invoked the jurisdiction and good graces of this Court for the specific purpose of resolving its attorney's fee dispute with Mr. Davidson. Moreover, like the defendant in Specialty Healthcare, the City opposed injunctive relief both in this Court *and* in the State Court by arguing that Mr. Davidson would not suffer irreparable injury because "the entire loss of the $3 million fund [could] be undone through monetary remedies." (Motion to Dissolve, Doc. 508-1 at p. 3) (quotations omitted). We find that the City's behavior is so inconsistent with the intent to enforce Louisiana's anti-seizure provision "as to induce a reasonable belief that the right has been relinquished." Specialty Healthcare, 220 F.3d at 656 (quotations omitted). Therefore, in addition to our determination that the federal interest exception applies under the unique facts of this case, we also find that the City has waived the protections of Louisiana's anti-seizure law.

### D. Procedure for Enforcement

Federal Rules of Civil Procedure 64(a)[7] and 69(a)(1) empower federal courts to use state procedures in execution of their judgments. Alternatively, under Rule 70, a federal court can appoint an individual to perform a specific act on behalf of a disobedient party who has refused to comply with the court's judgment himself:

---

[7] Fed. R. Civ. P. 64(a) provides as follows: "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies."

> If a judgment requires a party to . . . perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court. When done, the act has the same effect as if done by the party. . . . The court may also hold the disobedient party in contempt.

Fed. R. Civ. P. 70(a), (e).

The City suggests, but does not expressly state, that this Court can do nothing to enforce the Final Judgment because Rule 69(a) provides that the procedures for enforcing federal court judgments must be in accord with state law and because Rule 70 does not provide an alternative means for enforcing a money judgment. This argument was considered and rejected by the Fifth Circuit in Gates: "[W]here a state expresses its unwillingness to comply with a valid judgment of a federal district court, the court may use any of the weapons generally at its disposal to ensure compliance. . . . If statutory authority is needed for the court's actions, it may be found in Fed. R. Civ. P. 70." 616 F.2d at 1271. Likewise, in Gary W. v. Louisiana, 622 F.2d 804, the Fifth Circuit relied on Gates in affirming a district court order compelling a state official, the Secretary of the Louisiana Department of Health and Human Resources, to pay a judgment from public funds. At the district court level, the judgment creditors caused the clerk of court to issue a writ of *fieri facias* directing the U.S. Marshall to seize state property in order to satisfy the judgment. The court stated: "We perceive no relevant distinction between Gates and the instant case. In both cases, an order directing the responsible state official to satisfy the judgment out of state funds is the only reasonable way to ensure compliance with a valid federal judgment." Id. at 806–07. Accordingly, we reject the City's argument regarding the procedure for enforcement.

III. **Conclusion**

For the foregoing reasons, the Motion to Enforce Judgment and for Writ of Execution (Doc. 757) filed by Mr. Davidson will be **GRANTED**. A separate order to enforce the Final Judgment will follow.

SIGNED on this 15th day of August, 2014, at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT